UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

ANTHONY GRIFFIN, MARK MCINDOO,
and SUSAN DETOMASO, on behalf of
themselves and all others similarly situated,

                      Plaintiffs,

        -against-

ALDI, INC., DOE DEFENDANTS 1-10,

                  Defendants.

                         :
                         X

Civil Action No. 5:16-cv-354 (LEK/ATB)

**DEFENDANT ALDI INC.'S ANSWER
TO PLAINTIFFS' CLASS AND
COLLECTIVE COMPLAINT**

JURY TRIAL DEMANDED

-------------------------------------------------------

      Defendant ALDI INC. ("Aldi"), by and through its attorneys and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby answers Plaintiffs' Class and Collective Action Complaint (Doc No. 1) (hereinafter "Complaint"), and asserts its defenses, with the exception of defenses to the claim in the Complaint for unjust enrichment, which is the subject of a pending Motion to Dismiss.

## <u>INTRODUCTION</u>

## <u>COMPLAINT ¶1:</u>

      This Class and Collective Action, brought by the Store Managers of Aldi, Inc. ("Aldi" or "Defendant"), challenges Aldi's practices and policies of misclassifying Plaintiffs and other similarly-situated Store Managers as "exempt" employees, and not paying them overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

## <u>ANSWER:</u>

      Aldi admits that Plaintiffs purport to bring this action, individually and on behalf of all others similarly situated, against Aldi under the FLSA and the NYLL.  Aldi also admits that many, but not all, of its Store Managers are classified as exempt from the overtime pay requirements.  Aldi denies any liability with respect to Plaintiffs or any person(s) whom

Plaintiffs purport to represent and denies that any individuals are "similarly situated" to

Plaintiffs.   Aldi denies the remaining allegations in Paragraph No. 1 of the Complaint.

## COMPLAINT ¶2:

Using an employee review system based on metrics that are primarily derived from control of labor budgets, Aldi ensures that its Store Managers spend nearly all of their time performing the same tasks as the hourly workers, such as stocking shelves, unloading trucks, operating cash registers, helping customers and cleaning.

## ANSWER:

Aldi denies the allegations in Paragraph No. 2 of the Complaint.  By way of further

response, Aldi states that the employee review system for Store Managers actually reviews their

performance in the areas of (i) leadership responsibilities, such as the Store Managers'

performance enforcing operating policies, procedures, and governmental regulations;

communicating performance expectations to store employees; managing, training, and

development of store employees; monitoring and evaluating expense controls within the store;

guidance and leadership of store goals; and ensuring a diversity focus and emphasis within the

store; and (ii) operational responsibilities, such as guiding store operations to maximize store

sales and customer service, maintaining excellent store conditions; managing store

merchandising, inventory, and layouts; organizing and conducting store employee meetings;

being involved in and aware of competition in the store's market area; managing equipment and

assets; participating in special projects; managing time and personal organization; and handling

administrative duties and responsibilities.

## COMPLAINT ¶3:

The true managerial authority over the operation of the stores rests primarily with the District Managers, each of whom is assigned to manage three to five stores.  It is the District Managers who perform traditional managerial functions for the stores: they have authority over hiring and firing, employee reviews and compensation, the flow of merchandise, the physical setup of the stores, safety and maintenance measures, and ultimate authority over the work schedule for every single employee at the store, including Store Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 3 of the Complaint.  By way of further response, Aldi states that Store Managers - and not District Managers - are primarily responsible for the operations of their respective stores.  Store Managers are responsible for, among other things, employee reviews, the flow of merchandise, the merchandising of product in their store, ensuring the safety of employees and customers, ensuring equipment is used and maintained properly by store employees, and determining the work schedules for every employee in their store, including themselves.  Store Managers also either take primary responsibility for, or share responsibility with their District Managers for, making decisions regarding hiring, promoting, and/or terminating the employment of their store employees.  The division of responsibilities between and the particular process used by Store Managers and District Managers in making hiring, termination, and promotion decisions have varied from store to store, from manager to manager, and over time.

**COMPLAINT ¶4:**

Accordingly, the Store Managers are misclassified as "exempt" employees and should receive hourly pay including overtime.

**ANSWER:**

Aldi denies that all Store Managers are classified as exempt.  Aldi denies the remaining allegations in Paragraph No. 4 of the Complaint.

**JURISDICTION AND VENUE**

**COMPLAINT ¶5:**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*

**ANSWER:**

Aldi admits the allegations in Paragraph No. 5 of the Complaint.

**COMPLAINT ¶6:**

This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

**ANSWER:**

Aldi admits the allegations in Paragraph No. 6 of the Complaint.

**COMPLAINT ¶7:**

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and the Defendant and Plaintiffs are subject to personal jurisdiction in this district.

**ANSWER:**

Aldi admits that venue is proper in the U.S. District Court for the Northern District of

New York and that personal jurisdiction in this District exists over Plaintiffs and Aldi.  Aldi

denies that the purported acts or omissions giving rise to Plaintiffs' claims occurred within the

Albany Division of the Northern District of New York.  Aldi denies the remaining allegations in

Paragraph No. 7 of the Complaint.

**COMPLAINT ¶8:**

This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:**

Aldi admits that this Court is empowered to issue a declaratory judgment under some

circumstances.  Aldi denies that the circumstances of the instant litigation warrant such a

judgment.  Aldi denies the remaining allegations in Paragraph No. 8 of the Complaint.

## PARTIES

**COMPLAINT ¶9:**

Plaintiff Anthony Griffin is a resident of New York State who was employed by Aldi as a Store Manager in New York during the statutory period covered by this Complaint.  Defendant failed to compensate Mr. Griffin for all hours worked and failed to pay him appropriate overtime.

**ANSWER:**

Aldi admits that it previously employed Plaintiff Griffin as a Store Manager in New York during a portion of the period potentially relevant to this lawsuit.  Aldi admits that the most current residential address Aldi has for Plaintiff Griffin is in the State of New York.  Aldi denies the remaining allegations in Paragraph No. 9 of the Complaint.

**COMPLAINT ¶10:**

Plaintiff Mark McIndoo is a resident of New York State who was employed by Aldi as a Store Manager in New York during the statutory period covered by this Complaint.  Defendant failed to compensate Mr. McIndoo for all hours worked and failed to pay him appropriate overtime.

**ANSWER:**

Aldi admits that it previously employed Plaintiff McIndoo as a Store Manager in New York during a portion of the period potentially relevant to this lawsuit.  Aldi admits that the most current residential address Aldi has for Plaintiff McIndoo is in the State of New York.  Aldi denies the remaining allegations in Paragraph No. 10 of the Complaint.

**COMPLAINT ¶11:**

Plaintiff Susan DeTomaso is a resident of New York State who was employed by Aldi as a Store Manager in New York during the statutory period covered by this Complaint.  Defendant failed to compensate Ms. DeTomaso for all hours worked and failed to pay her appropriate overtime.

**ANSWER:**

Aldi admits that it previously employed Plaintiff DeTomaso as a Store Manager in New York during a portion of the period potentially relevant to this lawsuit.  Aldi admits that the most current residential address Aldi has for Plaintiff DeTomaso is in the State of New York.  Aldi denies the remaining allegations in Paragraph No. 11 of the Complaint.

**COMPLAINT ¶12:**

At all relevant times hereto, Plaintiffs were "employees" under both New York State and federal law.

**ANSWER:**

Aldi admits that Plaintiffs were "employees" of Aldi within the meaning of the FLSA

during a portion of the period potentially relevant to this lawsuit.  Aldi denies that Plaintiffs were

"employees" as that term is defined for purposes of the New York state laws at issue here.  Aldi

denies the remaining allegations in Paragraph No. 12 of the Complaint.

**COMPLAINT ¶13:**

Plaintiffs hereby consent in writing to be plaintiffs in this action and have attached their
executed Consent To Sue forms as Exhibit A.

**ANSWER:**

Aldi admits that on April 15, 2016, Plaintiffs filed their consents to join the previously-

filed lawsuit.  *See* Doc. 6-1.  Aldi denies that Plaintiffs attached their Consent to Sue Forms as

Exhibit A to the Complaint.  Aldi denies the remaining allegations in Paragraph No. 13 of the

Complaint.

**COMPLAINT ¶14:**

Defendant Aldi was founded in Germany in 1961 and its U.S. operation is headquartered
in Batavia, Illinois.  Aldi describes itself as a leader in the grocery retailing industry and operates
more than 1,400 US stores in 32 states.  At all relevant times during the statutory period covered
by this Complaint, Defendant has transacted business within the State of New York, including
within this District.  Upon information and belief Defendant has employed hundreds of Store
Managers within New York, and significantly more across the country.

**ANSWER:**

Aldi admits that it was founded in Germany in 1961, that its U.S. headquarters are

located in Batavia, Illinois, that it is a leader in the grocery retailing industry, and that it operates

nearly 1,600 U.S. stores in 34 states.  Aldi also admits that it has transacted business in the State

of New York and in the area that falls within the jurisdiction of the U.S. District Court for the

Northern District of New York.  Aldi admits that, between March 29, 2010 and the present, it has

employed about one hundred Store Managers within New York.  It also admits that, in the past

two years, it has employed many more Store Managers in the remaining 33 states.  Aldi denies

the remaining allegations in Paragraph No. 14 of the Complaint.

**COMPLAINT ¶15:**

At all relevant times hereto, Aldi was an "employer" of Plaintiffs and other similarly-
situated employees, within the meaning of the NYLL and FLSA.

**ANSWER:**

Aldi admits that it was an "employer" of Plaintiffs within the meaning of the FLSA and

the NYLL during portions of the period potentially relevant to this lawsuit.  Aldi denies that any

other individuals are similarly situated to Plaintiffs.  Aldi denies the remaining allegations in

Paragraph No. 15 of the Complaint.

**COMPLAINT ¶16:**

At all relevant times hereto, Aldi was an "enterprise" engaged in commerce or in the
production of goods for commerce, within the meaning of the NYLL and FLSA.

**ANSWER:**

Aldi admits that it has been an "enterprise" engaged in commerce within the meaning of

the FLSA during the period potentially relevant to this lawsuit.  Aldi is without knowledge

sufficient to form a belief as to what definition Plaintiffs intend to prescribe to the term

"enterprise" under the NYLL and, therefore, denies same.  Aldi denies the remaining allegations

in Paragraph No. 16 of the Complaint.

## FACTS

**COMPLAINT ¶17:**

Aldi is a global discount supermarket chain that misclassifies Store Managers as exempt
employees, even though their jobs are virtually identical to non-exempt employees, in order to
circumvent the FLSA and the NYLL and avoid paying the Store Managers overtime.

**ANSWER:**

Aldi admits that it is an international grocer.  Aldi denies the remaining allegations in

Paragraph No. 17 of the Complaint.

**COMPLAINT ¶18:**

Aldi markets itself as a discount grocery store.  Aldi's retail strategy is a combination of primarily offering only Aldi-branded products, rather than their more expensive nationally-branded equivalents, and the elimination of conventional supermarket services.  Aldi offers a lean selection of items, only 5% of the inventory found in traditional grocery stores.  The stores are also considerably smaller than traditional grocery stores, averaging only about 18,000 to 20,000 square feet.

**ANSWER:**

Aldi admits that it is a discount grocery store, that more than 90 percent of the products in

its stores are brands that are exclusive to Aldi and that are less expensive than the national brands

of such products, and that its store model avoids non-essential services with hidden costs for

customers, like banking, pharmacies, and check cashing.  Aldi also admits that a number of its

stores in the U.S. are within the range of 18,000 to 20,000 square feet in size, but not all stores

are the same size.  The square footage of its stores varies and has increased over the years to

accommodate Aldi's ever-expanding inventory.  Aldi denies the remaining allegations in

Paragraph No. 18 of the Complaint.

**COMPLAINT ¶19:**

One way Aldi is able to maintain its discount prices is by cutting its labor costs.  Indeed, during its hours of operation, an average Aldi store has only two or three employees working at one time – one or two cashiers, and either a Store Manager, Shift Manager or Manager in Training ("MIT").

**ANSWER:**

Aldi denies the allegations in Paragraph No. 19 of the Complaint.  By way of further

response, Aldi states that the concept of "an average Aldi store" is misleading, as store size,

customer volume, and the number of employees that work in a store vary widely.  It would be

rare, however, to find a store today with only two to three employees working during most hours

of the day.  Moreover, as the Store Manager is responsible for training the Manager Trainee to be

a Store Manager and is responsible for supervising and delegating to the Shift Managers, it

would be extremely rare to find a Store Manager's shift to never overlap with that of the Shift

Manager and Manager Trainee.

**COMPLAINT ¶20:**

> In practice, Store Managers, Shift Managers and MITs are collectively referred to as
> "managers" and they all wear identical uniforms.  In fact, their jobs are indistinguishable.
> However, while Shift Managers and MITs are classified as non-exempt and paid overtime
> compensation, Store Managers are misclassified as exempt and are not paid overtime.

**ANSWER:**

Aldi admits that it provides all store employees with uniform shirts that they are required

to wear while working and that the management team wears different shirts than the Store

Associates.  Aldi also admits that when a Store Manager designates one of his or her Shift

Managers or Manager Trainees to be the manager on duty in the Store Manager's absence for a

certain shift or for certain hours of a shift, that Shift Manager or Manager Trainee is expected, as

the manager on duty, to assume some, but not all, of the managerial duties of a Store Manager

for that short period of time.  Aldi also admits that because the Store Managers are the only ones

who are expected to perform managerial duties all of the time, most, but not all, Store Managers

are classified as exempt from overtime pay.  Aldi denies the remaining allegations in Paragraph

No. 20 of the Complaint.

### A.    The Job Of A Store Manager:

**COMPLAINT ¶21:**

> While Store Managers are called "managers" in name, they do not engage in any
> management and have no meaningful discretion in the operation of the store.  Indeed, the
> physical nature of their job is identical to that of other hourly employees.  Store Managers spend
> over 90% of their time on tasks such as unloading supply trucks, stocking shelves, operating cash

registers, cleaning the store, setting up product displays (according to specific instruction from the District Managers) and helping customers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 21 of the Complaint.

**COMPLAINT ¶22:**

Store Managers are placed on the weekly schedule for 50 hours alongside the hourly employees.  Store Managers are officially scheduled to work either Saturday or Sunday and 4 weekdays (Monday through Friday).  However, Store Managers regularly work more than 50 hours per week as they are forced to work additional hours, usually in excess of 60 hours per week, in order to keep labor costs low, without additional compensation.

**ANSWER:**

Aldi admits that most Store Managers often, but not always, schedule themselves to work approximately 50 hours per week and that, because their salary is intended to cover all hours worked in any week, whether few or many, those Store Managers who are classified as exempt from overtime are not entitled to additional pay when they work more hours than they had scheduled themselves to work.  Aldi denies the remaining allegations in Paragraph No. 22 of the Complaint.

**COMPLAINT ¶23:**

Typically, a supply truck arrives at each store overnight several times per week.  Some stores have supply trucks arriving at least four times per week, while higher volume stores have trucks arriving every day.  Some stores have their supply trucks arriving during the day, rather than overnight.  Regardless of the time of arrival, a significant portion of any Store Manager's workday consists of unloading the inventory and stocking the shelves.

**ANSWER:**

Aldi admits that delivery truck schedules vary from store to store depending upon sales and inventory needs.  Aldi denies the remaining allegations in Paragraph No. 23 of the Complaint.  By way of further response, Aldi states that Store Managers who perform their managerial duties of creating effective work schedules and delegating to store employees as expected do not spend a significant portion of each workday unloading inventory and stocking

shelves.  Furthermore, to the extent a Store Manager decides to assist his or her store employees

in the tasks described in Paragraph No. 23, a Store Manager who decides to do so must

simultaneously perform, and always prioritize, his or her supervisory and managerial duties.

