UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ANTHONY GRIFFIN, MARK MCINDOO and
SUSAN DETOMASO, on behalf of themselves and
all others similarly situated,

                Plaintiff,

      v.

ALDI, INC., DOE DEFENDANTS 1-10,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Case No. 5:16-cv-354
(LEK/ATB)

**DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
CERTIFICATION OF A
COLLECTIVE ACTION AND
AUTHORIZATION OF NOTICE
PURSUANT TO 29 U.S.C. § 216(b)
OF THE FAIR LABOR
STANDARDS ACT**

**ORAL ARGUMENT
REQUESTED**

Noah A. Finkel (*pro hac vice*)
Cheryl A. Luce (*pro hac vice*)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000
nfinkel@seyfarth.com
cluce@seyfarth.com

Louisa J. Johnson (*pro hac vice*)
Lucas E. Deloach (*pro hac vice*)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309-3958
(404) 885-1500
lojohnson@seyfarth.com
ldeloach@seyfarth.com

Howard M. Wexler (Attorney Bar No. 518197)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500
hwexler@seyfarth.com

Attorneys for Defendant ALDI INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.    PROCEDURAL BACKGROUND ................................................................... 3

III.    FACTUAL BACKGROUND .......................................................................... 4

    A.    Aldi Is Decentralized And Has Varying Policies and Practices ............................ 4

    B.    Aldi Classifies Some Store Managers As Hourly, Non-Exempt ............................ 5

    C.    The Aldi Store Manager Job Today Is Different Than During *McNelley/Lau* ......................................................................................................... 5

    D.    Plaintiffs Have Testified That They Did Not Perform The Duties Set Forth In The Store Manager Job Description and Store Procedures Manual .................. 6

    E.    Other Store Managers Have Performed The Managerial Duties Expected Of Them ............................................................................................................... 7

    F.    Plaintiffs' Testimony And That Of Aldi's Declarants Establish That Their Jobs Are Not The Same As The Manager Trainees And Shift Managers ............. 8

IV.    LEGAL ARGUMENT AND ANALYSIS ...................................................... 10

    A.    The Legal Standard .............................................................................................. 10

    B.    Plaintiffs Have Failed To Show That They Are Similarly Situated To All Store Managers Because Of Their Exempt Classification .................................... 12

    C.    Plaintiffs Have Failed To Show That They Are Similarly Situated To Other Store Managers Because Of the Job Description And Other Documents ........................................................................................................... 18

    D.    If This Court Were To Certify An FLSA Collective, It Should Not Approve The Class Notice And Consent Form ................................................... 22

    E.    If This Court Were To Grant Plaintiffs' Motion, It Should Not Order Production Of Alternative Contact Information And Multiple Means Of Notice ................................................................................................................. 22

        1.    Only Last Known Mailing Addresses Should Be Provided ..................... 22

        2.    Aldi Should Not Be Required To Post The Notice And Consent Form ... 23

V.    CONCLUSION ............................................................................................. 24

**Page(s)**

**Cases**

*Abrams v. GE*,
No. 95-CV-1734 (FJS), 1996 U.S. Dist. LEXIS 16869 (N.D.N.Y. Nov. 4, 1996) ............................................................................................................16, 17 n.8

*Augustyniak v. Lowe's Home Center, LLC*,
No. 14-CV-00488-JJM, 2016 WL 462346 (W.D.N.Y. Feb. 8, 2016) ............................21 n.10

*Cano v. Four M Food Corporation*,
No. 08-CV-3005 (JFB)(AKT), 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) ..................17 n.8

*Cohen v. Gerson Lehrman Group, Inc.*,
686 F. Supp. 2d 317 (S.D.N.Y. 2010)..............................................................................14 n.6

*Creely v. HCR ManorCare, Inc.*,
789 F. Supp. 2d 819 (N.D. Ohio 2011) ...............................................................................12

*Cuzco v. Orion Builders, Inc.*,
477 F. Supp. 2d 628 (S.D.N.Y. 2007)..............................................................................14 n.6

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................................... 14-16

*Damassia v. Duane Reade, Inc.*,
No. 04-CIV-8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ........................... 15-16

*Fengler v. Crouse Health Foundation, Inc.*,
595 F. Supp. 2d 189 (N.D.N.Y. 2009).................................................................................22

*Garcia v. Spectrum of Creations Inc.*,
102 F. Supp. 3d 541 (S.D.N.Y. 2015).................................................................................24

*Gonzalez v. Scalinatella, Inc.*,
No. 13-CIV-3629 (PKC), 2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013) .............................24

*Gordon v. Kaleida Health*,
No. 08-CV-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) .........................................22

*Gregory v. Stewart's Shops Corporation*,
No. 7:14-cv-00033-TJM-ATB (N.D.N.Y. Jul. 8, 2016)........................................................12

*Guillen v. Marshalls of MA, Inc. (Guillen I)*,
750 F. Supp. 2d 469 (S.D.N.Y. 2010)...........................................................10, 15, 16, 18, 21

*Guillen v. Marshalls of MA, Inc. (Guillen II)*,
   No. 09-CIV-9575 (LAP)(GWG), 2012 WL 2588771 (S.D.N.Y. Jul. 2, 2012) ......................13

*Hamelin v. Faxton-St. Luke's Healthcare*,
   No. 6:08-CV-1219, 2009 U.S. Dist. LEXIS 9793 (N.D.N.Y. Jan. 26, 2009)..............11, 16, 17

*Heagney v. European American Bank*,
   122 F.R.D. 125 (E.D.N.Y. 1988) ................................................................17 n. 8

*Hintergerger v. Catholic Health System*,
   No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) .........................................22

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989)....................................................................................10

*Holbrook v. Smith & Hawken, Ltd.*,
   No. 3:06-CV-01232-VLB (D. Conn. Feb. 23, 2007), ECF No. 18-2 .....................................15

*Holbrook v. Smith & Hawken, Ltd.*,
   246 F.R.D. 103 (D. Conn. 2007) ......................................................................15

*Indergit v. Rite Aid Corporation*,
   No. 08-CIV-9361 (PGG), 2010 WL 2465488 (S.D.N.Y. Jun. 16, 2010) ......................... 15-16

*Jenkins v. TJX Companies Inc.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) .................................................................13

*Khan v. Airport Management Services*,
   No. 10-CIV-7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)............. 10-11, 18, 19

*Korenblum v. Citigroup, Inc.*,
   No. 15-CV-3383 (JMF), 2016 WL 3945692, --- F. Supp. 3d ---- (S.D.N.Y. Jul.
   19, 2016) ...........................................................................................11, 12

*Lee v. ABC Carpet & Home*,
   236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................14 n.6

*Marcus v. AXA Advisors, LLC*, Pls.' Ex. W.,
   No. 11-CV-02339 (SMG) (E.D.N.Y. May 30, 2012), Trans. ...........................................14 n.6

*Michael v. Bloomberg LP*,
   No. 14-CV-2657 (TPG), 2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015) ...................................24

*Mike v. Safeco Insurance Company of America*,
   274 F. Supp. 2d 216 (D. Conn. 2003)..................................................................19

*Mohamed v. Sophie's Cuban Cuisine Inc.*,
   No. 14-CV-3099 (TPG), 2015 WL 5563206 (S.D.N.Y. Sept. 21, 2015) ...........................23, 24