## COMPLAINT ¶24:

When a supply truck arrives overnight, the driver typically uses a forklift to unload approximately 24 to 26 pallets of inventory into the stock room.  The driver has to only the back stock room, not the main store, as well as the code to disable the alarm for the stock room. The inventory is left in the stock room until the Store Manager arrives between approximately 5am to 6am to unload the inventory and place it on the shelves.  When the supply truck arrives during the day, the Store Manager or other store employees use the additional forklifts to help the truck driver unload the inventory into the stock room at a quicker pace.

## ANSWER:

Aldi admits that delivery truck drivers only have access to the back stock room and not

the main store, that the high end of the large range in terms of the number of pallets that may be

delivered to a particular store on a given day is 24 to 26, and that the driver unloads the pallets

into the back stock room.  Aldi denies the remaining allegations in Paragraph No. 24 of the

Complaint.

## COMPLAINT ¶25:

The Store Managers' typical work week begins on Sunday when they arrive at the store between 5am and 6am, which is three or four hours before the store opens, in order to unload the inventory and stock the shelves, coolers, freezers and produce section.  When the labor cost, referred to as the "Budget of Hours," permits, an hourly worker is also scheduled to come in at 6am, 7am or 8am to work side by side with the Store Manager unloading the truck and preparing the store to open; otherwise, the Store Manager works on his or her own.

## ANSWER:

Aldi denies the allegations in Paragraph No. 25 of the Complaint.  By way of further

response, Aldi states that Store Managers are responsible for scheduling their own work hours, as

well as those of their store employees.  Accordingly, there is no "typical" work week for Store

Managers.  By way of further response, Store Managers who perform their duties of creating

effective work schedules and delegating to their employees as expected do not spend multiple, if any, hours alone in the store.

**COMPLAINT ¶26:**

At stores where the supply truck arrives in the afternoon, rather than overnight, the Store Manager usually works a later shift but does work identical to that of other Store Managers at other Aldi locations.

**ANSWER:**

Aldi admits that Store Managers in all Aldi locations in the U.S. are expected to perform the same managerial and supervisory duties, including, among other tasks, planning employee work schedules and delegating to employees to ensure that their employees, rather than they, perform the vast majority of the work involved in unloading inventory and stocking shelves, coolers, freezers, and produce sections.  Aldi denies the remaining allegations in Paragraph No. 26 of the Complaint.

**COMPLAINT ¶27:**

Once the store opens at 9am, the Cashier goes to operate the cash register while the Store Manager continues unloading the truck, stocking the shelves and cleaning the store.

**ANSWER:**

Aldi admits that Store Associates (also known as Cashiers) are responsible for operating cash registers during the store's hours of operation and that most stores open at 9:00 a.m. in their respective time zones.  Aldi denies the remaining allegations in Paragraph No. 27 of the Complaint.

**COMPLAINT ¶28:**

According to Aldi's policy, if there are more than three customers waiting in line, the Cashier must "buzz" for someone else to open an additional cash register.  Since there are typically only two or three people scheduled to work the morning shift, the Store Manager has to stop their unloading, stocking and cleaning duties and operate the additional cash register, before resuming their unloading, stocking and cleaning tasks.

**ANSWER:**

Aldi admits that its current "Line Policy" requires a Store Associate to open another check-out lane if there are more than three customers standing in a particular check-out lane, but Aldi denies that three customers has been the maximum number in its Line Policy throughout the period potentially relevant to this lawsuit.  Aldi also denies that its policy has ever required Store Managers to open the check-out lane and run the cash register when an additional check-out lane is needed and denies that Store Managers who perform their duties of creating effective work schedules and delegating to their employees as expected would find it necessary to be (i) unloading, stocking, and cleaning each morning, or (ii) manning an additional cash register when an additional check-out lane needs to be opened.  Aldi denies the remaining allegations in Paragraph No. 28 of the Complaint.

**COMPLAINT ¶29:**

Store Managers have no discretion regarding the flow of regular inventory to the store. The computer generated ordering system ("CGOS") automatically orders additional products to replenish inventory.  The CGOS is password protected and electronically controlled by the District Managers, who set up the quantities of each regular inventory product that arrives on the supply truck.

**ANSWER:**

Aldi admits that, to aid Store Managers in fulfilling their responsibility of ensuring that their store is properly stocked, it provides Store Managers with a computer generated ordering system ("CGOS") to make it easier and quicker for them to order certain products and to delegate this task to others after they decide what parameters to set within the CGOS as the maximum and minimum numbers to be ordered of certain products.  Aldi denies that District Managers, rather than Store Managers, set the parameters, denies that District Managers control the CGOS, and denies that Store Managers use CGOS to order all products for their store.  Aldi denies the remaining allegations in Paragraph No. 29 of the Complaint.

**COMPLAINT ¶30:**

However, "highly perishable items" such as produce and meat are not automatically ordered by CGOS. Instead the CGOS has a "build-up" figure for these highly perishable items, which states the number of each item that the store should carry. These build-up figures are also set by the District Managers. The Store Manager or any other hourly employee, including Cashiers, walk around the store with a Mobile Data Terminal ("MDT") ordering device and enter orders for each highly perishable item to reach the build-up. For example, if the District Manager set the build-up for chicken to be at 10, any store employee who sees that the store only has four packs of chicken left would simply use the MDT device to order six more. In this process, the Store Manager has no more discretion than any hourly employee.

**ANSWER:**

Aldi admits that CGOS does not automatically order any products and that Store

Managers do not use CGOS to decide on the amount of or place the orders for perishable items,

such as produce and meat. Aldi also admits that Store Managers may choose to delegate at times

their responsibility for ordering product for the store to a Shift Manager or Manager Trainee as

long as they continue to monitor inventory levels and take action to correct the issue when a

Shift Manager or Manager Trainee over- or under-orders perishable items. Finally, Aldi admits

that Store Managers use an MDT device to place the perishable orders once they decide on the

appropriate amount to order. Aldi denies that District Managers set "build-up" figures for

perishable items, denies that Cashiers' job duties are expected to or should regularly include

placing product orders, and denies that a Store Manager who performs well the managerial duties

expected of him or her would exercise no discretion in placing product orders or entrust an

untrained Cashier to place product orders that could have such a substantial effect on the store's

profitability. Aldi denies the remaining allegations in Paragraph No. 30 of the Complaint.

**COMPLAINT ¶31:**

Typically, towards the end of their official shift, the Store Manager walks through every aisle of the store, cleaning and restocking the shelves. Store Managers frequently stay at least two to three hours after the official end of their shift in order to ensure that all the shelves are fully stocked and the store is cleaned.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 31 of the Complaint.  By way of further response, Aldi states that Store Managers are responsible for scheduling their own work hours, as well as those of their store employees.  Accordingly, there is no "typical" work day or shift for Store Managers.  By way of further response, Store Managers who perform their duties of creating effective work schedules and delegating to their employees as expected do not spend multiple, if any, hours alone in the store and, in particular, do not stay two to three hours longer than they had scheduled themselves to work to personally perform cleaning and restocking tasks.

**COMPLAINT ¶32:**

On Mondays through Fridays, a Store Managers typically arrives between 5am and 6am, depending on whether there is a supply truck delivery that day.  Usually, supply trucks arrive four out of the five weekdays; some stores have the supply trucks arriving every day.  The Store Manager, once again, unloads the inventory, stocks the shelves, coolers, freezers and produce sections and cleans the store before it opens.  Even on non-supply truck days, a Store Manager is typically scheduled to arrive at 6am in order to restock the shelves from the stock room, rotate product, clean the store and prepare it for open.

**ANSWER:**

Aldi admits that delivery truck schedules vary from store to store depending upon sales and inventory needs.  Aldi denies the remaining allegations in Paragraph No. 32 of the Complaint.  By way of further response, Aldi states that Store Managers who perform their managerial duties of creating effective work schedules and delegating to store employees as expected do not spend a significant portion of each workday unloading inventory, cleaning, and stocking shelves, coolers, freezers, and product sections.  Furthermore, to the extent a Store Manager decides to assist his or her store employees in the tasks described in Paragraph No. 32, a Store Manager who decides to do so must simultaneously perform, and always prioritize, his or her supervisory and managerial duties.

15

**COMPLAINT ¶33:**

On Mondays, the Store Manager takes about 15 minutes to write the employee work schedule for the following week.  The Store Manager must follow very specific rules and guidelines when preparing these schedules.  For example, on non-supply truck delivery days, hourly employees cannot be scheduled to work before 8am.  Additionally, because their jobs are so similar, no Store Manager, Shift Manager or MIT is permitted to work more than two hours at the same time.

**ANSWER:**

Aldi admits that Store Managers write the work schedules for all employees in their store

and that because Shift Managers are paid at a higher rate of pay when they are scheduled to work

as a Shift Manager instead of as a Cashier, Store Managers are not supposed to schedule their

Shift Managers to be working in a managerial capacity for most of the hours that their shifts

overlap with that of the Store Manager.  Aldi denies the remaining allegations in Paragraph No.

33 of the Complaint.

**COMPLAINT ¶34:**

Sometimes, these schedules are prepared by hourly Shift Managers and MITs instead of Store Managers.  After the schedule is prepared it is usually faxed to the District Manager who then makes revisions and comments.  When the District Manager is satisfied with the schedule, it will be initialed to show final approval and sent back to the store.  While writing the schedule typically takes only 15 minutes, the entire process of getting the District Manager's approval takes about one hour.  Some District Managers do not require that the draft schedules be faxed to them but instead review, revise and approve the schedules on their first visit to each store each week.  Usually, the schedule for the following week has to be posted by Tuesday afternoon.

**ANSWER:**

Aldi admits that Store Managers may choose to delegate their responsibility for writing

work schedules to a Shift Manager or Manager Trainee at times.  Aldi also admits that a District

Manager may decide to take a look at a posted work schedule and may talk with the Store

Manager about effective and fair scheduling if it appears from the schedule that the Store

Manager requires further training on how to perform this duty well.  Aldi denies that District

Managers have sufficient knowledge of the needs of the store and its employees scheduling-wise

to unilaterally revise a store's schedule and denies that District Managers are authorized to do so. Aldi also denies that the manner and level of attention a particular District Manager pays to a given store's work schedule can be generalized across all weeks and all District Managers as the amount of attention to work schedules that may be warranted varies based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time. Aldi denies the remaining allegations in Paragraph No. 34 of the Complaint.

## COMPLAINT ¶35:

During a typical Monday through Friday work day, the Store Manager continues to unload the inventory, stock the shelves and clean the store for several more hours, depending on how many times they are "buzzed up" to the cash register. The Store Manager typically then organizes and spruces up the "special buy section" of the store before the District Manager arrives [sic] view it. The special buy section is a display that is set up in the middle of the store every Saturday that features special deals, discounts and promotional items[.]

## ANSWER:

Aldi admits that "special buys" are special promotional items and products on which Aldi is offering special deals or discounts. Aldi denies the remaining allegations in Paragraph No. 35 of the Complaint. By way of further response, Aldi states that Store Managers are responsible for scheduling their own work hours, as well as those of their store employees. Accordingly, there is no "typical" work day or shift for Store Managers. Store Managers who perform their duties of creating effective work schedules and delegating to their employees as expected do not spend all day unloading inventory, stocking shelves, cleaning, and running the cash register, nor do they personally perform the organizing and sprucing up of special buys instead of delegating such duties to their employees.

## COMPLAINT ¶36:

Every store employee is trained to restock products from the stock room, in order to avoid having product shortages, or "outs," on the floor. Every store employee is also trained to remove or rotate expired products off the shelves. Before the District Manager arrives, the Store

Manager, or any other store employee walks through the store replenishing and rotating the products, as this is something a District Manager typically checks upon their arrival to the store.

**ANSWER:**

Aldi admits that all Store Associates, Shift Managers, and Manager Trainees are trained to keep shelves properly stocked, to rotate products, and to remove expired products from the shelves. Aldi also admits that part of the District Manager's responsibility in visiting stores is to serve as a second set of eyes for the Store Managers in ensuring that the store shelves are properly stocked and do not contain expired products. Aldi denies that the particular store conditions that a District Manager may check or focus on when visiting the store can be generalized across all District Managers and across all of their visits to every store as the specific issues on which they focus on any given visit vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time. Aldi denies the remaining allegations in Paragraph No. 36 of the Complaint.

**COMPLAINT ¶37:**

The District Manager visits each store approximately three times per week. The first visit of the week lasts about five to six hours, while the second and third visit last approximately three to four hours. On their first visit of the week, the District Manager usually takes the Store Manager, or the Shift Manager or MIT in the Store Managers' absence, on a detailed walk-through, which typically begins outside the store and proceeds through every aisle and every section and area of the store. The District Manager points out any general cleanliness issues or imperfections in the store set up or product displays, and directs the Store Manager, or the Shift Manager or MIT in the Store Managers' absence, to remedy the situation in accordance with the District Manager's instructions. Such directions range from taking out the trash to shoveling the snow, removing excess weeds and shrubbery, cleaning the bathrooms, dusting various crevices of the store, sweeping the aisles, moping the floors, waxing and shining the store floors, cleaning miscellaneous spills, lining up products on shelves so they all faced the right direction, rotating product from the stock room, removing expired products, reorganizing the special section and correcting any other issues detected by the District Manager.

**ANSWER:**

Aldi admits that a District Manager visits each of his or her assigned stores weekly and that one of the several reasons for the visits is to serve as a second set of eyes for the Store

Manager in identifying store appearance and safety issues that the Store Manager should direct

his or her employees to address.  Aldi denies that each District Manager makes visits of the same

frequency and duration, denies that each visit is for the same purposes, and denies that any store

walks done by the District Manager result in a set of "instructions" or "directions" for the Store

Manager.  Instead, the frequency and duration of the visits, the reasons for the visits, and the

activities performed by the District Manager and the Store Manager during such visits vary from

store to store, District Manager to District Manager, and even Store Manager to Store Manager.

Aldi denies the remaining allegations in Paragraph No. 37 of the Complaint.

**COMPLAINT ¶38:**

The majority of the rest of the Store Manager's day is spent stocking shelves, cleaning
the store, operating cash registers, dealing with miscellaneous things like janitorial work and
completing the list of instructions and commands they were given by their District Manager on
their walk-through.  On the District Manager's next two visits, they typically add directives to
the list and follow up to ensure the previous ones were carried out.

**ANSWER:**

Aldi denies that the particular tasks performed by District Managers on any visit can be

generalized across all District Managers or with respect to all, or even certain, visits but rather

vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the

District Manager, and over time.  Aldi also denies that each Store Manager spends the same part

of each day performing the same types of duties, denies that the duty of any Store Manager is to

personally complete a "list of instructions and commands" from the District Manager, denies that

a District Manager would find many issues in conducting the store walk if the Store Manager

does his or her job of conducting his or her own store walks and tasking store employees with

addressing issues spotted, and denies that a Store Manager should find it necessary to personally

attend to any issues that her or she failed to notice such that the District Manager spotted them

first.  Aldi denies the remaining allegations in Paragraph No. 38 of the Complaint.

## COMPLAINT ¶39:

Additionally, as per the corporate mandated customer service policy, every "manager," which according to Aldi includes the Store Manager, and the hourly Shift Managers and MITs, must perform one random customer check each shift. This includes pulling a customer over at random, checking their receipt and looking through their bags to ensure that nothing was stolen. The District Managers check security cameras to ensure that such checks were performed every shift.

## ANSWER:

Aldi admits that its Store Procedures Manual provides that, if a store's inventory loss level has become bad enough to reach a certain level, then "[e]ach management person must perform two mystery shops or customer order checks (based on average cart size) per week." Aldi also admits that Shift Managers and Manager Trainees are expected to perform the managerial duty of conducting customer order checks and mystery shops, as part of the overall responsibility of controlling inventory loss, when they are acting as the manager on duty for a particular shift. Aldi denies that the purpose of the customer order checks and mystery shops is to determine whether a customer has stolen an item; instead, the purpose is to assess the cashiers' handling of inventory and accuracy in scanning items. Aldi also denies that what the District Manager is looking for when he or she checks security cameras and how often the District Manager checks security cameras can be generalized across all District Managers, each store, and each instance in which a District Manager checks security cameras. Aldi denies the remaining allegations in Paragraph No. 39 of the Complaint.