*Myers v. Hertz Corporation*,
No. 02-CV-4325 (DRH) (MLO), 2006 U.S. Dist. LEXIS 100597 (E.D.N.Y. May 18, 2006) ..................................................................................................13

*Myers v. Hertz Corporation*,
624 F.3d 537 (2d Cir. 2010) ........................................................................ 10-15

*Nabi v. Hudson Group (HG) Retail, LLC*,
310 F.R.D. 119 (S.D.N.Y. 2015) ...............................................................13, 18

*Nerland v. Caribou Coffee Company*,
564 F. Supp. 2d 1010 (D. Minn. 2007)........................................................14, 15

*Palacios v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
No. 10-22398-CIV-UU, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011).........................21 n.10

*Pippins v. KPMG LLP*,
No. 11-CIV-0377 (CM)(JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012).........................14 n.6

*Realite v. Ark Restaurants Corporation*,
7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...............................................................11

*Rosario v. Compass Group, USA, Inc.*,
No. 3:15-CV-00241 (MPS), 2016 WL 471249 (D. Conn. Feb. 5, 2016) .........................13, 20

*Ruggles v. WellPoint, Inc.*,
591 F. Supp. 2d 150 (N.D.N.Y. 2008)...........................................................23

*Smith v. Heartland Automotive Services, Inc.*,
404 F. Supp. 2d 1144 (D. Minn. 2005)...........................................................14

*Tahir v. Avis Budget Group, Inc.*,
No. 09-3495 (SRC), 2011 WL 1327861 (D.N.J. Apr. 6, 2011)...............................19

*Vargas v. HSBC Bank USA, N.A.*,
No. 11-CIV-7887 (DAB), 2012 WL 10235792 (S.D.N.Y. Aug. 9, 2012) .........................11

*Vasquez v. Vitamin Shoppe Industries Inc.*,
No. 10-CIV-8820 (LTS)(THK), 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ....................10

*Wass v. NPC International, Inc.*,
No. 09-2254-JWL, 2011 WL 1118774 (D. Kan. Mar. 28, 2011) .........................24

*Woods v. New York Life Insurance Company*,
686 F.2d 578 (7th Cir. 1982) ...............................................................23

**Other Authorities**

Fed. R. Civ. P. 23 .........................................................................13, 15

iv

29 U.S.C. § 216(b) ..................................................................................................................13

Defendant ALDI INC. ("Defendant" or "Aldi") respectfully submits this response in opposition to Plaintiffs' motion for certification of a nationwide Fair Labor Standards Act ("FLSA") collective action and authorization of notice ("Motion"). (Doc. 33.)

## I. <u>INTRODUCTION</u>

Plaintiffs premise their Motion on two notions: (1) that Aldi purportedly has a "policy" of classifying all Stores Managers as exempt from the overtime pay requirements of the FLSA, which they argue is unlawful because Plaintiffs ignored the Store Manager job description and performed what they have concluded are "non-managerial" tasks for 75% to 90% of their work days; and (2) that despite their admitted failure to follow their job description, it (and other documents that do not establish the duties of an Aldi Store Manager) causes Plaintiffs to be similarly situated to all other Store Managers nationwide.

First, there is <u>no</u> Aldi policy of classifying all Aldi Store Managers as exempt. At least 75 Store Managers who have worked for Aldi since March 2013 have been classified as hourly, non-exempt. Persohn Dec., filed herewith as Ex. A, ¶ 8.

Second, the Aldi documents to which Plaintiffs cite do not establish a common policy that binds Plaintiffs and all other Store Managers together because (i) Plaintiffs have testified that ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████, *see* Pls.' Ex. J, Griffin Dep. 236:13-237:11; Pls.' Ex. L, McIndoo Dep. 19:22-20:4, 89:20-23; Pls.' Ex. K, DeTomaso Dep. 154:12-13, and (ii) other than the Store Manager job descriptions, the Aldi documents Plaintiffs submit focus either on the duties expected of District Managers and Manager Trainees instead or describe policies applicable to all store employees.[1]

---

[1] The Aldi documents that Plaintiffs have submitted as exhibits to their Motion are found at Doc. 33-3 as Exhibits M-1 through S. Plaintiffs' Exhibits M-1, M-2, and M-3 announce <u>Manager</u>

Third, even if Plaintiffs had followed them, the Store Manager job description and other company documents cannot be a basis for establishing a common unlawful policy because these documents, to the extent they even discuss Store Managers' duties, do not establish that any Store Managers were asked to or expected to perform "non-managerial" duties.

With no uniform classification, Plaintiffs testifying to a failure to comply with both the Store Manager job description and those policies and procedures applicable to them, and the only Aldi documents pertaining to Store Managers establishing the exempt, managerial nature of their jobs, Plaintiffs have not carried their burden of making a modest factual showing that they and all other Store Managers are similarly situated. If anything, Plaintiffs' departure from the job descriptions and company policies establishes the reverse—that Plaintiffs are dissimilar from most Aldi Store Managers who, quite naturally, have understood that the Store Manager job descriptions and store operating policies and procedures set forth the duties expected of them and have performed their jobs accordingly.

Indeed, the declarations that Aldi submits with this Opposition of non-party Store Managers (*i.e.*, Store Managers with no self-interest in this litigation) demonstrate this fact and show that Plaintiffs cannot carry their burden of establishing that they are similarly situated to all other Aldi Store Managers. These declarations show that, unlike Plaintiffs, other Aldi Store Managers from stores across the country perform the many managerial duties expected of them.

---

Trainee hiring events and make clear that Manager Trainees earn much less than Store Managers. Exhibits N-1 and N-2 are Aldi Store Employee Handbooks that clearly apply to all store employees, not just Store Managers. Exhibits O and P are the Store Manager job descriptions. Exhibit Q is a printout from the careers portion of the ALDI website that shows Store Associates, Shift Managers, and Manager Trainees all reporting up to the Store Manager (Doc. 33-3 at 129), and describes the functions of Manager Trainees and other "store staff" (*i.e.*, Store Associates and Shift Managers). Doc. 33-3 at 132. Exhibit R is a blank Application for Employment, which would not apply to Store Managers because Store Managers are not externally hired. Persohn Dec. ¶ 9. Exhibit S is another printout from ALDI's career website about the District Manager position.

## II. **PROCEDURAL BACKGROUND**

As Plaintiffs acknowledge in their Motion, the parties asked this Court for a period of discovery preceding Plaintiffs' Motion for the purpose of gathering evidence for use in determining whether an FLSA collective should be certified. Pls.' Mem. at 2-3; *see also* Proposed Civil Case Mgmt. Plan, Doc. 16, at ¶ 12(C) ("The Parties propose that discovery be conducted in phases. The parties agree that the first phase (Phase 1) should focus on issues of class/collective certification ….").

It would not, however, be accurate to describe the pre-certification discovery as "limited." Plaintiffs served Aldi with **50** requests for production of documents. In response, Aldi has produced 8,897 Bates-labeled documents—a production that Plaintiffs' counsel themselves have described to this Court as being large.[2] Plaintiffs also served Aldi with 25 interrogatories, to which Aldi's responses were 40 pages in length. In addition, Aldi served 23 document requests separately on each of the three named Plaintiffs. Plaintiff Griffin responded with about 78 pages of documents; Plaintiffs McIndoo and DeTomaso represented that they had no documents. Finally, all three named Plaintiffs appeared for deposition in early October.