## COMPLAINT ¶40:

Before leaving, the Store Manager usually again walks through the store, restocks the shelves and cleans the aisles, before counting out their cash register, referred to as the "till," and leaving for the day.

**ANSWER:**

Aldi admits that one of the duties of a Store Manager is to conduct store walks to ensure that their employees have completed properly their assigned duties for the day and have left the store in good condition.  Aldi also admits that another duty of the Store Manager is to ensure that each cashier balances his or her cash drawer, or till, before leaving for the day.  Aldi denies that a Store Manager who is performing the duties expected of him or her would restock, clean, and cashier all day, every day rather than delegate such duties to his or her employees.  Aldi denies the remaining allegations in Paragraph No. 40 of the Complaint.

**COMPLAINT ¶41:**

The District Managers commonly visit each store on at least one day when the Store Managers are not officially scheduled to work.  On such days, the District Managers conduct the same walk-through, and give the same instructions and directions to the hourly Shift Managers or MITs.

**ANSWER:**

Aldi denies that the frequency and duration of District Manager visits and how often, if ever, they visit stores on days when the Store Managers are not working can be generalized across District Managers, stores, Store Managers, and over time; to the contrary, the frequency, duration, purposes, and timing of store visits by District Managers vary based on the needs of the store, the abilities of the Store Manager, the management style of the District Manager, and over time.  Aldi also denies that District Managers' visits on days when the Store Manager is absent are the same as on days when the Store Manager is present and denies that District Managers engage in the same types of discussions with Shift Managers and Manager Trainees as they do with Store Managers.  Aldi denies the remaining allegations in Paragraph No. 41 of the Complaint.

**COMPLAINT ¶42:**

On Saturdays, the "special buy section" has to be set up after the store closes, usually at 9pm.  The Store Manager, Shift Manager and MIT typically alternate working the Saturday closing shift as it is most strenuous.  For the Saturday morning shift, a Store Manager is typically scheduled to work at 6am, but may arrive at 5am if a supply truck is expected to arrive, and do the same work as a Sunday morning shift.  For the closing shift, the Store Manager is typically scheduled to arrive at 11am and does the same general work they do on Sundays.

**ANSWER:**

Aldi denies that stores have always set up the special buy sections after the store closes.

Aldi also denies that all, or even most, stores close at 9 p.m.  Aldi further denies that there is a

"typical" work day or shift for Store Managers; each Store Manager sets his or her own work

schedule, which means that the work schedules of Store Managers vary based on their own

personal proclivities and what they have determined to be the best hours for their employees and

them to work based on the needs of the store on each given day.  By way of further response,

Store Managers who perform their duties of creating effective work schedules and delegating to

their employees as expected do not find it necessary to personally set up special buy sections

alone, rather than delegating those tasks to others.  Aldi denies the remaining allegations in

Paragraph No. 42 of the Complaint.

**COMPLAINT ¶43:**

At some point on Saturday, or earlier in the week, the District Manager faxes, emails, drops off or otherwise provides very detailed instructions, pictures and diagrams on how to set up the special buy section; Store Managers have no discretion on the set up.  This section can only be set up on Saturdays after the store closes, typically at 9pm.  Store Managers working the closing shift have to stay several hours after close to set up this section.  When the Budget of Hours permits, an hourly worker is scheduled to assist the Store Manager with the set up; otherwise, the Store Manager works alone until approximately 10pm to 1lpm (11 to 12 hours) to set up the special buy section.

**ANSWER:**

Aldi denies that the amount and type of involvement, if any, by District Managers in

special buy displays can be generalized across all District Managers, stores, Store Managers, and

22

over time.  Aldi also denies that Store Managers have no discretion in the merchandising of

special buy displays; to the contrary, merchandising product to maximize sales is one of the job

duties of a Store Manager as set forth in both the 2008 and 2014 versions of the Store Manager

job description.  Aldi denies the remaining allegations in Paragraph No. 43 of the Complaint.

## COMPLAINT ¶44:

Store Managers are salaried employees and do not receive hourly pay or overtime.  Store
Managers are formally scheduled to work, and payroll records reflect, only 50 hours per week.
However, Store Managers regularly work approximately 60 to 70 hours per week.  These
additional work hours are not recorded and Store Managers are not compensated for them.

## ANSWER:

Aldi admits that most, but not all, Store Managers are classified as salaried, exempt

employees and that those who are so classified do not record their actual hours worked.  Aldi

also admits that those Store Managers who are classified as salaried, exempt employees often,

but not always, schedule themselves to work approximately 50 hours per week and that, because

their salary is intended to cover all hours worked in any week, whether few or many, they are not

entitled to and do not receive additional pay when they work additional hours.  Aldi denies the

remaining allegations in Paragraph No. 44 of the Complaint.

## COMPLAINT ¶45:

However, if a Store Manager works fewer than 50 hours in a given week, he or she must
make those hours up in a future week.  For example, if a Store Manager has to leave three hours
before their shift is over, they must first ask their District Manager for permission to do so and
they are required to make up those three hours later in the week or the following week.

## ANSWER:

Aldi denies the allegations in Paragraph No. 45 of the Complaint.

## COMPLAINT ¶46:

Moreover, Store Managers have no "managerial" authority over the hourly employees.
While they typically write the schedules for hourly workers, it is the District Managers who

ultimately revise, edit and approve all the shifts, including those of the Store Managers themselves.

**ANSWER:**

Aldi admits that Store Managers are responsible for writing the weekly work schedules for themselves and their employees.  Aldi denies the remaining allegations in Paragraph No. 46 of the Complaint.

**COMPLAINT ¶47:**

Store Managers do not have the authority to hire, fire, grant promotions or raises, or impose disciplinary measures.  These decisions are made by the District Managers.

**ANSWER:**

Aldi admits that Store Managers do not have the authority to grant pay raises to their store employees.  Aldi also admits that while Store Managers are expected to interview possible new hires, make hiring recommendations, recommend employees who are ready for promotion, discipline their employees, and recommend employment termination when their discipline of store employees is not effective in correcting the performance issues, Store Managers are not vested with the authority to make these decisions unilaterally, just as no District Manager could make such decisions unilaterally with respect to Store Managers.  Aldi denies the remaining allegations in Paragraph No. 47 of the Complaint.

**COMPLAINT ¶48:**

The Store Manager does not even have access to the personnel files of the workers he or she is supposedly supervising.  That privilege also rests with the District Managers.

**ANSWER:**

Aldi admits that Store Managers do not maintain control over the personnel files as they are not stored within the stores.  Aldi denies that the personnel files are held by District Managers.  Aldi also denies that Store Managers cannot and do not supervise their employees; rather, Store Managers are responsible for evaluating the performance of their employees and

disciplining their employees when appropriate.  The paperwork that is generated by the Store

Manager for these purposes is included in the employees' personnel files.  Aldi denies the

remaining allegations in Paragraph No. 48 of the Complaint.

**COMPLAINT ¶49:**

Store Managers have no control over the flow of inventory into the store.  The CGOS
program automatically replenishes regular products that are low in stock.  The supply truck
delivers inventory to each Aldi store based on the automated CGOS list, which is password
protected and controlled by the District Managers.  The "highly perishable items" are ordered
manually using the MDT device, by any store employees, including the Cashiers.  However,
these highly perishable products must be ordered up to the "build-up" figure, which is also set up
by the District Managers.  A Store Manager, or anyone else ordering the highly perishable items,
must comply with the build-up or ask the District Manager's permission to deviate.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 49 of the Complaint.

**COMPLAINT ¶50:**

While Store Managers usually prepare the employee work schedule for the week, they
have very little discretion with the allocation of the limited number of hours among the hourly
employees.  The District Managers dictate precise rules that schedule makers must follow, such
as requiring that the shifts of the Store Managers and the Shift Managers or MITs do not overlap
by more than two hours.  The District Managers also set requirements on the start time for hourly
employees.  For example, on non-supply truck days, hourly workers cannot come in before 8am
and on weekends there must be an additional closing shift.  Moreover, all schedules must be
submitted to the District Managers for revisions, comments and ultimate approval.  As such, the
amount of scheduling discretion is so limited that the schedule is sometimes prepared by hourly
workers such as Shift Managers or MITs.

**ANSWER:**

Aldi admits that Store Managers have the authority to decide whether to delegate the

drafting of a particular weekly work schedule to a Shift Manager or Manager Trainee.  Aldi also

admits that a particular Division may issue guidelines or provide training to Store Managers to

help them create effective work schedules, but Aldi denies that there are rules for creating work

schedules and denies that guidelines on matters such as the amount of overlap in the shifts of

various managers on duty would be the same in each Division.  Aldi denies the remaining

allegations in Paragraph No. 50 of the Complaint.

## COMPLAINT ¶51:

When District Managers are not at the store they often call in to inquire about the sales figures, which are tracked by Aldi's computer system at each store.  The Store Manager, Shift Manager or MIT is then required to read off the sales figures to the District Manager.  If the figure is below target, the District Manager often directs the Store Manager, Shift Manager or MIT to send an hourly worker home in order to save on labor costs.

## ANSWER:

Aldi admits that both Store Managers and District Managers are responsible for keeping

an eye on the store's sales.  Aldi also admits that one of the Store Manager's responsibilities is to

decide when and how to revise employee work schedules in the event that the actual sales of the

store are less than what the Store Manager has forecasted for a particular day or week.  Aldi

denies that the amount of attention District Managers pay to store sales, how they handle

discussions of store sales, and what else they may discuss with the Store Manager or the manager

on duty during a discussion about store sales can be generalized across all District Managers as

the particulars vary based on whether the Store Manager is on duty, the Store Manager's

abilities, the needs of the store, the personal proclivities of the District Manager, and over time.

Aldi denies the remaining allegations in Paragraph No. 51 of the Complaint.

## COMPLAINT ¶52:

Store Managers may not schedule overtime.  Any requests for overtime must be approved in advance by the District Managers.

## ANSWER:

Aldi denies the allegations in Paragraph No. 52 of the Complaint.

**COMPLAINT ¶53:**

Store Managers cannot approve personal leave or medical leave.  That is done by the District Manager.  Indeed, all human-resources related issues go directly to the District Managers.

**ANSWER:**

Aldi admits that Stores Managers cannot decide whether to approve requests for leave under the Family Medical Leave Act or similar state laws but denies that District Managers possess such authority; the Benefits Department processes such leave requests.  Aldi admits that District Managers make the ultimate decision about personal leaves, other than vacation requests, after consultation with the Store Manager.  Aldi denies that personal leave in the form of vacation or other short periods of leave are made by the District Manager rather than the Store Manager.  Aldi denies the remaining allegations in Paragraph 53 of the Complaint.

**COMPLAINT ¶54:**

All Aldi store employees, including all managers and Cashiers, are required to wear Aldi uniforms.  The uniforms of the Store Managers, Shift Managers and MITs are identical, while the Cashiers have a slightly different uniform.  District Managers, on the other hand are advised to wear business attire.  Store Managers may not approve replacement uniforms for the hourly employees.  Such requests are made by filling out a special form and submitting it directly to the District Manager.

**ANSWER:**

Aldi admits that it provides all store employees with uniform shirts that they are required to wear while working and that the Store Associates (who are also known as Cashiers) wear different shirts than the Store Manager, Manager Trainee, and Shift Manager.  Aldi also admits that because the Store Manager may designate one of his or her Shift Managers or Manager Trainees to serve as the manager on duty in the Store Manager's absence for a certain shift or for certain hours of a shift, and thus perform his or her managerial duties for short periods of time, Manager Trainees and Shift Managers may wear the management shirt of a Store Manager.  Aldi

further admits that because District Managers are not store employees and do not regularly

interact with customers, they wear personal clothing (which often is business attire) rather than a

uniform that would identify them to customers as an Aldi employee.  Aldi admits that uniform

replacement requests are processed by the Division and, thus, are sent to the District Manager to

transmit to the Division.  Aldi denies the remaining allegations in Paragraph 54 of the

Complaint.

## COMPLAINT ¶55:

Store Managers do not approve the timecards of the hourly employees for weekly payroll
purposes.  The time cards must be submitted to the District Managers for verification.

## ANSWER:

Aldi denies the allegations in Paragraph No. 55 of the Complaint.  By way of further

response, Aldi states that Store Managers are required to review, correct as necessary, approve,

and release the time entries of their store employees for processing and payment by payroll.

District Managers review the payroll logs after the payments have been processed.

## COMPLAINT ¶56:

All email, mail, alarm notifications and security camera footage go directly to the District
Managers.

## ANSWER:

Aldi admits that District Managers, like Store Managers, have access to the alarm

notifications and security footage for the relevant stores.  Aldi denies the remaining allegations

in Paragraph No. 56 of the Complaint.

## COMPLAINT ¶57:

Store Managers have no authority to alter the design of the store or the location of
inventory on the shelves.  The configuration of each store, its inventory and the special buys
section is communicated to the Store Managers, or the Shift Managers or MITs in the Store
Managers' absence, by the District Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 57 of the Complaint.

**COMPLAINT ¶58:**

A Store Manager's job description, as provided by Aldi, specifically includes "Follow[ing] the instructions of the District Manager for special displays of designated items" and "Maintain[ing] a clean store, making sure that the conditions meet the approval of the District Manager."

**ANSWER:**

Aldi denies that the language provided in quotes in Paragraph No. 58 of the Complaint appears in either of the two Store Manager job descriptions that were in effect during the period potentially relevant to this lawsuit.  Aldi denies the remaining allegations in Paragraph No. 58 of the Complaint.

**COMPLAINT ¶59:**

Store Managers have no discretion relating to the safety and security of the stores.  Any security issues, such as customer shoplifting, employee related theft or government inspections, must be reported promptly to the District Managers.  Indeed, Store Managers have no authority to discipline other employees or make decisions relating to store security; such discretion is reserved for the District Managers.

**ANSWER:**

Aldi admits that Store Managers are expected to keep their District Manager informed of issues, such as shoplifting, theft, and government inspections but denies that Store Managers must do so in advance of, rather than after, dealing with the issue themselves.  Aldi denies that Store Managers have no discretion to handle such issues and denies that they have no authority to discipline employees; to the contrary, exercising discretion in and handling any immediate store, customer, and employee safety issues and disciplining employees, when necessary, are essential functions of a Store Manager.  Aldi denies the remaining allegations in Paragraph No. 59 of the Complaint.

**COMPLAINT ¶60:**

Store Managers are no longer permitted to mark down the prices of nearly expiring products; such mark downs are set only by the District Managers.  Only after the District Manager decides to mark down an item and makes that notation in the records can the Store Manager, or any other store employee, physically change the price of that item on the store floor.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 60 of the Complaint.

**COMPLAINT ¶61:**

Store Managers are not even permitted to order supplies for the store, such as pens, paper, brooms, cleaning supplies, paper towels, soup and toilet paper, in excess of $100 without prior authorization from a District Manager.

**ANSWER:**

Aldi admits that Store Managers can purchase store supplies up to $100.00 and that in the

rare instance that such supplies would cost more than $100.00, they should seek their District

Manager's approval. Aldi denies the remaining allegations in Paragraph No. 61 of the

Complaint.

**COMPLAINT ¶62:**

In sum, Store Managers have no greater authority than hourly exempt Shift Manager or MITs and have only slightly more authority than Cashiers.  The real discretion relating to the management of the stores is exercised exclusively at levels above the Store Managers.

**ANSWER:**

Aldi admits that Store Managers have greater authority than Cashiers.  Aldi denies the

remaining allegations in Paragraph No. 62 of the Complaint.

**COMPLAINT ¶63:**

Store Managers are paid salary based on 50 hours per week, regardless of the actual number of hours worked, and do not receive overtime compensation.  Additionally, Store Managers do not receive "Spread of Hours" pay pursuant to New York State law when they work more than ten hours in a single day.