In addition to this substantial discovery, Plaintiffs embarked on a campaign to solicit opt-in plaintiffs for their lawsuit. Specifically, a law firm with which counsel of record Adam Gonnelli is associated and two other firms sent LinkedIn messages in early November to former Aldi managers, notifying them that they may be owed overtime wages and asking that they contact any of the three law firms for a free legal consultation. The notice included the following one-sided statement: "Just because the company says you are salaried does not mean that your

---

[2] At the parties' October 14, 2016 telephonic status conference with this Court, the Court inquired as to Plaintiffs' ability to move for certification of an FLSA collective earlier than the previously-set December 16 deadline. Plaintiffs represented that they needed until December 16 to file because they needed to review carefully, for potential use in their Motion, the large number of documents Aldi had produced in response to Plaintiffs' discovery requests.

pay was proper.  Investigations and lawsuits against several major retailers for improperly classifying their Managers and Assistant Managers have been brought in many jurisdictions, including New York." *See* Persohn Dec., ¶¶ 14-15 & Att.; Sumida Dec., filed herewith as Ex. B, ¶¶ 3-7 & Att.[3]

After dissemination of this notice, five former Aldi Store Managers (*i.e.*, Plaintiffs' five opt-in plaintiff-declarants) filed their consents to join this lawsuit, in which they expressly identify Mr. Gonnelli's two law firms as the law firms that they are engaging to represent them. *See* Consents, Docs. 27-30, 32; Sumida Decl. ¶ 6.

## III. FACTUAL BACKGROUND

### A. Aldi Is Decentralized And Has Varying Policies and Practices

Aldi is a grocery retailer that operates nearly 1,600 stores spanning 35 states and 23 separate divisions.  Persohn Dec. ¶ 4.  Each division is subdivided into districts, and each district generally contains three to six stores.  *Id.* ¶ 5.  Each store has only one Store Manager who supervises a staff that, on average, consists of approximately 11 employees.  *Id.* ¶¶ 6-7.

The operations of each division are ultimately directed and supervised by the responsible Division Vice President.  *Id.* ¶ 10.  Aldi's National Operations Committee ("NOC"), which is comprised of a periodically-changing group of two Division Vice Presidents and several directors, meets about three times per year to discuss division-specific procedures and practices that have proven successful and to consider whether to add any of them to the Store Procedures Manual.  *Id.* ¶¶ 11-12.  Nonetheless, because many of the store procedures are developed from prior, successful division practices and because each division has its own Division Vice President in charge of operations, there are practices and procedures that remain division- or

---

[3] Mr. Persohn verified Aldi's Sept. 28, 2016 answers to Plaintiffs' interrogatories.  Mr. Sumida was identified as a potential witness in Defendant's July 7, 2016 Initial Disclosures.

district-specific.  *Id.* ¶ 12.  Divisions, and even some districts within a division, create their own guidelines, tools, and procedures to assist their Store Managers in their duties in areas such as "store employee performance management, inventory management, product markdowns, specific work routines, organizational methods, and merchandising plans."  *Id.*

### B.  Aldi Classifies Some Store Managers As Hourly, Non-Exempt

The Store Manager is the top-ranked employee at the store and the only position in the store that <u>may</u> be classified as exempt.  *Id.* ¶ 6.  Since March 2013, at least 75 of these Store Managers across 10 of Aldi's 23 divisions have been classified as hourly, <u>non-exempt</u> employees and have received overtime pay when they have worked overtime hours.  *Id.* at ¶ 8.  These non-exempt Store Manager classification decisions are largely division-made decisions.  *Id.*

### C.  The Aldi Store Manager Job Today Is Different Than During *McNelley/Lau*

Plaintiffs ask this Court to speculate that Aldi today is the same company with the same Store Manager job duties as it was 8 years ago and thus that conditional certification in this case is warranted because the Northern District of Ohio certified a collective in the *McNelley/Lau* litigation.[4]  Plaintiffs have presented absolutely no evidentiary basis for such speculation.

And in fact, the position of Store Manager, as it existed at the time of the *McNelley/Lau* litigation, is meaningfully different from today's Store Manager position.  The operations policies and procedures have evolved, the number of store employees that each Store Manager supervises has grown substantially (with the largest store staff size in 2010 being 19 versus 32 today), and the job duties of the position have changed.  Persohn Dec. ¶ 7; *see also* Griffin Dep. 45:15-16, 46:14, 55:4-9 (█████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[4] Plaintiffs include in footnote 3 of their Motion a list of other employment-related lawsuits against Aldi in the past four years.  Not all were FLSA cases by Store Managers, and none were certified as collective actions under the FLSA.

████████████████████████████████████████████████████████████████
█████████████████████████████████ ).

**D. Plaintiffs Have Testified That They Did Not Perform The Duties Set Forth In The Store Manager Job Description and Store Procedures Manual**

Plaintiffs argue that a common job description and common policies and procedures bind them and other Store Managers together.  But Plaintiffs testified that ████████████ ████████████████████████████████████████████████████. *See* McIndoo Dep. 89:20-23 (████████████████████████████████████████████████ ████████████████████████████████████████); Griffin Dep. 236:16-17, 237:8-11 (████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ );  DeTomaso Dep. 119:14-22 (██████████ ████████████████████████████████████████████ ), 135:17-19 (███████ ████████████████████████████████████ ), 137:21-138:2 (████████████ ████████████████████████████████ ), 198:21-25 (████████████████████████████████ ), 199:3-6 (████████████████████████████████ ).

Plaintiffs also confirmed that they did not follow the Store Procedures Manual:

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ ████████████

McIndoo Dep. 19:22-20:4; DeTomaso Dep. 154:12-13 (████████████████████████████ ████████████████████████████ ).

6

**E.  Other Store Managers Have Performed The Managerial Duties Expected Of Them**

Unlike Plaintiffs, non-party Store Manager declarants have testified both that they personally performed, and have always understood Aldi's expectation that they perform, each and every duty set forth in the Store Manager job description and that they consult the Store Procedures Manual for operations guidance.  *See* Alfonso Dec., filed herewith as Ex. D, ¶ 28; Breimayer Dec., filed herewith as Ex. E, ¶ 22; Greenwell Dec., filed herewith as Ex. F, ¶ 33; Siedel Dec., filed herewith as Ex. G, ¶ 34.

In addition, the non-party Store Manager declarants have testified that their duties have included many duties that Plaintiffs claim they never performed, such as:  delegating work to the employees in their stores; interviewing candidates for positions in their stores; making hiring decisions or recommending candidates for hire for positions in their stores; making promotion decisions or recommending employees in their stores for promotion; making termination decisions or recommending employees in their stores for termination.[5]  *See* Ex. C, Examples of Dissimilarities in Store Managers' Duties Testimony.