**ANSWER:**

Aldi admits that those Store Managers who are classified as exempt, salaried employees receive a salary that is intended to cover all hours worked in any week, regardless of the actual number of hours worked, and that such Store Managers are not entitled to and do not receive overtime pay when they work additional hours.  Aldi denies that New York law regarding extra pay for more than ten hours of work applies to salaried, exempt Store Managers and denies that this New York law applies to any Store Managers who work outside of New York.  Aldi denies the remaining allegations in Paragraph No. 63 of the Complaint.

**B.   Achieving Productivity Figures Is Central To A Store Manager's Job:**

**COMPLAINT ¶64:**

A Store Manager's job security depends on meeting their "Productivity Figure."   This figure is a monthly and a yearly metric that is tracked daily.

**ANSWER:**

Aldi admits that a store's actual productivity is tracked for the day, month, and year against the store's forecasted productivity.  Aldi denies the remaining allegations in Paragraph No. 64 of the Complaint, as well as in the title to sub-section B.

**COMPLAINT ¶65:**

Store Managers are eligible for annual bonuses when they meet their Productivity Figures.  Conversely, Store Managers can be terminated if they fail to meet their Productivity Figures.

**ANSWER:**

Aldi admits that Store Managers' monthly bonuses are calculated based on a formula that includes store sales and the store's actual productivity for the month such that Store Managers are rewarded with a larger bonus when they do a better job of managing store inventory and operations well to drive strong sales and when they do a better job of ensuring that their employees work efficiently.  Aldi also admits that Store Managers are expected to work towards

the productivity targets that they have set, in collaboration with their District Manager, for their

store.  Aldi denies that Store Managers are terminated for failure to meet their productivity

targets as Plaintiffs' own repeated failure to meet such targets without employment termination

demonstrates.  Aldi denies the remaining allegations in Paragraph No. 65 of the Complaint.

**COMPLAINT ¶66:**

The Productivity Figure is equal to store sales divided by the Budget of Hours.  The Productivity Figures are set by Aldi, at levels above Store Manager, with no input from the Store Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 66 of the Complaint.

**COMPLAINT ¶67:**

On the other side of the equation, Store Managers also have very little ability to control store sales.  Indeed, Aldi markets itself as a discount grocery store and competes primarily on price.  Prices are set by Aldi, not Store Managers.  Store Managers have no authority to run promotions or special sales.  Instructions to do so come through the District Managers.

**ANSWER:**

Aldi admits that it is a discount grocery store and that one of many ways in which it

competes with other grocery store chains is through price.  Aldi denies the remaining allegations

in Paragraph No. 67 of the Complaint.

**COMPLAINT ¶68:**

The only variable in this equation that a Store Manager can directly affect is the Budget of Hours.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 68 of the Complaint.

**COMPLAINT ¶69:**

Store Managers are, therefore, constantly forced to lower the number of hours allocated to hourly non-exempt workers and instead "cover" those hours themselves, unpaid, in order to make their Productivity Figures.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 69 of the Complaint.  By way of further response, Aldi states that Store Managers are trained to and expected to effectively train their employees on how to complete their tasks properly, delegate the tasks to their employees, and manage them to ensure that all tasks are efficiently and timely completed.  Store Managers who perform their duties of training their employees, creating effective work schedules, and delegating to their employees as expected do not find it necessary to constantly perform the work of their hourly employees for them.

**COMPLAINT ¶70:**

Often, if a store's sales are not on target, the District Manager would adjust the Budget of Hours by sending hourly workers home or revising the work schedule in order to maintain the Productivity Figure.  When such hourly shifts are cut, the unfinished work falls squarely on the Store Manager as the only "exempt" store employee.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 70 of the Complaint.

**COMPLAINT ¶71:**

As such, Store Managers are often forced to work considerably more than 50 hours per week performing work that is otherwise done by the hourly employees, because the additional time they work is not counted (as they are not paid for it) and does not factor into the Productivity Figure equation.

**ANSWER:**

Aldi admits that the actual hours that Store Managers worked are not tracked and used in calculating a store's actual productivity.  Aldi denies the remaining allegations in Paragraph No. 71 of the Complaint.

**COMPLAINT ¶72:**

The Store Managers are essentially a flexible component at the center of Aldi's budget. They can be pushed to work more hours without costing Aldi anything in order to meet Productivity Figures.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 72 of the Complaint.

**COMPLAINT ¶73:**

Store Managers are given annual bonuses if they exceed their Productivity Figures requirements and are typically terminated if they fall short.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 73 of the Complaint.

**C.** **The Store Manager Job Differs Little From The Hourly Workers And Does Not Have More Responsibility**

**COMPLAINT ¶74:**

Aldi classifies its Cashiers, Shift Managers and MITs as non-exempt employees, and pays them on an hourly basis with overtime.

**ANSWER:**

Aldi admits the allegations in Paragraph No. 74 of the Complaint but denies the

allegations in the title to subsection C.

**COMPLAINT ¶75:**

However, the actual job of a Store Manager is virtually indistinguishable from that of an hourly worker such as a Shift Manager or an MIT.  In practice, Store Managers, Shift Managers and MITs are commonly referred to, by Aldi, collectively as "managers."

**ANSWER:**

Aldi admits that Shift Managers and Manager Trainees are job titles that both contain the

word "manager."  Aldi also admits that when a Store Manager designates one of his or her Shift

Managers or Manager Trainees to be the manager on duty in the Store Manager's absence for a

certain shift or for certain hours of a shift, that that Shift Manager or Manager Trainee is

expected, as the manager on duty, to assume some, but not all, of the managerial duties of a Store

Manager for that short period of time.  Accordingly, when discussing the managerial duties that

are performed in the stores, Aldi sometimes refers to the various individuals who may perform

these duties collectively as the "managers" or the "management team."  Aldi denies, however, that the actual job of a Store Manager is "virtually indistinguishable" form that of a Shift Manager or a Manager Trainee.  Shift Managers are also often scheduled to work as non-managerial Store Associates and are paid at a lower hourly rate when they are scheduled to work in this non-managerial role.  Manager Trainees perform many of the duties of a Store Manager with the Store Manager's oversight because the Store Manager is training the Manager Trainee to become a Store Manager.  Many of the Store Manager's most important duties, however, including, but not limited to, disciplining employees, evaluating employees' performance, interviewing possible new hires, recommending whom to hire, recommending employees for promotion, recommending employees for employment termination, developing action plans for store improvement, creating monthly budgets for the store, determining weekly work schedules, and several other such duties regarding overall store operations are not job duties required of the Manager Trainee or Shift Manager.  Aldi denies the remaining allegations in Paragraph No. 75 of the Complaint.

**COMPLAINT ¶76:**

There is nothing that a Store Manager does that another manager does not regularly handle on a routine basis.  As such, Aldi has strict rules which forbid scheduling overlap of more than two hours for any manager.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 76 of the Complaint.

**COMPLAINT ¶77:**

A typical Aldi store officially functions for more than 50% of its hours of operation without the presence of a Store Manager.  The remaining hourly employees routinely perform all the same tasks that a Store Manager would otherwise do for a majority of the time Aldi is actually open for business.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 77 of the Complaint.

**COMPLAINT ¶78:**

Shift Managers and MITs are even required to have copies of the store keys as well as access to an extra office key.

**ANSWER:**

Aldi admits that because a Shift Manager or Manager Trainee serves as the manager on duty when the Store Manager is absent, Shift Managers and Manager Trainees have store keys and office keys.  Aldi denies the remaining allegations in Paragraph No. 78 of the Complaint.

**COMPLAINT ¶79:**

Indeed, there is nothing that a Store Manager is tasked to do that an hourly, nonexempt Shift Manager or MIT does not routinely handle.  For example, like Store Managers, every Shift Manager and MIT is required to perform a random customer check every shift, the Shift Managers sometimes prepare the weekly schedules, every store employee is trained on using the forklift, every store employee uses the MDT device to order highly perishable items, any store employee can add additional store supplies to the order as long as it does not exceed $100, Shift Managers and MITs may "count out" the Cashiers' tills before they leave, if a money car does not come for pickup, any store employee can deliver the store's money bag to the bank, all store employees are required to remove expired items from the shelves, all store employees are trained to rotate products from the stock room to avoid "outs" on the floor, all store employees operate the cash registers, all store employees are responsible for unloading the supply truck, stacking the shelves and cleaning the store.

**ANSWER:**

Aldi admits that all Store Associates, Shift Managers, and Manager Trainees are trained to operate a forklift, are expected to remove expired items from the shelves, are trained and expected to rotate products from the stock room to avoid "outs" on the floor, operate cash registers, and are trained and expected to stack shelves and clean the store but Aldi denies that any of these are among the primary duties expected of the Store Manager.  Aldi also admits that when a Shift Manager or Manager Trainee is the manager on duty in the Store Manager's absence, he or she is expected to perform some of the duties of a Store Manager, which may

include the performance of a random customer order check, ordering product, ordering store

supplies, creating the weekly work schedule, ensuring that the Cashiers' drawers or tills balance

before they leave, and delivering the store's money bag to the bank if it is not picked up from the

store.  Aldi denies that the Shift Managers and Manager Trainees are expected or entrusted to

perform all of the duties of a Store Manager and denies that they perform managerial duties on

every shift that they work the way a Store Manager does.  Aldi denies the remaining allegations

in Paragraph No. 79 of the Complaint.

**COMPLAINT ¶80:**

Moreover, the only difference between the work performed by Store Managers, Shift
Managers and MITs compared to that of Cashiers, is that Cashiers need "managers" to count out
their tills, Cashiers do not have keys to enter the store, Cashiers are not required to perform
customer checks every shift and Cashiers cannot approve restricted transactions at the register,
such as exchanges or returns, which any "manager" may approve.

**ANSWER:**

Aldi admits that Store Associates do not have keys to the store, do not perform customer

order checks, and cannot perform certain types of exchanges or returns without manager

approval.  Aldi also admits that Shift Managers and Manager Trainees perform the same duties

as Store Associates when they are not acting as the manager on duty, which is why they are not

classified as exempt from overtime pay the way many Store Managers are.  Aldi denies the

remaining allegations in Paragraph No. 80 of the Complaint.

**COMPLAINT ¶81:**

Aldi's corporate website contains videos that exhibit the identical nature of the work
performed by Store Managers, Shift Managers, MITs and Cashiers, which Aldi justifies as
"teamwork."[1] One video shows "Ben," a Store Manager, operating a forklift, pulling a pallet of
inventory boxes, stocking shelves, waxing and shining the store floors and working with a
Cashier to organize and align products on the shelves, while talking about all the demanding
tasks and jobs that need to be completed every day.

---

[1] http://aldistorejobs.com/our-people?vqvideo/.

**ANSWER:**

Aldi admits that its website includes a video that is mislabeled as "Meet Ben: Store Manager" even though, when the video begins to play, it makes clear that Ben is a Shift Manager instead. Aldi also admits that the video shows Ben, the Shift Manager, pulling pallets of inventory with a pallet jack, stocking shelves, aligning product on shelves, and using a machine to clean the floor and that an overlaid speech by Ben explains why he likes his job with Aldi. Aldi denies that Ben is shown operating a forklift in the video, denies that Paragraph No. 81 of the Complaint provides a comprehensive list of the duties Ben is seen performing during the video, denies that his overlaid speech provides a comprehensive discussion of the tasks that he completes every day, and denies that the video is intended to capture all duties of a Shift Manager. Aldi denies the remaining allegations in Paragraph No. 81 of the Complaint.

**COMPLAINT ¶82:**

The Shift Manager video shows "Kim" pulling a pallet of inventory boxes, working with an MIT to stock the shelves and interacting with customers, while stating that because there are only two or three people on the floor, everyone has to pitch in and help do the work and that they all have to "multitask to get everything done." The video also shows Kim working side by side with Ben the Store Manager while operating the cash registers.

**ANSWER:**

Aldi admits that the overlaid speech by Kim while the video is playing includes statements by Kim that "sometimes there are only two to three people on the floor, so we all have to multitask to get everything done," and "if one person's had a bad day or has a lot to do, everyone encourages them and pitches in to help" but denies the attempt in Paragraph No. 82 of the Complaint to mischaracterize this statement as a suggestion that there are always only two or three people on the floor, denies that the number of people on the floor is the same as the total number of employees working in the store, or that the staffing levels are the same in every store. Aldi also admits that the video shows Kim using a pallet jack to move inventory, stocking

shelves, interacting with customers, and operating a cash register.  Aldi denies that the video is

intended to capture all duties of a Shift Manager, denies that "Ben" is a Store Manager, and

denies that any of the other employees seen working in the store are identified in the video.  Aldi

denies the remaining allegations in Paragraph No. 82 of the Complaint.

## COMPLAINT ¶83:

The MIT video shows "Amanda" organizing and rotating products, interacting with
customers, working with Kim the Shift Manager to stock the shelves, moving carts of inventory
in and out of the stock room and sweeping the floor, while stating that everyone has to "give
120% and be a team player."

## ANSWER:

Aldi admits that the overlaid speech by Amanda while the video is playing includes the

statement by Kim that everyone has to "give 120% and be a team player" and admits that the

video shows Amanda performing the duties described in Paragraph No. 83 of the Complaint.

Aldi denies that the video is intended to capture all duties of a Manager Trainee and denies that

any of the other employees seen working in the store are identified in the video.  Aldi denies the

remaining allegations in Paragraph No. 83 of the Complaint.

## COMPLAINT ¶84:

The Cashier video shows "Miriam" doing the same tasks as those performed by the
"managers."  In the video, Miriam is interacting with customers, operating the cash register,
stocking and organizing the products on the shelves, while stating that if you are a hardworking
person, then "Aldi is the place for you."

## ANSWER:

Aldi admits that the Store Associate video shows Miriam interacting with customers,

cashiering, and stocking and straightening product on the shelves.  Aldi also admits that the

overlaid speech by Miriam while the video is playing includes the statement by Miriam that "if

you are a friendly, hardworking person, Aldi is the place for you."  Aldi denies that any

"managers" are seen in Miriam's video, denies that the Shift Manager and Manager Trainee

duties showed the exact same set of tasks or that the actual, complete job duties of a Store

Associate, Shift Manager, and Manager Trainee are the same.  Aldi denies the remaining

allegations in Paragraph No. 84 of the Complaint.

## COMPLAINT ¶85:

The Store Manager, Shift Manager and MIT are all displayed wearing identical uniforms doing exactly the same work: stocking shelves, organizing and rotating products, cleaning the store, interacting with customers and operating the cash register.

## ANSWER:

Aldi admits that Shift Manager Ben, Shift Manager Kim, and Manager Trainee Amanda

are all wearing short-sleeve, button-up, collared blue shirts with the Aldi logo in the videos

described in Paragraph Nos. 81 through 83 of the Complaint.  Aldi denies that any Store

Manager is identified as one of the employees in any of the videos described in Paragraph Nos.

81 through 84 of the Complaint, denies that the employees in the Shift Manager and Manager

Trainee videos are all doing the exact same work, and denies that any of the videos are intended

to capture all duties of the position of the featured employee.  Aldi denies the remaining

allegations in Paragraph No. 85 of the Complaint.

### D.  District Managers Are The Real Managers:

## COMPLAINT ¶86:

It is the District Managers who control and truly manage the business of their assigned 3 to 5 stores.

## ANSWER:

Aldi denies the allegations in Paragraph No. 86 of the Complaint, and in the allegations

in the title to subsection D.

40

**COMPLAINT ¶87:**

As expressed by District Manager "Lou" in Aldi's job recruitment video – his peer advisor was "excellent" in teaching him "everything [he] needed to learn about running a store.[2] Likewise, in another video, "Ryan" states that a District Manager has to "take the role of a leader," "manage people" and "operate [each store] as their own business."