As the Exhibit C summary chart shows, Plaintiffs and the opt-in declarants are not even similarly situated with respect to these managerial duties.  *See id*.  The opt-ins make incomplete,

---

[5] The declarations that Aldi submits from four of its District Managers also demonstrate differences between other Store Managers and Plaintiffs.  All of the District Managers testified that their Store Managers are a key part of the hiring process; some described a process whereby they conduct a first-round interview and Store Managers conduct a second-round interview, while others indicated that they jointly conduct interviews with Store Managers.  *See* Balaban Dec., filed herewith as Ex. O, ¶ 7; Buss Dec., filed herewith as Ex. P, ¶ 9; Denmark Dec., filed herewith as Ex. Q, ¶ 7; Prior Dec., filed herewith as Ex. R, ¶ 8.  All the District Managers reported that they give serious weight to their Store Managers' hiring recommendations and decline to hire candidates upon the recommendation of the Store Manager.  *See* Balaban Dec. ¶ 7; Buss Dec. ¶ 10; Denmark Dec. ¶ 7; Prior Dec. ¶ 8.  The District Managers also described the Store Managers' similarly intensive involvement in the promotion and termination processes. *See* Balaban Dec. ¶¶ 8, 10; Buss Dec. ¶¶ 11, 14; Denmark Dec. ¶¶ 8, 10; Prior Dec. ¶¶ 9, 11.  And the District Managers make clear that Shift Managers and Manager Trainees are almost never similarly involved in these key personnel decisions.  *See* Balaban Dec. ¶ 11; Buss Dec. ¶ 15; Denmark Dec. ¶ 11; Prior Dec. ¶ 12.

pro forma statements, such as that they "did not have authority to hire, fire, promote or discipline hourly employees" but avoid a discussion about whether they shared responsibility with their District Manager or otherwise made recommendations to their District Manager based on their own assessments of whether certain individuals should be hired for their store and whether their supervisees should be fired, disciplined, or promoted. Pls.' Ex. E, Bauer Dec. ¶ 8; Pls.' Ex. F, Botta Dec. ¶ 9; Pls.' Ex. G, Clark Dec. ¶ 8; Pls.' Ex. H, Mescher Dec. ¶ 8; Pls.' Ex. I, Pinto Dec. ¶ 8.

They also each state in pro forma fashion that "the District Manager would approve the proposed weekly schedules for store workers, including me," but fail to state who, if not themselves as Store Managers, created the weekly work schedules in the first place. Bauer Dec. ¶ 11; Botta Dec. ¶ 12; Clark Dec. ¶ 11; Mescher Dec. ¶ 11; Pinto Dec. ¶ 11. Such attempts by the opt-in plaintiffs to use self-serving vagueness to avoid admitting managerial tasks and revealing dissimilarities between Plaintiffs and themselves are telling.

**F. Plaintiffs' Testimony And That Of Aldi's Declarants Establish That Their Jobs Are Not The Same As The Manager Trainees And Shift Managers**

Contrary to Plaintiffs' attempts to spin their testimony, even Plaintiffs have acknowledged that their job as Store Managers was not the same as the hourly employees they supervised in a number of respects. For example, Plaintiffs have admitted that, ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████. McIndoo Dep. 151:20-22, 153:3-8; Griffin Dep. 72:9-10; DeTomaso 55:2-9.

Plaintiffs also have admitted that ████████████████████████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████.  McIndoo Dep. 143:7-15; Griffin Dep. 61:2-7; DeTomaso Dep. 87:9-88:4.  *See also* Answer, Doc. 26, ¶ 65.

In addition, Plaintiffs have testified that ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████████.  McIndoo Dep. 18:6-14; Griffin Dep. 69:18-20, 153:15-17; DeTomaso Dep. 12:16-13:2, 106:20-23; *see also* Pls.' Ex. Q, Doc. 33-3 at 132 (describing Manager Trainees as being in training to become Store Managers and needing to "learn what it takes to manage an entire store" and "how to lead, coach and develop Store Associates").

The declarations of non-party Store Managers confirm and expand upon these differences between Store Managers and the rest of the store staff.  For example, they have testified that they do <u>not</u> spend the vast majority of their time performing the same tasks as the Store Associates, Shift Managers, and Manager Trainees whom they supervise.  *See* Alfonso Dec. ¶ 25; Diaz Dec., filed herewith as Ex. H, ¶¶ 27-28; Gilbert Dec., filed herewith as Ex. I, ¶ 13; Greenwell Dec. ¶¶ 28-29; Mayville Dec., filed herewith as Ex. J, ¶ 21; Poole Dec., filed herewith as Ex. K, ¶ 18; Siedel Dec. ¶¶ 30-31; Sink Dec., filed herewith as Ex. L, ¶ 29; Villa Dec., filed herewith as Ex. M, ¶ 20.

They also have explained that, to the extent they have performed manual labor alongside their staff, they have never done so to the detriment of their managerial tasks because, if they fail to remain responsible at all times for management of the employees and store operations, then their store's performance would suffer; after all, no one else in the store is responsible for these management duties.  *See* Alfonso Dec. ¶ 26; Diaz Dec. ¶ 31; Gilbert Dec. ¶ 24; Greenwell Dec. ¶¶ 28, 31; Poole Dec. ¶ 28; Siedel Dec. ¶ 32; Sink Dec. ¶ 28; Villa Dec. ¶ 23; Weist Dec., filed herewith as Ex. N, ¶ 31.

And while Store Managers may, at times, delegate some managerial responsibilities to their Shift Managers and Manager Trainees, the Store Managers do not entrust them with the critical decisions, such as hiring, firing, discipline, promotion, and performance reviews because the hourly employees generally view the hourly-paid managers as their peers and consider only the Store Manager as their direct leader. *See* Diaz Dec. ¶¶ 12-13; Greenwell Dec. ¶¶ 20-21; Siedel ¶¶ 18-20; Sink Dec. ¶¶ 14-16; Villa Dec. ¶ 10.

In short, the declarations of the non-party Aldi Store Managers, who collectively have worked in 14 stores in 10 states, make clear that, unlike Plaintiffs, other Store Managers at Aldi understand the importance of their managerial duties and perform them.

## IV. LEGAL ARGUMENT AND ANALYSIS

### A. The Legal Standard

The FLSA does not require that every FLSA lawsuit proceed as a collective action. Instead, district courts "have discretion, <u>in appropriate cases</u>," to implement an opt-in process by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added); *accord Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010).

Certification of a collective action and authorization of notice are "not automatic" or a rubber stamp but instead require a factual showing "based on some substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("*Guillen I*") (finding that the plaintiff's burden may "require only a 'modest factual showing,' … but the burden is not non-existent and the factual showing, even if modest, must still be based on some substance"); *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-CIV-8820 (LTS)(THK), 2011 WL 2693712, at *3 (S.D.N.Y. Jul. 11, 2011) (certification "is not automatic"); *see also Khan v. Airport Mgmt. Servs.*, No. 10-CIV-7735 (NRB), 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011) ("While plaintiff's burden at this stage is modest, it is not non-existent. … In fact, courts in this Circuit

have routinely declined to authorize collective action notice when faced with similarly lacking evidence.").