**ANSWER:**

Aldi admits that Lou states that his Peer Advisor was excellent in teaching him "everything [he] needed to learn about running a store and eventually running a district."  This is indicative of District Manager's training alongside a Store Manager and subsequently as an acting Store Manager, an essential component of their development allowing them to deeply understand the role and responsibilities of their Store Managers.  Aldi admits that Ryan remarks that "a person that is going to be successful at Aldi is going to have the ability to be self-motivated, to be kind of an entrepreneur, if you will.  They have to look at each store as their own business."  Aldi admits that Ryan states that, if an individual wants to "take the role of a leader" and "manage people," then this is the career for you.  Aldi denies that either District Manager video is intended to capture all duties of a District Manager or that they establish that Store Managers do not manage simply because District Managers also manage.  Aldi denies the remaining allegations in Paragraph No. 87 of the Complaint.

**COMPLAINT ¶88:**

District Managers direct the conduct of the Store Managers and communicate to them the specific guidelines, objectives, policies and practices that need to be performed at each store. Moreover, the District Managers visit each store location two to three times per week and specifically instruct Store Managers on the precise method in which such objectives are to be implemented.

---

[2] http://aldiuscareers.com/district-managers/our-people.

**ANSWER:**

Aldi admits that there may be weeks in which a particular District Manager visits a specific store two times, three times, or some other number of times and that the number of visits per week vary by week, by manager, and by store.  Aldi also admits that one of the purposes of the District Manager's visit is to communicate information from the Division about changes in guidelines and policies, which information is often Division-specific and may vary from one Division to the next.  Aldi denies that the particular communications between any District Manager and Store Manager can be generalized across all District Managers as such particulars vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 88 of the Complaint.

**COMPLAINT ¶89:**

District Managers typically visit each store they supervise three times per week.  The first visit usually lasts five to six hours, while subsequent visits last approximately three to four hours. On their first visit of the week, District Managers typically arrive at the store around opening time and perform various managerial tasks.  Such tasks typically include checking the balance of the cash registers against the logs, confirming bank deposits, setting price mark downs of nearly expiring products, printing and filing the authorization forms for the price changes, reading mail, checking email, reviewing security camera footage and conducting other managerial and supervisory duties.

**ANSWER:**

Aldi admits that a District Manager typically visits each of his or her assigned stores weekly but denies that each District Manager makes the same number of visits each week, denies that the visits are of the same frequency and duration, denies that each visit is for the same purposes, and notes that, confirming the variation in the purposes of the visits, the description in Paragraph No. 37 of the Complaint of what the "first visit of the week" entails is different from the "first visit of the week" as described in Paragraph 89 of the Complaint.  Aldi admits that

District Managers are managers with supervisory and managerial authority over Store Managers and that, during some of their visits, District Managers may conduct cash audits, review security camera footage (as do Store Managers), and use the Store Manager's office to check their email and any paperwork that the Store Manager has left for the District Manager to see.  Aldi denies the remaining allegations in Paragraph No. 89 of the Complaint.

### COMPLAINT ¶90:

The District Manager also does a detailed walk-through with a Store Manager, or with a Shift Manager or MIT if a Store Manager was not scheduled to work that day.  This walk-through typically begins outside and continues through every aisle, section and area of the store and consists of detailed instructions and commands from the District Manager ranging from taking out the trash to shoveling the snow, removing excess weeds and shrubbery, cleaning the bathrooms, dusting various crevices of the store, sweeping the aisles, moping the floors, waxing and shining the store floors, cleaning miscellaneous spills, lining up products on shelves so they all faced the right direction, rotating product from the stock room, removing expired products, reorganizing the special section and correcting any other imperfections detected by the District Manager.

### ANSWER:

Aldi admits that one of the several reasons for the District Manager's store visits is to serve as a second set of eyes for the Store Manager in identifying store appearance and safety issues that the Store Manager should direct his or her employees to address.  Aldi admits that a District Manager may visit a store at a time when the Store Manager is not working but denies that District Managers' visits on days when the Store Manager is absent would be the same as on days when the Store Manager is present and denies that District Managers engage in the same types of discussions with Shift Managers and Manager Trainees as they do with Store Managers. Aldi also denies that the focuses of such a store walk and how the District Manager handles the discussion with the Store Manager about a store walk are the same for every District Manager, store, Store Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 90 of the Complaint.

**COMPLAINT ¶91:**

Upon completion of this walk-through, the District Manager typically continues performing various managerial tasks, which may include reviewing resumes of prospective employees, scheduling interviews and tracking the sales figures, productivity figures and allocated employee work hours for the following week.  Sometimes, the District Manager adjusts the weekly schedule or sends certain hourly employees home if the store is not meeting their targeted sales, in order to maintain productivity.  The District Manager also reviews orders to ensure that the store has adequate inventory, checks pricing and adjusts the CGOS guidelines.

**ANSWER:**

Aldi admits that District Managers are managers who perform managerial tasks and that, like Store Managers, those tasks may, at times, include reviewing resumes of prospective employees (which often have been flagged by the Store Manager based on the Store Manager's prior screening of the resumes), reviewing the store's sales and actual productivity, and reviewing reports of inventory loss.  Aldi denies that the particular tasks performed by District Managers can be generalized across all District Managers as the specific duties they perform vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 91 of the Complaint.

**COMPLAINT ¶92:**

Towards the end of a District Managers' day at the store, they follow up with the Store Manager, or the Shift Manager or MIT in the Store Managers' absence, to ensure that all the issues they previously noted on their walk-through were remedied.

**ANSWER:**

Aldi denies that the particular tasks performed by District Managers can be generalized across all District Managers as the specific duties they perform vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 92 of the Complaint.

**COMPLAINT ¶93:**

The District Manager usually makes two additional visits to the store which last approximately three to four hours.  Often times, the Store Manager is not present for at least one of these visits.

**ANSWER:**

Aldi denies that the frequency and duration of store visits by District Managers and whether the Store Manager is present for each visit can be generalized across all District Managers as the particulars vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 93 of the Complaint.

**COMPLAINT ¶94:**

On their visits to the store, District Managers typically address personnel issues, such as the need to discipline an employee, or respond to requests for personal or medical leave.  District Managers also have to authorize store expenses in excess of $100 and review security camera footage to ensure that the Store Manager and all Shift Managers and MITs had performed a random customer check at least one time per shift.

**ANSWER:**

Aldi admits that District Managers discuss personnel issues with Store Managers, have the authority to approve expenses for store supplies in the rare instance that the Store Manager needs to purchase more than $100 worth of store supplies, and may review security camera footage at times.  Aldi denies that the particular tasks performed by District Managers on any visit and the reasons for those tasks can be generalized across all District Managers, stores, Store Managers, and over time.  Aldi denies the remaining allegations in Paragraph No. 94 of the Complaint.

**COMPLAINT ¶95:**

On their subsequent visits to the store, the District Manager follows up to ensure that all their previous instructions and directions were carried out.  The District Manager takes the Store Manager, or the Shift Manager or MIT in the Store Managers' absence, on additional walks

through the store and gives additional instructions on things that need further attention, such as more cleaning, display changes or additional product rotation.  On such walks, the District Manager also notes any product shortages and raises its quantity in the CGOS.

**ANSWER:**

Aldi denies that the particular tasks performed by District Managers on any visit can be generalized across all District Managers as the specific duties they perform during a visit vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 95 of the Complaint.

**COMPLAINT ¶96:**

The District Manager also performs additional administrative and managerial tasks and continues to track the sales performance of the store and adjusts the work schedule accordingly. The District Manager also typically continues to examine the CGOS and adjust the build-up figures to ensure that proper inventory amounts are being ordered.

**ANSWER:**

Aldi admits that, as managers, District Managers perform administrative and managerial tasks.  Aldi denies that the particular tasks performed by District Managers on any visit can be generalized across all District Managers as the specific duties they perform during a visit vary based on the Store Manager's abilities, the needs of the store, the personal proclivities of the District Manager, and over time.  Aldi denies the remaining allegations in Paragraph No. 96 of the Complaint.

**COMPLAINT ¶97:**

About once per week, the District Managers perform a random cash register audit to ensure that the balance in the register matched the receipts.  If the balance is off by even a few dollars, the District Manager writes-up the Cashier and puts it in their file; if the Cashier was more than $100 off, they will be immediately terminated by the District Manager.

**ANSWER:**

Aldi admits that District Managers may perform cash register audits at times.  Aldi denies that the particulars of such audits and what the District Managers may do as the result of a given audit can be generalized across all District Managers, stores, store employees, and over time. Aldi also denies that the District Managers discipline and/or terminate store employees without the Store Manager's involvement.  Aldi denies the remaining allegations in Paragraph No. 97 of the Complaint.

**COMPLAINT ¶98:**

If the Store Manager is not on target to meet their Productivity Figure requirements, the District Manager directs the Store Manager to cut the shifts of hourly employees (which are factored into the Productivity Figure) and instead have the Store Manager work additional hours (which they are not paid for and in turn are not factored into the Productivity Figure).

**ANSWER:**

Aldi denies the allegations in Paragraph No. 98 of the Complaint.

**COMPLAINT ¶99:**

If the Store Manager fails to meet their Productivity Figure requirement, the District Manager typically prepares a disciplinary write-up documenting the "situation" and places it into the Store Manager's file.  After several such write-ups the Store Manager would be terminated.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 99 of the Complaint.

**COMPLAINT ¶100:**

District Managers have discretion to classify and reclassify hourly employees as "eligible" or "casual" employees for benefits purposes, without any regard or input from Store Managers.  Moreover, hourly employees must notify the District Managers, not the Store Managers, of any changes in their personal information.  The 2015 Aldi Employee Handbook ("Handbook") states that access to employee records is restricted to District Managers as they "have legitimate business reasons for accessing your personnel data."  The Handbook also states that District Managers, rather than Store Managers, are to be "notified immediately" of any accident reports submitted to the divisional office.  Likewise, any security or theft-related suspicions are to be reported to the District Managers.

**ANSWER:**

Aldi admits that its Store Employee Handbook, effective January 1, 2015, ("2015 Handbook") which applies to all store employees, including Store Managers, provides that "access to employee records by internal personnel will be restricted to persons, such as your District Manager, who have legitimate business reasons for accessing your personnel data" and that accident reports should be submitted to the divisional office and "your District Manager notified immediately."  Aldi also admits that Store Managers should report security- or theft-related suspicions to District Managers to inform them of operations concerns in their stores. Aldi denies the remaining allegations in Paragraph No. 100 of the Complaint.

**COMPLAINT ¶101:**

The District Managers have sole authority to waive the requirement that hourly employees work their full scheduled shift the day before and after a holiday in order to be eligible for holiday benefits.  Even Store Managers must seek the approval of District Managers before taking a day off before or after a holiday.  All schedules must to be approved by District Managers before becoming final.  Moreover, District Managers often adjust and revise the schedules based on whether the store is on target with its Productivity Figures.

**ANSWER:**

Aldi admits that the 2015 Handbook states that "the day before and after rule may be waived by the District Manager."  Aldi denies the remaining allegations in Paragraph No. 101 of the Complaint.

**COMPLAINT ¶102:**

Moreover, the District Managers, not the Store Managers, have discretion to grant personal leave to hourly employees.

**ANSWER:**

Aldi admits that District Managers make the ultimate decision about personal leaves, other than vacation requests, after consultation with the Store Manager.  Aldi denies that personal leave in the form of vacation or other short periods of leave are made by the District

Manager rather than the Store Manager.  Aldi denies the remaining allegations in Paragraph 102

of the Complaint.

**COMPLAINT ¶103:**

Overtime scheduling can only be authorized by the District Managers, not the Store
Managers.

**ANSWER:**

Defendant denies the allegations in Paragraph No. 103 of the Complaint.

**COMPLAINT ¶104:**

All military leave questions are directed to the District Managers, not Store Managers.

**ANSWER:**

Aldi admits that the 2015 Handbook instructs all store employees, including Store

Managers, to contact their District Manager if they have a question concerning military leave.

Aldi denies the remaining allegations in Paragraph No. 104 of the Complaint.

**COMPLAINT ¶105:**

All hiring, termination and promotions decisions regarding hourly workers are made by
the District Managers, not the Store Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 105 of the Complaint.

**COMPLAINT ¶106:**

All employee resignations have to be reported to the District Managers.

**ANSWER:**

Aldi admits that Store Managers are expected to inform the District Manager if one of his

or her employees resigns.  Aldi denies the remaining allegations in Paragraph No. 106 of the

Complaint.

**COMPLAINT ¶107:**

All hourly employee time cards have to be submitted to the District Managers, not the Store Managers, for verification.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 107 of the Complaint.

**COMPLAINT ¶108:**

All uniform replacement requests from hourly employees are to be made directly to the District Managers, not the Store Managers.

**ANSWER:**

Aldi admits that the Employee Uniform Order Form is submitted to the District Manager

by the store for purposes of forwarding to the applicable Division to allow consolidation of all

orders placed for uniforms.  Aldi denies the remaining allegations in Paragraph No. 108 of the

Complaint.

**COMPLAINT ¶109:**

The flow of inventory to each store is directly controlled by the District Managers, not the Store Managers.  It is the District Managers who have access the CGOS program and are able to set and adjust the guidelines and "build-up" figures, not the Store Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 109 of the Complaint.

**COMPLAINT ¶110:**

The District Managers, rather than the Store Managers, determine the physical configuration of the store and the special buy section.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 110 of the Complaint.

**COMPLAINT ¶111:**

All store employees, including Cashiers, may order supplies for the store, such as pens, paper, brooms, cleaning supplies, paper towels, soup and toilet paper; however, any purchase over $100 must first be authorized by a District Manager, not the Store Manager.

**ANSWER:**

Aldi admits that store management can purchase store supplies up to $100.00 and that, in the rare instance that the cost of store supplies needed will exceed $100.00, it should be approved by the District Manager.  Aldi denies that Store Associates may order store supplies without Store Manager approval.  Aldi denies the remaining allegations in Paragraph No. 111 of the Complaint.

**COMPLAINT ¶112:**

All price changes and markdowns must be authorized by the District Managers, not the Store Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 112 of the Complaint.

**COMPLAINT ¶113:**

Moreover, the District Managers, rather than the Store Managers, must be immediately notified of any repairs needed on equipment or the store building.  Likewise, any inventory loss due to inferior or damaged products must be reported to the District Managers.

**ANSWER:**

Aldi admits that Store Managers should be personally aware of any repairs needed on equipment or the store building and any inferior or damaged product issues raised by an employee or customer such that it is not necessary to notify them of such matters whereas the District Manager may not be timely aware of such issues in the absence of notification and thus requires same.  Aldi denies the remaining allegations in Paragraph No. 113 of the Complaint.

**COMPLAINT ¶114:**

The Aldi website also contains videos displaying the jobs of District Managers.[3]  The District Manager videos are strikingly different from those of the managers and the Cashier.  First the Aldi website shows District Managers wearing business suits rather than the manager's uniform.  One District Manager video shows "Lou" standing in an Aldi store, yet unlike the Store Manager, Shift Manager and MIT, he was doing absolutely no manual labor.  Instead the

---

[3] http://aldiuscareers.com/district-managers/our-people.

video shows another "manager" (based on the uniform) pulling an inventory cart out of the stock room.  In the video, Lou talks about how his peer advisor taught him "how to run a store," how he personally recruited and trained a Store Manager and how being a District Manager is "not a job but a career."

**ANSWER:**

Aldi admits that the Aldi website contains video testimonials of individual District Managers and that the District Managers are wearing business suits because they are not store employees, do not regularly interact with customers, and thus do not need to be identifiable to customers through the wearing of a uniform.  Aldi also admits that the overlaid speech by Lou playing during his video includes, among other statements, the statement by Lou that his Peer Advisor was excellent in teaching him "everything [he] needed to learn about running a store and eventually running a district" and that he thinks the District Manager job "is not a job; this is a career."  Aldi further admits that the speech overlaid in Lou's video also includes a discussion by Lou of how he recruited and trained a Store Manager and that that Store Manager had then "done a phenomenal job in leading that staff and motiving them.  [The Store Manager has] grown sales, he's improved customer service and reduced loss, and I feel very proud of the accomplishments of that store."  Aldi admits that the District Managers are not shown in their videos performing the duties of the Shift Managers, Manager Trainee, and Store Associate as discussed in Aldi's answers to Paragraph Nos. 81 through 84 of the Complaint.  Aldi denies that the District Manager videos are intended to capture the duties of a District Manager or that the videos establish that Store Managers do not manage simply because District Managers also manage. Aldi denies the remaining allegations in Paragraph No. 114 of the Complaint.