The Second Circuit has confirmed the district courts' practice of, at the first stage, requiring plaintiffs to "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (citation omitted). The Second Circuit has not, however, "set forth an inflexible burden of proof that is incapable of being increased in proportion to the discovery conducted by the parties." *Korenblum v. Citigroup, Inc.*, No. 15-CV-3383 (JMF), 2016 WL 3945692, at *3, --- F. Supp. 3d ---- (S.D.N.Y. Jul. 19, 2016).

Instead, where, as here, meaningful discovery has occurred, it is appropriate to consider both plaintiffs' evidence <u>and</u> defendant's. *See, e.g.*, *Korenblum*, *supra* at *3-4 (noting that "even where courts in this Circuit have ostensibly declined to increase scrutiny after some discovery has taken place, they have considered the evidence obtained in discovery" and deciding to "look beyond the pleadings and affidavits submitted by Plaintiffs and … consider the evidence submitted by both parties"); *Vargas v. HSBC Bank USA, N.A.*, No. 11-CIV-7887 (DAB), 2012 WL 10235792, at *4 (S.D.N.Y. Aug. 9, 2012) ("[I]n light of the fact that the Court previously ordered six weeks of discovery on this very issue, at Plaintiff's request, the Court sees no reason why it should not consider the entire record in determining whether to exercise its discretion to order the sending of a notice to other potential plaintiffs."); *Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219 (DNH/DEP), 2009 U.S. Dist. LEXIS 9793, at *6-9 (N.D.N.Y. Jan. 26, 2009) (relying on defendants' evidentiary submissions as well); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 305 (S.D.N.Y. 1998) (Sotomayor, J.) (stating that both plaintiffs' and defendant's declarations were considered in her ruling).

Aldi acknowledges that this Court has issued one conditional certification ruling in a factually-distinguishable FLSA off-the-clock lawsuit in which it found that a "modest factual showing" standard should apply irrespective of the amount of preliminary discovery by the parties. *Gregory v. Stewart's Shops Corp.*, No. 7:14-cv-00033-TJM-ATB (N.D.N.Y. Jul. 8, 2016). Nonetheless, Aldi respectfully directs this Court's attention to a decision that recently adopted a "modest plus standard" instead. In *Korenblum*, Judge Furman wrote that "neither law nor logic supports rigidly applying the same standard of review at all points prior to discovery's close—particularly where, as here, discovery with respect to conditional certification has been completed." 2016 WL 3945692, at *3, --- F. Supp. 3d at ----. The court reasoned as follows:

> Given the discretionary, managerial nature of the inquiry, not to mention the inherent imprecision of words like "modest" and "lenient," a Court's initial review may properly grow more exacting as discovery proceeds. And at least where discovery on conditional certification has been completed, common sense suggests that it should: Were it otherwise, after all, what would be the point of the discovery? … Failing to acknowledge as much risks misunderstandings that could turn the construct of "conditional certification" on its head, from what "may be a useful 'case management' tool for district courts to employ in 'appropriate cases,'" … into an artificial and unnecessary burden on the Court (not to mention on defendants).

*Id.* (citing *Creely v.HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011); quoting *Myers*, 624 F.3d at 555 n.10).

Irrespective of whether this Court chooses a modest or modest-plus standard, however, Plaintiffs' own testimony and the evidence they have submitted establish that Plaintiffs are not similarly situated to all Store Managers of Aldi. The additional evidence submitted by Aldi further confirms the dissimilarities.

### B. Plaintiffs Have Failed To Show That They Are Similarly Situated To All Store Managers Because Of Their Exempt Classification

Plaintiffs boldly assert that "Aldi's blanket classification of all Store Managers as exempt from overtime compensation supports a finding of similarly situated status." Pls.' Mem. at 15.

The only evidence on point is directly to the contrary, however: Aldi does <u>not</u> classify all Store Managers as exempt. Persohn Dec. ¶ 8.

Not only is Plaintiffs' representation to the Court on this issue factually inaccurate, it is also a legally insufficient basis for granting certification of an FLSA collective and authorizing notice. "As numerous courts in this Circuit have held, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members similarly situated for § 216(b) purposes." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) (collecting cases; internal quotation marks omitted); *Rosario v. Compass Group, USA, Inc.*, No. 3:15-CV-00241 (MPS), 2016 WL 471249, at *4 (D. Conn. Feb. 5, 2016) (same); *Nabi v. Hudson Group (HG) Retail, LLC*, 310 F.R.D. 119, 124 (S.D.N.Y. 2015) (same); *Guillen v. Marshalls of MA, Inc.*, No. 09-CIV-9575 (LAP)(GWG), 2012 WL 2588771, at *1 (S.D.N.Y. Jul. 2, 2012) ("*Guillen II*") ("[C]ourts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient to find [managers] 'similarly situated' for FLSA purposes.") (collecting cases).

Indeed, in *Myers v. Hertz Corp.*, while the Second Circuit found that it did not have pendent appellate jurisdiction over the district court's order denying certification of an FLSA collective (No. 02-CV-4325 (DRH) (MLO), 2006 U.S. Dist. LEXIS 100597, at *14 (E.D.N.Y. May 18, 2006)), the Second Circuit affirmed the district court's denial of Rule 23 class certification. 624 F.3d at 549, 555. In affirming, it explained that, in cases of purported misclassification, "the exemption inquiry requires examination of the 'dut[ies] that the employee' actually 'performs,'" such that class certification is proper only when the evidence

"tend[s] to show that the plaintiffs' jobs were similar in ways material to the establishment of the

exemption criteria." *Id.* at 549 (quoting FLSA regulation 29 C.F.R. § 541.700(a) and

distinguishing *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008), from *Myers*).[6]

The authority Plaintiffs cite in support of their argument to the contrary are plainly

distinguishable on the facts. For example, in *Nerland v. Caribou Coffee Co.*, the court concluded

that the defendant's job description "comprehensively describes the job duties of Caribou store

managers, both managerial and non-managerial," and as such, it constituted "competent

generalized evidence of the uniform scope of duties and responsibilities of all Caribou store

managers." 564 F. Supp. 2d 1010, 1019 (D. Minn. 2007). Notably, in granting certification, the

*Nerland* court distinguished the facts before it from *Smith v. Heartland Auto. Servs., Inc.*, 404 F.

Supp. 2d 1144 (D. Minn. 2005), which ordered decertification, because the plaintiffs in

---

[6] In addition to being contrary to the rationale of *Myers* and all of the other district court cases cited by Aldi, the cases that Plaintiffs cite for the argument that "[c]ourts routinely grant conditional certification in cases where workers are uniformly misclassified as exempt" establish no such trend. First, Defendant is not contending that the fact-specific nature of the exemption analysis precludes certification, which distinguishes it from the defendants in *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 327-28 (S.D.N.Y. 2010), and *Marcus v. AXA Advisors, LLC*, Pls.' Ex. W, *Marcus* Transcript at 23:7-16 (E.D.N.Y. May 30, 2012). Second, the *Marcus* court's ruling emphasized the plaintiffs' showing that "there was one national policy that is in dispute in this case about the way these [members of the putative collective] were treated and that [the defendant] went to the trouble of training everybody around the country to do it the same everywhere." *See* Pls.' Ex. W, *Marcus* Transcript at 25:11-15 (E.D.N.Y. May 30, 2012). *Pippins v. KPMG LLP* is similarly distinguishable because the court found "evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies" and the defendant admitted that "it uniformly classified all of its Audit Associates as exempt … without regard to any special or individualized functions that any particular Audit Associate performs[.]" No. 11-CIV-0377 (CM)(JLC), 2012 WL 19379, at *8, *10 (S.D.N.Y. Jan. 3, 2012) (internal quotation marks and citation omitted). *Cuzco v. Orion Builders, Inc.* is inapposite because the court there found the defendant's evidence, "when taken in conjunction with all other documents submitted in support of this motion, bolster[ed] Plaintiff's argument that there are other similarly situated workers[.]" 477 F. Supp. 2d 628, 633 (S.D.N.Y. 2007). Finally, aside from the fact that it is an independent contractor, not exempt classification, case, *Lee v. ABC Carpet & Home* simply does not provide analysis to inform this Court as to its finding of similarity but only references its decision in a related summary judgment motion. 236 F.R.D. 193, 198 (S.D.N.Y. 2006).