**COMPLAINT ¶115:**

A second District Manager video shows "Synticee" also dressed in a business suit again standing in an Aldi store and performing absolutely no manual labor.  The video shows Synticee speaking with Ben the Store Manager while she holds a clipboard and points at various products on a shelf.  The video also shows Synticee speaking about how store employees work like a team

and do what it takes "to get the job done" while the video shows two different "managers" (based on their uniforms) stocking shelves and interacting with customers.

**ANSWER:**

Aldi admits that the video shows Synticee as well as another woman in a suit, with the other woman in the suit moving a box of produce while Synticee speaks directly to the camera at times and is shown speaking with an Aldi manager at times.  Aldi also admits that Synticee is holding papers during part of her interaction with the manager and that the manager is holding the papers in another part of the video.  Aldi admits that Synticee states that her co-workers are "driven" and "passionate about delivering the best work environment that we can for our employees" and "everyone does whatever it takes to get the job done."  Aldi denies that the video is intended to capture the duties of a District Manager, denies that "Ben" is a Store Manager, denies that any of the other employees seen working in the store are identified in the video, and denies that the video establishes that Store Managers do not manage simply because District Managers also manage.  Aldi denies the remaining allegations in Paragraph No. 115 of the Complaint.

**COMPLAINT ¶116:**

Another video shows "Sarah" [sic] a Director of Administration, explaining how she was previously a District Manager and "love[s] the responsibility involved with the District Managers' position."  Sarah [sic] goes on to explain that she likes "the fact that you are the one that is hiring and terminating employees" and that "you are the one that has the opportunity to promote the people that work out well for you."  She again states that the best part of being a District Manager is the responsibility that comes with the position.

**ANSWER:**

Aldi admits that Sara is a Director of Administration who explains why she enjoyed being a District Manager and that Paragraph No. 116 pulls out partial quotes from some of Sara's video testimonial.  Aldi denies that the video is intended to capture the duties of a District Manager and denies that the video establishes that Store Managers do not have responsibility and

make hiring and firing decisions simply because these are duties that Sara performed as a District Manager.  Aldi denies the remaining allegations in Paragraph No. 116 of the Complaint.

**COMPLAINT ¶117:**

Another video shows "Ryan" talking about "what it's like to be a District Manager" stating that a District Manager has to "look at each store as their own business and be able to operate it as their own business."  He emphasizes that a District Manager has to be able to "take the role of a leader."  Ryan concludes by stating that if you are "someone who really wants to lead people and manage people and have an impact in peoples' lives, in various forms and various ways, this is the career for you."

**ANSWER:**

Aldi admits that Ryan remarks that "a person that is going to be successful at Aldi is going to have the ability to be self-motivated, to be kind of an entrepreneur, if you will.  They have to look at each store as their own business."  Aldi admits that Ryan concludes by stating that if you are "someone who really wants to lead people and manage people and have an impact in peoples' lives, in various forms and various ways, this is the career for you."  Aldi denies that the video is intended to capture the duties of a District Manager and denies that the video establishes that Store Managers do not take ownership of their stores and lead and manage people simply because Ryan did such duties as a District Manager.  Aldi denies the remaining allegations in Paragraph No. 117 of the Complaint.

**COMPLAINT ¶118:**

Another video shows "Tricia" a Director of Operations, stating that once a District Manager is assigned to a district they are responsible for "everything that goes on in those stores."

**ANSWER:**

Aldi admits that, in the video of Tricia, a Director of Operations, she states that after a District Manager works in a store to understand the job of a Store Manager, the District Manager gets a permanent district and is responsible "for everything that goes on in those stores.  You

need to make sure that your Store Managers are informed of what they are responsible for and that you are supporting them.  And that is a big responsibility of a District Manager, probably the biggest--is to ensure they are giving support to the stores they are overseeing."  Aldi denies that the particulars of the District Manager's responsibility versus the responsibilities of the Store Manager are described in the video.  Aldi denies the remaining allegations in Paragraph No. 118 of the Complaint.

## COMPLAINT ¶119:

From the perspective of the District Managers, all the workers in the stores, including the Store Managers, have essentially the same job function.  They spend most of their time unloading trucks, stocking the shelves, helping customers and cleaning.  The few tasks that might be considered managerial can be performed by hourly workers as well.

## ANSWER:

Aldi denies the allegations in Paragraph No. 119 of the Complaint.

## COMPLAINT ¶120:

Unlike a Store Manager, a District Manager is required to have a Bachelor's degree and a minimum grade point average (GPA).  Moreover, a Store Manager can never be promoted to a District Manager.  The highest position a Store Manager can achieve is Warehouse Supervisor – which also does not require a Bachelor's degree.  District Managers, on the other hand, are not limited in their upward mobility and promotion eligibility.

## ANSWER:

Aldi admits that District Managers are required to have a Bachelor's degree, that Store Managers and Warehouse Supervisors are not, and that a change from Store Manager to Warehouse Supervisor would be considered a promotion.  Aldi denies the allegation that "a Store Manager can never be promoted to a District Manager."  Aldi denies the remaining allegations in Paragraph No. 120 of the Complaint.

## COMPLAINT ¶121:

In sum, it is the District Managers who are the true "managers" under the FLSA and the NYLL, not the Store Managers.

55

**ANSWER:**

Aldi denies the allegations in Paragraph No. 121 of the Complaint.

## THE PLAINTIFFS

**A.      Anthony Griffin:**

**COMPLAINT ¶122:**

Mr. Griffin was employed by Aldi from August 2004 to July 2014.  He started as an MIT and nine months later was promoted to Store Manager at the Camillus, New York location. Three years later he moved to the Erie Blvd., Syracuse location ("Erie Store") and continued working there as a Store Manager until July 2014.

**ANSWER:**

Aldi admits that Plaintiff Griffin was employed by Aldi from on or about September 22,

2004 until July 28, 2014.  Aldi admits that Plaintiff Griffin started as a Manager Trainee, that he

was promoted to Store Manager of the Camillus, New York store in mid-2005, and that he

transferred to the Erie Store sometime in 2009 where he continued to work as Store Manager

until his termination on July 28, 2014.  Aldi denies the remaining allegations in Paragraph No.

122 of the Complaint.

**COMPLAINT ¶123:**

As a Store Manager, Mr. Griffin was moved to salary compensation, rather than hourly and reclassified as an exempt employee.  However, there was no difference in the work that he had done as an MIT compared to a Store Manager.  Moreover, as a Store Manager, Mr. Griffin's work was no different than that of a Shift Managers' who routinely performed identical tasks.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff Griffin was classified as a salaried, exempt

employee and received his full base salary each week regardless of how few or many hours he

actually worked. Aldi denies the remaining allegations in Paragraph No. 123 of the Complaint.

**COMPLAINT ¶124:**

As a Store Manager, Mr. Griffin was required to work at least 50 hours per week but routinely worked approximately 65 hours every week.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 124 of the Complaint.

**COMPLAINT ¶125:**

Mr. Griffin was not permitted to leave the store until the Shift Manager or MIT arrived; if they were late or called out, Mr. Griffin had to cover their shifts for no additional pay.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff Griffin received his full salary each week, regardless of how few or many hours he actually worked.  Thus, if he chose to cover the shift of Shift Manager or Manager Trainee rather than having another Shift Manager or Manager Trainee cover the shift, he did not receive additional pay for making the choice to work those hours himself.  Aldi denies the remaining allegations in Paragraph No. 125 of the Complaint.

**COMPLAINT ¶126:**

Mr. Griffin often worked his days off and the shifts of hourly workers in order to "hit" his required Productivity Figure and avoid termination.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 126 of the Complaint.

**COMPLAINT ¶127:**

Mr. Griffin spent less than one hour each week preparing the weekly schedule, including the time he spent revising it in accordance with the edits he received from his District Manager and faxing it back and forth to obtain final approval.  Moreover, it was often the two Shift Managers at the Erie Store that prepared the weekly schedule, rather than Mr. Griffin himself.

**ANSWER:**

Aldi admits that Plaintiff Griffin had the authority to delegate the creation of the weekly work schedule to one of his Shift Managers as long as he still reviewed it to ensure it was fair.  Aldi lacks knowledge or information sufficient to form a belief as to how much time Plaintiff Griffin spent working on the weekly work schedule and, therefore, denies same.  Aldi denies the remaining allegations in Paragraph No. 127 of the Complaint.

**COMPLAINT ¶128:**

  Mr. Griffin spent more than 95% of his time performing tasks such as unloading inventory, stocking shelves, operating the cash register, cleaning the store, setting up product displays (according to specific instruction from the District Managers) and customer service. Mr. Griffin worked with hourly store employees who performed these same exact tasks side by side with him, except those employees were paid hourly wages and compensated for overtime while Mr. Griffin was not.

**ANSWER:**

  Aldi admits that Plaintiff Griffin was the only salaried employee in his store and, thus,

the only one in his store who received his full pay even in weeks in which he worked fewer

hours while the hourly store employees were only paid for their actual hours worked. Aldi denies

the remaining allegations in Paragraph No. 128 of the Complaint.

**COMPLAINT ¶129:**

  The supply truck arrived at the Erie Store every Sunday and four out of five days Monday through Friday.  On such supply truck days, Mr. Griffin arrived at the store at 5am or 6am and to unload roughly 26 pallets of inventory from the stock room.  Mr. Griffin used a cart to pull the pallets through the store and stock the shelves.  Mr. Griffin then swept and mopped the floors and performed other cleaning tasks before the store opened for business at 9am.  When the Budget of Hours allowed, a Cashier was be scheduled to come in at 6am, 7am or 8am to help Mr. Griffin with this manual labor.  If the Productivity Figure was not on target, Mr. Griffin was required to perform this work alone until 9am when a Cashier was be scheduled to begin their shift.

**ANSWER:**

  Aldi denies the allegations in Paragraph No. 129 of the Complaint.

**COMPLAINT ¶130:**

  On non-supply truck days, the Cashier was not permitted to be scheduled to arrive before 8am and Mr. Griffin worked alone to restock the shelves from the stock room, clean the store and prepare it for open.

**ANSWER:**

  Aldi denies the allegations in Paragraph No. 130 of the Complaint.

**COMPLAINT ¶131:**

On supply truck days, Mr. Griffin typically spent three to four hours unloading the inventory, stocking the shelves and preparing the store for open.  On non-supply truck days, Mr. Griffin spent about 3 hours restocking the shelves from the stock room, to prevent having "outs" on the floor, and preparing the store for open.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 131 of the Complaint.

**COMPLAINT ¶132:**

Each day, Mr. Griffin spent approximately two to three hours operating the cash register and an additional three to four hours interacting with customers, rotating products from the stock room, removing expired products, organizing and aligning products on the shelves to make them look more uniform, ordering highly perishable items, restocking the shelves to prevent having "outs" on the floor and cleaning the store.  Mr. Griffin also spent approximately one to two hours on miscellaneous tasks which ranged from attending to an overflowing toilet to performing random customer checks and monitoring for suspected shoplifting (which had to be promptly reported to the District Manager).  Typically, these duties, which were identical to those of hourly employees, amounted to 12 hours per day.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 132 of the Complaint.

**COMPLAINT ¶133:**

Mr. Griffin had no managerial authority over the operations of the store or the hourly employees.  Mr. Griffin had no right or authority to hire, fire, promote or discipline any of the hourly employees.  All such decisions, including any compensation issues, were handled exclusively by the District Manager.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 133 of the Complaint.

**COMPLAINT ¶134:**

Mr. Griffin had no authority to mark down prices or change the physical layout of the store.  The specifications of the special buy section were drawn out by the District Manager and had to be followed without deviation.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 134 of the Complaint.

**COMPLAINT ¶135:**

On days when Mr. Griffin was not scheduled to work, the Shift Managers, MITs and/or Cashiers did the same work that Mr. Griffin had done.  Even when Mr. Griffin was working, the nature of his job was mostly indistinguishable from that of the hourly, non-exempt employees, except that he was required to work more than 40 hours per week and was not given overtime compensation.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff Griffin received his full salary each week,

regardless of how few or many hours he actually worked, and that he did not receive time and

one-half his regular rate when he worked hours in excess of 40 per week.  Aldi denies the

remaining allegations in Paragraph No. 135 of the Complaint.

**B.**     **Mark McIndoo:**

**COMPLAINT ¶136:**

Mr. McIndoo was employed by Aldi from November 2006 to August 2015.  He started as an MIT at the Camillus, New York store, being paid $19.50 per hour.  Mr. McIndoo continued as an MIT for nine months and joined the Erie Store in January 2007.  In August 2007, McIndoo was promoted to Store Manager of the Clay, New York store ("Clay Store").

**ANSWER:**

Aldi admits that Plaintiff McIndoo was employed by Aldi from on or about November

17, 2006 through on or about August 26, 2007 as a Manager Trainee--first in the Camillus, New

York store and then in the Erie Boulevard, Syracuse, New York store.  Aldi admits that Plaintiff

McIndoo was promoted to Store Manager of the Clay, New York store on or about August 27,

2007 and that his employment ended on or about August 12, 2015.  Aldi also admits that

Plaintiff McIndoo earned $19.50 per hour as a Manager Trainee, which amounted to less total

compensation than what he earned as a Store Manager.  Aldi denies the remaining allegations in

Paragraph No. 136 of the Complaint.

**COMPLAINT ¶137:**

As a Store Manager, Mr. McIndoo was moved to salary compensation, rather than hourly and reclassified as an exempt employee.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff McIndoo was classified as a salaried, exempt employee and received his full base salary each week regardless of how few or many hours he actually worked. Aldi denies the remaining allegations in Paragraph No. 137 of the Complaint.

**COMPLAINT ¶138:**

As a Store Manager, McIndoo was required to work at least 50 hours per week but routinely worked approximately 65 hours every week.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 138 of the Complaint.

**COMPLAINT ¶139:**

Mr. McIndoo spent less than one hour each week preparing the weekly schedule, including the time he spent obtaining the District Manager's final approval.

**ANSWER:**

Aldi admits that, as the Store Manager, Plaintiff McIndoo prepared the weekly work schedules for all of his store employees and for himself.  Aldi is without knowledge or information sufficient to form a belief as to the amount of time that Plaintiff McIndoo spent preparing the weekly work schedules and, therefore, denies same.  Aldi denies the remaining allegations in Paragraph No. 139 of the Complaint.

**COMPLAINT ¶140:**

Over 95% of Mr. McIndoo's weekly work involved manual labor and other routine tasks regularly performed by hourly non-exempt employees.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 140 of the Complaint.

**COMPLAINT ¶141:**

The supply truck came to Clay Store every Sunday and four out of five days Monday through Friday.  On such supply truck days, Mr. McIndoo arrived at the store at 5am or 6am and to unload the inventory from the stock room, stock the shelves, clean the store and prepare it for opening at 9am.  When the Budget of Hours allowed, a Cashier was scheduled to come in at 6am, 7am or 8am to help Mr. McIndoo with this manual labor.  If the Productivity Figure was not on target, Mr. McIndoo did this work alone until 9am when a Cashier was scheduled to begin their morning shift.  On non-supply truck days, the Cashier was not permitted to be scheduled before 8am and Mr. McIndoo worked alone to restock the shelves, clean the store and prepare it for open.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 141 of the Complaint.

**COMPLAINT ¶142:**

Each day, Mr. McIndoo typically spent five to six hours stocking shelves, two to three hours operating the cash register, one to two hours cleaning the store and two to three hours speaking to customers, filling up produce and rotating supplies out of the back stock room.  These manual labor duties, which were identical to those of hourly employees, amounted to about 12 hours per day.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 142 of the Complaint.