*Heartland* argued that their actual daily duties, which were purportedly non-managerial, were <u>not</u> set forth in the job description. *Nerland*, 564 F.Supp. 2d at 1019-20.

Similarly, in *Holbrook v. Smith & Hawken, Ltd.*, the assistant store manager plaintiff argued that "the Job Descriptions … accurately describe the duties associated with each job title in all of Defendant's stores in the United States throughout the period of the claim." Pls.' Mem. at 2, *Holbrook v. Smith & Hawken, Ltd.*, No. 3:06-CV-01232-VLB (D. Conn. Feb. 23, 2007), ECF No. 18-2. The defendant also admitted "that all ASMs were subject to the same job description and function and classified as exempt executives." *Holbrook*, 246 F.R.D. 103, 106 (D. Conn. 2007). The *Holbrook* court relied heavily upon these representations. Unlike the plaintiffs in *Nerland* and *Holbrook*, Plaintiffs here have disavowed Aldi's job descriptions.

Plaintiffs' reliance upon the FLSA collective and Rule 23 class certification decisions in *Damassia* is similarly inapposite because there the defendant had twice conceded that its business practices were indistinguishable across stores, and the defendant made a singular decision regarding the exempt classification of the position in question. *See Damassia v. Duane Reade, Inc.*, No. 04-CIV-8819 (GEL), 2006 WL 2853971, at *4 (S.D.N.Y. Oct. 5, 2006) (certifying an FLSA collective); *Damassia*, 250 F.R.D. at 159 (certifying a Rule 23 class). The same cannot be said of Aldi's Store Manager business practices and classification decisions, which the evidence has established are not uniform. *See Myers*, 624 F.3d at 549 (distinguishing the Rule 23 *Damassia* decision on this basis); *Guillen I*, 750 F. Supp. 2d at 479 (distinguishing and refusing to follow *Damassia* on these grounds).

The case that Plaintiffs claim is most like their own, *Indergit v. Rite Aid Corp.*, is similarly inapposite. In *Indergit*, the court certified an FLSA collective based largely on the findings that (i) the defendant "exercise[d] a great degree of control over the operation of retail

branches," which "makes it highly likely that [its] store managers ... perform similar duties" and (ii) there was evidence of a "national policy" by the company of attempting to raise profits by decreasing the hours worked by hourly employees and requiring assistant managers to perform such tasks that had formerly been performed by the non-exempt employees. No. 08-CIV-9361 (PGG), 2010 WL 2465488, at *5 (S.D.N.Y. Jun. 16, 2010). Here, Plaintiffs have failed to demonstrate such tight control by corporate over the branches, and, in fact, the evidence is to the contrary. Moreover, Plaintiffs have not submitted (and cannot submit) evidence of a national policy to raise profits by decreasing the hours worked by hourly employees and transferring that work to Plaintiffs.[7] Such distinctions caused the court in *Guillen I* to find *Indergit*, like *Damassia*, inapposite. 750 F. Supp. 2d at 479 (distinguishing *Indergit*).

Plaintiffs' reliance upon *Abrams v. GE* is misplaced for the same reason. No. 95-CV-1734 (FJS), 1996 U.S. Dist. LEXIS 16869, at *9 (N.D.N.Y. Nov. 4, 1996) (pointing to national policy and noting, "while the different GE divisions separately arrived at the decision of who and how many to lay off, each division did so utilizing the same corporate downsizing policy").

Plaintiffs mischaracterize *Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219 (DNH/DEP), 2009 U.S. Dist. LEXIS 9793 (N.D.N.Y. Jan. 26, 2009), by suggesting that it stands for the proposition that plaintiffs in a misclassification case "need not perform the same job functions." Pls.' Mem. at 14. It does not because *Hamelin* was actually a case by non-exempt

---

[7] Plaintiff DeTomaso has admitted that █████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
█████████████████████████████. DeTomaso Dep. 55:2-60:25. And Plaintiff Griffin testified that
████████████████████████████████████████████. Griffin Dep. 122:12-16.

employees who claimed they had to work off the clock during meal breaks.  Thus, timekeeping policies, not job duties, were at issue.[8]

Plaintiffs also seem to misunderstand the message of *Hamelin*, which actually supports denial of Plaintiffs' Motion.  In *Hamelin*, it was undisputed that the defendants had a timekeeping system that automatically deducted time from non-exempt employees' recorded work hours to account for meal breaks.  Despite the existence of this undisputed uniform timekeeping policy, Judge Peebles rejected it as a basis for conditional certification, just as most courts have rejected the notion that a common classification decision is enough:

> I reject the existence of the break deduction policy …, standing alone, as being sufficient as a common denominator to permit a collective action on behalf of all of defendants' hourly employees subject to that practice, since something more is required in order to establish that the putative class members were all subject to the same unlawful practice.

*Id.* at *20.  What appears to have swayed Judge Peebles to grant conditional certification and authorize class notice were the following facts:  (i) 106 individuals had already joined the lawsuit pre-certification as opt-in plaintiffs; and (ii) the defendants' patient care requirements, coupled with short staffing, "resulted in plaintiffs routinely working through or during scheduled meal breaks," which, because of the automatic deduction practice, they claim to have done without compensation.  *Id.* at *9, *14 n.5, *22.

Applying the *Hamelin* analysis to Plaintiffs' misclassification claims, it is not enough for Plaintiffs to allege that they were classified as exempt but performed mostly non-exempt work.

---

[8] *Cano v. Four M Food Corp.*, No. 08-CV-3005 (JFB)(AKT), 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009), is distinguishable for the same reasons:  It concerned hourly-paid employees holding a variety of different positions, and the issue was whether they could be bound by a common policy that purportedly resulted in off-the-clock violations.  And in two other decisions Plaintiffs cite, the plaintiffs asserted ADEA claims such that the issue was a purportedly discriminatory policy.  *See Heagney v. Eur. Am. Bank*, 122 F.R.D. 125, 127-28 (E.D.N.Y. 1988), and *Abrams*, 1996 U.S. Dist. LEXIS 16869 at *9.  Like *Hamelin* and *Cano*, *Heagney* and *Abrams* do not address the appropriateness of certifying an FLSA collective of exempt employees whose only commonality is their job title.