**COMPLAINT ¶143:**

Mr. McIndoo was "officially" scheduled to work less than 50% of the time the Clay Store was open for operation.  In Mr. McIndoo's absence, the Shift Managers, MITs and Cashiers (who were all hourly workers) performed the same work that Mr. McIndoo had done.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 143 of the Complaint.

**COMPLAINT ¶144:**

However, because Mr. McIndoo's job depended on his Productivity Figure, he often worked longer hours and his days off in order to "cover" for hourly employees because, unlike the hourly non-exempt workers, the hours he worked did not count against his Productivity Figure since Aldi did not have to pay him for those hours.

**ANSWER:**

Aldi admits that the actual hours worked by any salaried, exempt Store Manager, including Plaintiff McIndoo, are not determined or used for purposes of calculating a store's actual productivity.  Aldi also admits that, as a Store Manager, Plaintiff McIndoo received a salary that covered all hours worked in any week, regardless of how many or few, and was exempt from the overtime pay requirements under federal and New York law such that Aldi did not have to pay him additional compensation based on the number of hours he worked.  Aldi denies the remaining allegations in Paragraph No. 144 of the Complaint.

**COMPLAINT ¶145:**

Mr. McIndoo had no managerial authority over the operations of the store or the hourly employees.  Mr. McIndoo had no right or authority to hire, fire, promote or discipline any of the hourly employees.  All such decisions, including any compensation issues, were handled exclusively by the District Manager.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 145 of the Complaint.

**COMPLAINT ¶146:**

Mr. McIndoo had no authority to mark down prices or change the physical layout of the store.  The specifications of the special buy section were drawn out by the District Manager and had to be followed without deviation.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 146 of the Complaint.

**COMPLAINT ¶147:**

Notably, at the Clay Store, it was the Cashiers, rather than Mr. McIndoo, who routinely, and without supervision, ordered the highly perishable items using the MDT device.  Moreover, at the Clay Store, Cashiers were sometimes asked to take the "bank bag" with the money from the cash registers to the bank; however, Mr. McIndoo often chose to do this task because the bank was on his way home from the store.  However, in his absence, Cashiers, Shift Managers and MITs routinely handled this task.

**ANSWER:**

Aldi admits that Plaintiff McIndoo had the authority to instruct Cashiers to take the store deposits, or "bank bag," to the bank.  Aldi denies that it is a job duty of Cashiers to place product orders.  Aldi lacks knowledge or information sufficient to form a belief as to whether Plaintiff McIndoo entrusted Cashiers to place product orders despite such a responsibility being beyond that expected of Cashiers and, therefore, denies same.  Aldi also lacks knowledge or information sufficient to form a belief as to whether Plaintiff McIndoo "often chose" to take the store's deposits, or "bank bag," to the bank and as to whether the bank was on his way home and, therefore, denies same.  Aldi denies the remaining allegations in Paragraph No. 147 of the Complaint.

**COMPLAINT ¶148:**

Mr. McIndoo's District Manager came to the Clay Store three times per week.  The first visit was about five to six hours while the next two were three to four hours.  Mr. McIndoo was typically present for two out of these three visits.  When he was present, the District Manager discussed with him his Productivity and Sales Figures and adjusted the schedule to stay on track with targeted productivity.  When Mr. McIndoo was not present, the District Manager conducted these discussions with the Shift Managers and/or MITs.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 148 of the Complaint.

**COMPLAINT ¶149:**

During these visits, the District Manager also communicated to Mr. McIndoo and/or the Shift Managers and/or MITs specific instructions on product displays and how to implement corporate-mandated customer service policies.  For example, Mr. McIndoo and the entire Clay Store were directed to say "hello" to anyone within 10 feet of them.  The District Manager also instructed Mr. McIndoo and the Clay Store Cashiers to apply a policy whereby they had to stop a checkout process to assist a customer asking them for change to use the automated shopping cart machine.  At one point, for example, the District Manager came to the Clay Store to implement a corporate-mandated policy, whereby, if the number of customers in a checkout line reached a certain point, a Cashier was required to call for assistance.  Mr. McIndoo had no discretion or control over these policies.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 149 of the Complaint.

**COMPLAINT ¶150:**

On days when Mr. McIndoo was not scheduled to work, the Shift Managers, MITs and/or Cashiers did the same work that Mr. McIndoo had done. Even when Mr. McIndoo was working, the nature of his job was mostly indistinguishable from that of the hourly, nonexempt employees, except that he was required to work more than 40 hours per week and was not given overtime compensation.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff McIndoo received his full salary each

week, regardless of how few or many hours he actually worked, and that he did not receive time

and one-half his regular rate when he worked hours in excess of 40 per week. Aldi denies the

remaining allegations in Paragraph No. 150 of the Complaint.

  C. **Susan DeTomaso:**

**COMPLAINT ¶151:**

Ms. DeTomaso was employed by Aldi from 1998 to October 2013. She started as a part-time cashier then became a full-time cashier before being promoted to Shift Manager. Shortly thereafter, she became a Store Manager at the Auburn, New York location ("Auburn Store").

**ANSWER:**

Aldi admits that Plaintiff DeTomaso was hired by Aldi on or about October 10, 1998 as a

Casual Cashier, that she was promoted to Shift Manager on or about August 7, 2000, and that she

was promoted to Store Manager of the Auburn, New York store on or about February 25, 2002.

Aldi admits that she continued to work as the Store Manager of the Auburn, New York store

until on or about October 25, 2013. Aldi denies the remaining allegations in Paragraph No. 151

of the Complaint.

**COMPLAINT ¶152:**

As a Store Manager, Ms. DeTomaso was moved to salary compensation, rather than hourly and reclassified as an exempt employee. However, there was absolutely no difference in

the work that she had done as a Shift Manager compared to a Store Manager.  Moreover, as a Store Manager, Ms. DeTomaso's work was no different than that of other Shift Managers at the Auburn store, who routinely did the same exact tasks as she herself did.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff DeTomaso was classified as a salaried,

exempt employee and received her full base salary each week regardless of how few or many

hours she actually worked. Aldi denies the remaining allegations in Paragraph No. 152 of the

Complaint.

**COMPLAINT ¶153:**

As a Store Manager, Ms. DeTomaso was required to work at least 50 hours per week but routinely worked at least 60 to 70 hours every week.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 153 of the Complaint.

**COMPLAINT ¶154:**

Ms. DeTomaso often worked her days off in order to "hit" her required Productivity Figure and not be at risk for termination.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 154 of the Complaint.

**COMPLAINT ¶155:**

Ms. DeTomaso spent less than one hour each week preparing the weekly schedule, including the time she spent revising it in accordance with the edits she received from her District Manager and faxing it back and forth to obtain final approval.

**ANSWER:**

Aldi admits that, as the Store Manager, Plaintiff DeTomaso prepared the weekly work

schedules for all of her store employees and for herself.  Aldi is without knowledge or

information sufficient to form a belief as to the amount of time that Plaintiff DeTomaso spent

preparing the weekly work schedules and, therefore, denies same.  Aldi denies the remaining

allegations in Paragraph No. 155 of the Complaint.

## COMPLAINT ¶156:

More than 95% of Ms. DeTomaso's time was spent doing the same tasks as those performed by non-exempt hourly employees, which included: unloading the inventory from the stock room, stocking shelves, operating the cash register, cleaning the store, setting up product displays (according to specific instruction from the District Managers) and customer service.

## ANSWER:

Aldi denies the allegations in Paragraph No. 156 of the Complaint.

## COMPLAINT ¶157:

On supply truck days, Ms. DeTomaso arrived at the Auburn Store approximately three to four hours before it opened at 9am, in order to unload the inventory, stock the shelves and clean the store.  Typically, a Cashier was scheduled to arrive at 6am to assist with these tasks; however, if the Productivity Figure did not allow for the scheduling of additional hourly workers, Ms. DeTomaso performed this manual labor alone.

## ANSWER:

Aldi denies the allegations in Paragraph No. 157 of the Complaint.

## COMPLAINT ¶158:

The Auburn Store typically had Ms. DeTomaso (or a Shift Manager or MITs in her absence) and one Cashier scheduled to work at 6am.  A second Cashier typically arrived at 9am or sometimes 11 am, depending on the Budget of Hours.  According to Aldi's corporate policy, if more than three people were in line, the Cashier was required to "buzz up" another person to open another register.  Since, only two or three people worked the morning shift, Ms. DeTomaso was often buzzed up to work the cash register.

## ANSWER:

Aldi denies the allegations in Paragraph No. 158 of the Complaint.

## COMPLAINT ¶159:

Ms. DeTomaso then continued stocking shelves, rotating product, removing expired products, ordering highly perishable products, interacting with customers, cleaning the store and attending to miscellaneous issues such as spills.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 159 of the Complaint.

**COMPLAINT ¶160:**

When the District Manager arrived at the Auburn Store, Ms. DeTomaso spent considerable time walking through the entire store premises, starting outside, and making note of all the instructions, commands and directives given by the District Manager.  Such orders ranged from taking out the trash to shoveling the snow, removing excess weeds and shrubbery, cleaning the bathrooms, dusting various crevices of the store, sweeping the aisles, moping [sic] the floors, waxing and shining the store floors, cleaning miscellaneous spills, lining up products on shelves so they all faced the right direction, rotating product from the stock room, removing expired products, reorganizing the special section and correcting any other imperfections detected by the District Manager.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 160 of the Complaint.

**COMPLAINT ¶161:**

The District Manager subsequently followed up with Ms. DeTomaso, or a Shift Manager or MIT in her absence, to ensure all of his issues and instructions were addressed and carried out.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 161 of the Complaint.

**COMPLAINT ¶162:**

Ms. DeTomaso was formally scheduled to work less than 50% of the time the Auburn Store was open for business.  However, Ms. DeTomaso frequently had to cover the shifts of hourly workers when the Productivity Figure required the cutting of certain hourly shifts.  Ms. DeTomaso was forced to work these additional shifts without any additional compensation, doing the same tasks as the hourly workers for whom she was covering.

**ANSWER:**

Aldi also admits that, as a Store Manager, Plaintiff DeTomaso received a salary that covered all hours worked in any week, regardless of how many or few, and was exempt from the overtime pay requirements under federal and New York law such that Aldi did not have to pay her additional compensation based on the number of hours she worked.  Aldi denies the remaining allegations in Paragraph No. 162 of the Complaint.

**COMPLAINT ¶163:**

Ms. DeTomaso had no managerial authority over the operations of the store or the hourly employees.  Ms. DeTomaso had no right or authority to hire, fire, promote or discipline any of the hourly employees.  All such decisions, including any compensation issues, were handled exclusively by the District Managers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 163 of the Complaint.

**COMPLAINT ¶164:**

Ms. DeTomaso had no authority to change the physical layout of the store.  The specifications of the special buy section were drawn out by the District Manager and had to be followed without deviation.  Each week, the District Manager went over the specifics of the special buy sections with either Ms. DeTomaso, or a Shift Manager or MIT in her absence.  These special buy sections had to be set up every Saturday after the store closed.

**ANSWER:**

Aldi admits that new special buy items were set up in Plaintiff DeTomaso's store on

Saturdays.  Aldi denies the remaining allegations in Paragraph No. 164 of the Complaint.

**COMPLAINT ¶165:**

Ms. DeTomaso alternated working the Saturday closing shift with the Shift Managers and MITs, because it was the most strenuous.  On such days, Ms. DeTomaso was officially scheduled to work 11am to until the store closed at 9pm (10 hours).  However, because the special buy section could only be set up after store closing, she frequently stayed until 10pm or 11pm to complete the set up.  Sometimes an hourly worker was scheduled to assist Ms. DeTomaso with this manual labor; other times, depending on the Budget of Hours, she worked alone.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 165 of the Complaint.

**COMPLAINT ¶166:**

On days when Ms. DeTomaso was not scheduled to work, the Shift Managers, MITs and/or Cashiers did the identical work that Ms. DeTomaso had done.  Even when Ms. DeTomaso was working, the nature of her job was mostly indistinguishable from that of the hourly, non-exempt employees, except that she was required to work more than 40 hours per week and was not given overtime compensation.

**ANSWER:**

Aldi admits that, as a Store Manager, Plaintiff DeTomaso received a salary that covered all hours worked in any week, regardless of how many or few, and was exempt from the overtime pay requirements under federal and New York law such that Aldi did not have to pay her additional compensation based on the number of hours she worked. Aldi denies the remaining allegations in Paragraph No. 166 of the Complaint.

## COLLECTIVE ACTION ALLEGATIONS

**COMPLAINT ¶167:**

Plaintiffs bring this action as a collective action to recover unpaid wages, including unpaid overtime compensation, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b), on behalf of a class of current and former Store Managers employed by Defendant during the statutory period covered by this Complaint.

**ANSWER:**

Aldi admits that Plaintiffs purport to bring this action for overtime pay under the FLSA as a nationwide collective action under 29 U.S.C. § 216(b). Aldi denies any liability with respect to Plaintiffs or any person(s) whom Plaintiffs purport to represent and denies that any individuals are "similarly situated" to Plaintiffs. Aldi denies the remaining allegations in Paragraph No. 167 of the Complaint.

**COMPLAINT ¶168:**

Plaintiffs bring this suit on behalf of the following similarly situated persons:

All current and former Store Managers who have worked for Defendant within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("Nationwide Collective Class").

**ANSWER:**

Aldi admits that Plaintiffs have proposed and will need to seek conditional certification of the class as described in Paragraph No. 168 of the Complaint. Aldi denies any liability with respect to Plaintiffs or any person(s) whom Plaintiffs purport to represent, or that the certification

of a collective action is warranted.  Aldi denies the remaining allegations in Paragraph No. 168 of the Complaint.

**COMPLAINT ¶169:**

Plaintiffs allege on behalf of the Nationwide Collective Class that they are: (i) entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay, as required by law; and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

**ANSWER:**

Aldi admits that Plaintiffs make the allegations described in Paragraph No. 169 of the Complaint.  Aldi denies liability to Plaintiffs and members of the putative nationwide collective and denies that certification of a nationwide collective is appropriate.  Aldi denies the remaining allegations in Paragraph No. 169 of the Complaint.

**COMPLAINT ¶170:**

The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

**ANSWER:**

Paragraph No. 170 of the Complaint asserts legal declarations and conclusions to which no response is required.  To the extent a response is required, Aldi denies that individuals who opt into this lawsuit under 29 U.S.C. § 216(b) by filing a consent to join form may pursue their claims in this lawsuit if this Court denies certification of a collective.

**COMPLAINT ¶171:**

Defendant has engaged in a continuing and willful violation of the FLSA.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 171 of the Complaint.

**COMPLAINT ¶172:**

Plaintiffs are unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to

Plaintiffs.  Upon information and belief, Plaintiffs allege that at all relevant times each Defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.  Accordingly, unless otherwise specified herein, Plaintiffs will refer to all defendants collectively as "Defendant" and each allegation pertains to each of the defendants.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 172 of the Complaint.

**COMPLAINT ¶173:**

There are numerous similarly-situated current and former Store Managers of Aldi who have worked over 40 hours a week without appropriate overtime pay, in violation of the FLSA.  These Store Managers all had similar, if not identical, job responsibilities.  These Store Managers all spent over 90% of their time performing non-managerial tasks and only superficially differed from hourly, non-exempt workers.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 173 of the Complaint.

**COMPLAINT ¶174:**

These similarly-situated current and former Store Managers would benefit greatly from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the lawsuit pursuant to 28 U.S.C. § 216(b).  These similarly-situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  As such, notice should be sent to past and present Store Managers of Aldi.

**ANSWER:**

Aldi admits that it can identify which of its Store Managers have been classified as

exempt within a set time period.  Aldi denies the remaining allegations in Paragraph No. 174 of

the Complaint.

## CLASS ACTION ALLEGATIONS

**COMPLAINT ¶175:**

Plaintiffs further bring this action as a state-wide class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of current and former Store Managers employed by Defendant within the State of New York to recover unpaid wages, including premium overtime compensation for all hours worked in excess of 40 per workweek, and "spread of hours"

compensation for all hours worked in excess of 10 hours in a single workday, pursuant to the NYLL.