Plaintiffs must establish that there was a uniform policy that caused all Aldi Store Managers to ignore their job descriptions and the store policies and procedures and instead engage in the non-exempt work of their subordinates. Plaintiffs have not provided that.

**C. Plaintiffs Have Failed To Show That They Are Similarly Situated To Other Store Managers Because Of the Job Description And Other Documents**

The existence of a job description and other documents that describe exempt, rather than non-exempt, job duties for Store Managers, cannot satisfy Plaintiffs' burden of proof. *See Khan*, 2011 WL 5597371 at *4 ("To proceed as a collective action when making such a claim, 'it is not sufficient for [plaintiff] to show that he and the proposed class operated under the same job description.' ") (alteration in original) (quoting *Guillen I*, 750 F. Supp. 2d at 476); *Nabi*, 310 F.R.D. at 124 ("The mere fact that Defendants created a uniform job description for this position and that operations managers may perform some of the same tasks at commuter station newsstands nationally is insufficient to create an inference that operations managers are generally misclassified.").

Moreover, Plaintiffs cannot simultaneously disavow the accuracy of the Store Manager job descriptions and rely upon them as evidence of similarity. In *Guillen I*, the assistant manager job descriptions described managerial duties, but the plaintiff asserted that he actually spent the majority of his time on non-exempt tasks, such as running a cash register, unloading trucks, stocking, cleaning, displaying the tags on merchandise, and displaying clothes in departments. 750 F. Supp. 2d at 472. He also submitted the declarations of four other assistant managers who made similar claims. *Id*. at 472-73. The court found that "it [was] not sufficient for [plaintiff] to show that he and the proposed class of [assistant store managers] operated under the same job description. Instead, [plaintiff] must show that he and the other [assistant store managers] were similarly situated with respect to the claim that they were required to perform non-managerial

job duties <u>in contravention of the formal job description</u>." *Id.* at 476 (emphasis added). In addition, standardized operational and employment policies, standardized training, and a uniform management structure constituted insufficient proof of similarity because the purported standardization did not "relate to the claim that Marshalls' [assistant store managers] are required to perform non-exempt tasks for a majority of their workweek in contravention of the [assistant store manager] job description." *Id.* at 477.

A number of other courts have reached conclusions similar to those in *Guillen I*. *See, e.g.*, *Khan*, 2011 WL 5597371 at *4 ("[P]laintiff's reliance on the centralized job descriptions maintained by defendants is misplaced. … Khan is not attacking the formal policies embodied in these descriptions. Rather, Khan is asserting that he and other employees were not given duties in conformity with these policies."); *Tahir v. Avis Budget Grp., Inc.*, No. 09-3495 (SRC), 2011 WL 1327861, at *3 (D.N.J. Apr. 6, 2011) (finding that the plaintiff's "reliance on the common documents misses the point of the claim, which turns on the alleged discrepancy between the job on paper and the job in practice"); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying certification of an FLSA collective where, although members of the putative collective "shared a common job description and were expected to perform the tasks enumerated in that specific job description … [the plaintiff] expressly disavow[ed] this job description and claim[ed] that, on a task-to-task, day-to-day basis, he spent the balance of his time performing non-administrative functions despite the fact that his job description call[ed] for him to perform some administrative functions").

Plaintiffs have testified that they did not perform the managerial duties described in the Store Manager job descriptions but instead performed various types of manual labor, such as cashiering, stocking, and cleaning, none of which are among the duties set forth in the Store

Manager job description.  *See* Pls.' Exs. O and P, 2014 and 2008 Job Descrips.  They cite to a

number of Aldi documents that describe the roles of other positions, such as District Managers

and Manager Trainees, but these documents do not establish that Plaintiffs or any other Store

Managers have been required to spend the vast majority of their time on manual labor.

Plaintiffs also cite to select provisions of the Store Employee Handbook that they contend

show that District Managers instead of Store Managers grant employee requests for extended

personal leave and handle ministerial matters, such as access to personnel files, updates of

employee contact information in their personal files, and the ordering of replacement uniforms.[9]

Pls.' Mem. at 7-8.  Such matters would not be the key, regular day-to-day activities of any

manager and do not support Plaintiffs' argument that all Store Managers, in contravention of the

job description, have failed to perform their managerial duties.  *Rosario*, 2016 WL 471249 at \*5

(concluding that the plaintiff failed to make a modest showing that assistant managers were

similar in part because "[t]he corporate policies—on their faces—do not contain any specific

information about the duties of [the managers in question] on a daily basis").

Worse still, Plaintiffs' selective discussion of such ancillary topics misleadingly ignores

the provisions within such documents that confirm the managerial role that Store Managers

actually play.  *See, e.g.*, Pls.' Ex. N-1, Store Employee Handbook, at 11, 21, and 23 (██████████

---

[9] Regarding the award of personal leave, Aldi "admits that District Managers make the ultimate
decision about personal leaves, other than vacation requests, <u>after consultation with the Store
Manager</u>."  Answer ¶ 102 (emphasis added).  Regarding uniform replacement, Aldi "admits that
the Employee Uniform Order Form is submitted to the District Manager by the store for
purposes of forwarding to the applicable Division to allow consolidation of all orders placed for
uniforms."  *Id.* ¶ 108.  Regarding personnel files, while Store Managers do not have physical
access to these records, which do not reside in the store, they impact its contents in meaningful
ways.  *Id.* ¶ 48 ("Aldi admits that Store Managers do not maintain control over the personnel
files as they are not stored within the stores.  Aldi denies that the personnel files are held by
District Managers. …  Store Managers are responsible for evaluating the performance of their
employees and discipline their employees when appropriate.  The paperwork that is generated by
the Store Manager for these purposes is included in the employees' personnel files.").

██████████████████████████████████████████

████████████████████████████████); Pls.' Ex. Q (describing Manager

Trainees as being in training to become Store Managers and, thus, needing to "learn what it takes

to manage an entire store" and "how to lead, coach and develop Store Associates").

Finally, Plaintiffs submit the declarations of five opt-in plaintiffs containing an identical

allegation that their "daily routine consisted of ... manual labor or non-managerial work,

including unloading the supply trucks, stocking the shelves and rotating products, working the

cash register, helping customers, and cleaning work like sweeping, mopping, and taking out the

trash."[10] Bauer Dec. ¶ 6; Botta Dec. ¶ 7; Clark Dec. ¶ 6; Mescher Dec. ¶ 6; Pinto Dec. ¶ 6. As in

*Guillen I*, this self-serving testimony with respect to five individuals' experiences in a tiny

fraction of Aldi's 1,600 stores nationwide is too thin to meet Plaintiffs' burden. 750 F. Supp. 2d

at 477 (affidavits from five assistant store managers who had worked at nine of the defendant's

820 stores was insufficient proof). This is particularly true in this case where Plaintiffs have

acknowledged that they have no personal knowledge of the duties performed by other Store

Managers. For instance, Plaintiff McIndoo testified that ████████████████████████████

████████████████████████████████ McIndoo Dep. 73:6-7. Thus, he would not know

whether they were performing the duties described in the Store Manager job description.