**ANSWER:**

Aldi admits that Plaintiffs purport to bring this action as a state-wide class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and a class of current and former Store Managers employed by Defendant within the State of New York. Aldi denies any liability with respect to Plaintiffs or any person(s) whom Plaintiffs purport to represent. Aldi denies the remaining allegations in Paragraph No. 175 of the Complaint.

**COMPLAINT ¶176:**

Plaintiffs bring this suit on behalf of themselves and a class of similarly situated persons composed of:

All current and former Store Managers who have worked for Defendant in the State of New York during the statutory period covered by this Complaint (the "NY Class").

**ANSWER:**

Aldi admits that Plaintiffs have proposed and will need to seek certification of the class as described in Paragraph No. 176 of the Complaint.   Aldi denies any liability with respect to Plaintiffs or any person(s) whom Plaintiffs purport to represent, or that the certification of a class action is warranted. Aldi denies the remaining allegations in Paragraph No. 176 of the Complaint.

**COMPLAINT ¶177:**

Plaintiffs allege on behalf of the NY Class that Defendant violated the NYLL by, *inter alia:* (i) failing to pay them overtime at the rate of one and one-half times the employee's regular salary for all hours worked in excess of 40 hours in any given workweek; and (ii) failing to pay spread of hours pay for all work in excess of **10** hours in a single workday.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 177 of the Complaint.

**COMPLAINT ¶178:**

The claims brought pursuant to the NYLL may be pursued by all similarly-situated persons who do not opt out of the NY Class pursuant to Fed. R. Civ. P. 23.

**ANSWER:**

Paragraph No. 178 of the Complaint asserts legal declarations and conclusions to which no response is required. To the extent a response is required, Aldi denies any liability with respect to Plaintiffs or any person(s) whom Plaintiffs purport to represent and denies that any individuals are "similarly situated" to Plaintiffs. Aldi denies the remaining allegations in Paragraph No. 178 of the Complaint.

**COMPLAINT ¶179:**

The members of each of the NY Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the NY Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are hundreds of individuals in the NY Class.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiffs believe and therefore denies same. Defendant denies the remaining allegations in Paragraph No. 179 of the Complaint.

**COMPLAINT ¶180:**

Common questions of law and fact, the answers to which will advance this litigation, exist as to the NY Class and predominate over any questions only affecting them individually. Indeed, there are few if any purely individual issues in this case. The questions of law and fact that are common to Plaintiffs and all members of the NY Class include, but are not limited to, the following:

(a)     whether Store Managers are improperly classified as "exempt" employees under the NYLL;

(b)     whether Plaintiffs and the members of NY Class were expected to and/or were mandated to regularly work hours without compensation in violation of the NYLL;

(c)     whether Defendant has failed to pay Plaintiffs and members of the NY Class all overtime compensation due to them for all hours worked in excess of 40 hours per week;

(d)      whether it was Aldi's policy or practice not to provide Plaintiffs and the NY Class spread-of-hours pay as required by the NYLL;

(e)      whether Plaintiffs and members of the NY Class are entitled to compensatory damages, and if so, the means of measuring such damages; and

(f)      whether Plaintiff and members of the NY Class are entitled to liquidated damages and injunctive relief.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 180 of the Complaint.

**COMPLAINT ¶181:**

The claims of Plaintiffs are typical of the claims of the members of the NY Class they seek to represent.  Plaintiffs and the members of the NY Class work, or have worked, for Aldi as Store Managers and are, or were, subject to the same compensation policies and practices, including not being compensated for all hours worked and/or not being paid overtime compensation.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 181 of the Complaint.

**COMPLAINT ¶182:**

Plaintiffs will fairly and adequately protect the interests of the NY Class as their interests are in alignment with those of the members of the NY Class.  They have no interests adverse to the class they seek to represent, and have retained competent and experienced counsel.

**ANSWER:**

Aldi admits that Plaintiffs have retained competent and experienced counsel but denies

the remaining allegations in Paragraph No. 182 of the Complaint.

**COMPLAINT ¶183:**

Defendant has acted or has refused to act on grounds generally applicable to the NY Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the NY Class as a whole appropriate.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 183 of the Complaint.

**COMPLAINT ¶184:**

The class action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  Common issues of law and fact predominate over any individual issues.  The damages suffered by individual members of the NY Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the NY Class to individually seek redress for the wrongs done to them.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 184 of the Complaint.

**COMPLAINT ¶185:**

The Nationwide Collective Class and the NY Class are hereafter together referred to as the "Classes."

**ANSWER:**

Aldi denies that a putative opt-in collective under the FLSA and a putative opt-out class under Rule 23 of the Federal Rules of Civil Procedure may properly be referred to generically as the "Classes."

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT OVERTIME VIOLATIONS**
**(On Behalf of the Nationwide Collective Class)**

**COMPLAINT ¶186:**

Plaintiffs, on behalf of themselves and the Nationwide Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

**ANSWER:**

Aldi restates its answer to Paragraph Nos. 1 through 185 of the Complaint as its answer to Paragraph No. 186 of the Complaint.

**COMPLAINT ¶187:**

At all relevant times, Aldi has had gross revenues in excess of $500,000.

**ANSWER:**

Aldi admits the allegations in Paragraph No. 187 of the Complaint.

**COMPLAINT ¶188:**

At all relevant times, Aldi has been and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

**ANSWER:**

Aldi admits the allegations in Paragraph No. 188 of the Complaint.

**COMPLAINT ¶189:**

At all relevant times, Defendant has employed, and/or continues to employ, Plaintiffs and each of the Nationwide Collective Class Members within the meaning of the FLSA.

**ANSWER:**

Aldi admits that it previously employed Plaintiffs within the meaning of the FLSA.

Because a nationwide collective has not been certified and its putative members are not known,

Aldi lacks sufficient information to respond to the remaining allegations in Paragraph No. 189 of

the Complaint and therefore denies same.

**COMPLAINT ¶190:**

At all relevant times, Defendant had a willful policy and practice of misclassifying Plaintiffs and similarly situated Store Managers as "exempt" in order to avoid paying them for all hours worked or appropriate overtime compensation for all hours worked in excess of 40 hours per workweek.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 190 of the Complaint.

**COMPLAINT ¶191:**

As a result of the Defendant's willful failure to compensate its employees, including Plaintiffs and the members of the Nationwide Collective Class, for all hours worked and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Aldi has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*

**ANSWER:**

Aldi denies the allegations in Paragraph No. 191 of the Complaint.

**COMPLAINT ¶192:**

The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

**ANSWER:**

Aldi denies the allegations in Paragraph No. 192 of the Complaint.

**COMPLAINT ¶193:**

Due to the Defendant's FLSA violations, Plaintiffs, on behalf of themselves and the members of the Nationwide Collective Class, are entitled to recover from the Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**ANSWER:**

Aldi denies the allegations in Paragraph No. 193 of the Complaint.

**SECOND CLAIM FOR RELIEF**
**NEW YORK LABOR LAW - OVERTIME VIOLATIONS**
**(On Behalf of the NY Class)**

**COMPLAINT ¶194:**

Plaintiffs, on behalf of themselves and all NY Class members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

**ANSWER:**

Aldi restates its answer to Paragraph Nos. 1 through 193 of the Complaint as its answer to Paragraph No. 194 of the Complaint.

**COMPLAINT ¶195:**

Plaintiffs were employed by Aldi within the meaning of the NYLL.

**ANSWER:**

Aldi admits that it employed Plaintiffs but denies that Plaintiffs were "employees" of Aldi as that term is defined for purposes of the NYLL. Aldi denies the remaining allegations in Paragraph No. 195 of the Complaint.

**COMPLAINT ¶196:**

At all relevant times, Defendant had a willful policy and practice of misclassifying Plaintiffs and similarly situated Store Managers as "exempt" in order to avoid paying them for all hours worked or appropriate overtime compensation for all hours worked in excess of 40 hours per workweek.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 196 of the Complaint.

**COMPLAINT ¶197:**

As a result of the Defendant's willful failure to compensate its employees, including Plaintiffs and the members of the NY Class, for all hours worked and at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Aldi has violated and, continues to violate, N.Y. Lab. Law Article 19 §§ 650, *et seq.,* and the supporting New York State Department of Labor Regulations.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 197 of the Complaint.

**COMPLAINT ¶198:**

Due to the Defendant's violations of the NYLL, Plaintiffs and the members of the NY Class are entitled to recover from the Defendant: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to N.Y. Lab. Law Article 19 § 663.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 198 of the Complaint.

**THIRD CLAIM FOR RELIEF**
**NEW YORK LABOR LAW - SPREAD OF HOURS VIOLATIONS**
**(On Behalf of the NY Class)**

**COMPLAINT ¶199:**

Plaintiffs, on behalf of themselves and all members of the NY Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

**ANSWER:**

Aldi restates its answer to Paragraph Nos. 1 through 198 of the Complaint as its answer to Paragraph No. 199 of the Complaint.

**COMPLAINT ¶200:**

Plaintiffs and members of the NY Class worked more than 10 hours in a workday.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 200 of the Complaint.

**COMPLAINT ¶201:**

Defendant has willfully failed to pay Plaintiffs and the members of the NY Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which they worked more than 10 hours.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 201 of the Complaint.

**COMPLAINT ¶202:**

Defendant's failure to pay Plaintiffs and the members of the NY Class spread of hours compensation for each day they worked in excess of 10 hours is a willful violation of N.Y. Lab. Law Article 19 §§ 650, *et seq.,* and the supporting New York State Department of Labor Regulations.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 202 of the Complaint.

**COMPLAINT ¶203:**

Due to Defendant's violation of the NYLL, Plaintiffs and the members of the NY Class are entitled to recover from Defendant: an award of damages for their unpaid compensation; liquidated damages; reasonable attorneys' fees and costs; and disbursements of the action, pursuant to the N. Y. Lab. Law Article 19 § 663.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 203 of the Complaint.

**FOURTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of NY Class)**

**COMPLAINT ¶204:**

Plaintiffs, on behalf of themselves and all NY Class members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

**ANSWER:**

Aldi restates its answer to Paragraph Nos. 1 through 203 of the Complaint as its answer to Paragraph No. 204 of the Complaint, and also refers the Court to its pending motion to dismiss this count of the Complaint.

**COMPLAINT ¶205:**

This Count is pled in the alternative to Plaintiffs' Second and Third Claims for Relief.

**ANSWER:**

Aldi admits the allegations in Paragraph No. 205 of the Complaint but, for the reasons stated in its Motion to Dismiss, denies that Plaintiffs can plead this claim.

**COMPLAINT ¶206:**

Plaintiffs and the NY Class were not paid and continue not to be paid wages for all time that they worked.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 206 of the Complaint.

**COMPLAINT ¶207:**

Defendant retained the benefit of the Plaintiffs' and the NY Class members' uncompensated work under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits without paying for their value.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 207 of the Complaint.

**COMPLAINT ¶208:**

Consequently, Defendant was unjustly enriched by requiring Plaintiffs and members of the NY Class to work for hours for which they were not compensated.

**ANSWER:**

Aldi denies the allegations in Paragraph No. 208 of the Complaint.

## PRAYER FOR RELIEF

Paragraphs designated as letters A through K of the Complaint contain Plaintiffs' prayer for relief to which no response is required.  Nevertheless, Aldi denies that any of the relief sought is proper and denies the remaining allegations of the paragraphs designated as letters A through K of the Complaint.

## DEMAND FOR TRIAL BY JURY

A demand for a jury trial requires neither an admission nor a denial and, therefore, no answer is required.  Aldi denies that Plaintiffs are entitled to any of the relief that they seek.

## AFFIRMATIVE AND OTHER DEFENSES

In asserting the defenses that follow, Aldi does not assume any burden of production or proof that it would not otherwise have.  In addition, Aldi is continuing to investigate Plaintiffs' allegations and, therefore, reserves the right to amend its Answer and defenses.

## FIRST DEFENSE

Plaintiffs' claims, and those of any of the persons whom Plaintiffs allege would comprise a putative class or collective, are barred, in whole or in part, by the applicable statutes of limitations.

## SECOND DEFENSE

Some or all of the claims asserted in Plaintiffs' Complaint are barred in whole or in part because Plaintiffs, and the persons whom Plaintiffs allege would comprise a putative class or collective, are exempt from overtime compensation and spread of hours requirements under 29 U.S.C. § 213 and its accompanying regulations, as well as under 12 N.Y. Comp. R. & Regs. 142-2.14, because they were employed in an executive or administrative capacity or a combination of the two.

**THIRD DEFENSE**

Some or all of the claims asserted in Plaintiffs' Complaint are barred in whole or in part because Plaintiffs, and the persons whom Plaintiffs allege would comprise a putative class or collective, are not employees as defined under the New York Minimum Wage Act and NYLL.

**FOURTH DEFENSE**

Further, and in the alternative if necessary, Aldi states that even if Plaintiffs, or any of the persons whom Plaintiffs allege would comprise a putative class or collective, prevails, Aldi is entitled to a set-off with respect to any monies paid to Plaintiffs, or to any putative class or collective action member, for any hours when such individual was not performing work for Defendant and for any bonuses such individuals would not have received as non-exempt, hourly employees.

**FIFTH DEFENSE**

As set forth in Aldi's pending motion to dismiss, Plaintiffs' Fourth Claim for Relief, Unjust Enrichment, is duplicative of and preempted by Plaintiffs' claim for overtime pay under the FLSA.

**SIXTH DEFENSE**

Further, and in the alternative if necessary, Aldi states that its actions with respect to Plaintiffs, and the persons whom Plaintiffs allege would comprise a putative class or collective, were taken in good faith in conformity with and in reliance on a written administrative regulation, order, ruling, approval, interpretation, and/or administrative practice or policy pursuant to 29 U.S.C. § 259 and NYLL §§ 198, 663.

## SEVENTH DEFENSE

Further, and in the alternative if necessary, Aldi states that its actions with respect to Plaintiffs, and the persons whom Plaintiffs allege would comprise a putative class or collective, were taken in good faith with reasonable grounds to believe such conduct comported with permissible interpretations of the law pursuant to 29 U.S.C. § 260 and NYLL §§ 198, 663.

SEYFARTH SHAW LLP

By:  s/ Lucas Deloach
    Noah A. Finkel (admitted pro hac vice)
    nfinkel@seyfarth.com
    Cheryl A. Luce (admitted pro hac vice)
    cluce@seyfarth.com
    131 South Dearborn Street
    Suite 2400
    Chicago, Illinois  60603
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000

    Louisa Johnson (admitted pro hac vice)
    lojohnson@seyfarth.com
    Lucas Deloach (admitted pro hac vice)
    ldeloach@seyfarth.com
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E.
    Suite 2500
    Atlanta, GA  30309-3958
    Telephone: (404) 885-1500
    Facsimile:  (404) 892-7056

    Howard Wexler
    hwexler@seyfarth.com
    SEYFARTH SHAW LLP
    620 Eighth Avenue
    New York, New York  10018
    Telephone: (212) 218-5500
    Facsimile:  (212) 218-5526

Dated: November 16, 2016               Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on November 16, 2016, he electronically filed the foregoing **Defendant Aldi Inc.'s Answer to Plaintiffs' Class and Collective Complaint** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel of record:

Frank S. Gattuso
Dennis O'Hara
O'Hara, O'Connell & Ciotoli
7207 E. Genesee St.
Fayetteville, NY 13066
fsg@oharalaw.com
dgo@oharalaw.com

Innessa S. Melamed
Faruqi & Faruqi, LLP
685 Third Ave., 26th Floor
New York, NY 10017
imelamed@faruqilaw.com

Adam Gonnelli
The Sultzer Law Group
14 Wall Street, 20th Floor
New York, NY 10005
gonnellia@thesultzerlawgroup.com

                                    s/ Lucas Deloach
                                    One of Counsel for Aldi Inc.