---

[10] Like the declarations submitted in *Augustyniak v. Lowe's Home Ctr., LLC*, the declarations
here "do not come close to satisfying th[e similarly situated] requirement." No. 14-CV-00488-
JJM, 2016 WL 462346, at *4 (W.D.N.Y. Feb. 8, 2016). "While the mere fact that the
declarations submitted by Plaintiff are virtually identical does not *ipso facto* render them
incompetent, it severely undercuts their persuasive value." *Id.* (internal quotation marks and
citation omitted). *See also Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-CIV-
UU, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) (agreeing that "[the plaintiff's]
conclusory assertions are insufficient to assert that other sales representatives have similar job
requirements," where she submitted "three almost identical, cut-and-paste declarations)."

Plaintiff DeTomaso ███████████████████████████████. DeTomaso Dep. 189:22-190:2, 190:14-18.

Plaintiffs' testimony about their own experiences, the boilerplate declarations of opt-in plaintiffs, and the selective references to portions of what Plaintiffs label "corporate documents" leave this Court with a dearth of evidence for finding that all Store Managers nationwide similarly performed non-exempt manual labor in contravention of their job descriptions. Neither certification of a collective or notice to other Store Managers should be granted.

**D. If This Court Were To Certify An FLSA Collective, It Should Not Approve The Class Notice And Consent Form**

For the reasons stated above, certification of an FLSA collective is not appropriate in this case. If this Court disagrees, however, Plaintiffs' proposed notice and consent form should be modified consistent with the proposal and reasons stated therefore in Aldi's Exhibit S.

**E. If This Court Were To Grant Plaintiffs' Motion, It Should Not Order Production Of Alternative Contact Information And Multiple Means Of Notice**

**1. Only Last Known Mailing Addresses Should Be Provided**

Plaintiffs ask this Court to order Aldi to produce all of the following information for each member of the putative collective: name, "last known mailing address, telephone number, email address, job title and dates of employment." Pls.' Mem. at 22. If a collective is certified, only names and last known mailing addresses should be ordered produced; privacy interests outweigh Plaintiffs' unsubstantiated request for the production of other contact information. *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009) (finding that in the interest of privacy, telephone numbers, email addresses, Social Security numbers, and dates of birth should not be produced for notification purposes); *Gordon v. Kaleida Health,* No. 08-CV-378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009) (same); *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *11 (W.D.N.Y. Oct. 21, 2009) (same);

*Mohamed v. Sophie's Cuban Cuisine Inc.*, No. 14-CV-3099 (TPG), 2015 WL 5563206, at *6 (S.D.N.Y. Sept. 21, 2015) (same regarding telephones and Social Security numbers). Moreover, Aldi does not have email addresses for each of its Store Managers. Persohn Dec. ¶ 16.

Finally, given Plaintiffs' prior one-sided notification efforts via LinkedIn, if this Court authorizes the distribution of notice by any means, Aldi respectfully requests that the Court supervise the notification process and make clear that neither party should be allowed to contact potential members of the collective during the opt-in period for the purpose of discussing potential participation in the lawsuit. *See Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y. 2008) (once notice has been authorized, the "[f]ailure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced"); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (after a suit is filed, it is improper for plaintiffs or their counsel to solicit potential members of the putative collective "without first communicating to the defendant's counsel [their] intention to do so, so that the defendant's counsel would have an opportunity to verify the accuracy of the notice and, if [they] wished, to move for an order amending the notice or limiting its distribution in an appropriate manner").

### 2. Aldi Should Not Be Required To Post The Notice And Consent Form

In the final paragraph of Plaintiffs' Proposed Publication Order (Pls.' Ex. V), Plaintiffs include language requiring Aldi to post a class notice and consent form at its premises "in a location easily accessible and frequently visited by Defendant's employees." Such a request is unsubstantiated and would be improperly invasive of Aldi's rights, unduly burdensome, impractical, and ineffective for the following reasons:

- Nowhere in Plaintiffs' Motion do they argue the need for posting of the class notice and consent form on Aldi's premises or explain why such a request has been slipped into the last paragraph of their Proposed Publication Order. As Plaintiffs have not established that notice by U.S. mail would be insufficient, there is no reason to believe that posting is necessary in this case. *Mohamed*, 2015 WL 5563206 at \*5; *Michael v. Bloomberg LP*, No. 14-CV-2657 (TPG), 2015 WL 1810157, at \*4 (S.D.N.Y. Apr. 17, 2015); *Gonzalez v. Scalinatella, Inc.*, No. 13-CIV-3629 (PKC), 2013 WL 6171311, at \*5 (S.D.N.Y. Nov. 25, 2013).

- Compelling Aldi to post notice of the lawsuit, which inherently suggests some wrongdoing by Aldi, despite the facts that there has been no determination of liability on the merits and Aldi vehemently disputes the merits of Plaintiffs' claims, raises serious concerns about compelled speech.

- Plaintiffs suggest that the posting be made where it will be seen by <u>any</u> of Defendant's employees, whether they be corporate, warehouse, or store employees. Such a request is excessively overbroad in comparison to the scope of the collective being sought.

- Even if limited to a place that is "easily accessible and frequently visited by Defendant's Store Managers," no one such place exists. Indeed, to be "easily accessible and frequently visited" by all of Aldi's Store Managers, Aldi would have to post the notice and consent form in every one of its 1,600 stores.

- There is no area in each store that is easily accessible and frequently visited only by Store Managers; thus, the 3 to 32 other employees in each store, who are not members of the putative collective, would also see the notice and consent form. This could have an unjustified negative effect on employee morale and satisfaction. *See Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015).

- Posting in so many locations spread across the country would be unduly burdensome for Aldi, particularly in terms of addressing questions that may arise from Store Managers and all other store employees who would see the posting. *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at \*12 (D. Kan. Mar. 28, 2011).

- Posting would be an ineffective means of notice because it would only be accessible to <u>current</u> Store Managers for whom Aldi has current mailing addresses. *Wass*, *supra*.

## V. <u>CONCLUSION</u>

Whether Plaintiffs were properly classified as exempt is a merits determination that is not before the Court at this time. Whether Plaintiffs, who claim to have personally failed to perform the duties set forth in Aldi's Store Manager job description, have established that they are similarly situated to all other Aldi Store Managers is the question. The answer is a resounding

no.  The evidence before this Court, including Plaintiffs' own deposition testimony that must be accepted, for now, as true, shows nothing more than that Plaintiffs were rouge managers who ignored the managerial responsibilities they were expected to fulfill.  For these and the other reasons set forth in this Opposition, Plaintiffs' Motion should be denied.

DATED:  January 17, 2017                    Respectfully submitted,

                                            By: /s/ Louisa J. Johnson
                                            One of Counsel for ALDI INC.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on January 17, 2017, she electronically filed the foregoing **Defendant Aldi Inc.'s Response to Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification of Collective Class and Authorization of Notice Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act** with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel of record:

Adam R. Gonnelli, Esq.
THE SULTZER LAW GROUP
14 Wall Street, 20th Floor
New York, New York 10005
gonellia@thesultzerlawgroup.com

Frank S. Gattuso, Esq.
O'HARA, O'CONNELL & CIOTOLI
7207 E. Genesee Street
Fayetteville, New York 13066
fsg@oharalaw.com

Inessa S. Melamed, Esq.
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, New York 10017
imelamed@farquilaw.com

                    /s/ Louisa J. Johnson
                    One of Counsel for ALDI Inc.