UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY GRIFFIN, *et al.*,

                Plaintiffs,

      -against-                            5:16-CV-0354 (LEK/ATB)

ALDI, INC., *et al.*,

                Defendants.

_____

**DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Anthony Griffin, Mark McIndoo, and Susan DeTomaso commenced this class

and collective action against defendant Aldi, Inc. and Doe Defendants 1–10 pursuant to the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York state law, Dkt. No. 1

("Complaint") ¶ 1. Presently before the Court is Plaintiffs' motion for restrictions, penalties, and

other relief related to Aldi's communications with potential collective members. Dkt. No. 54

("Motion"); see also Dkt. No. 56 ("Supplemental Memorandum"). Aldi filed a response, Dkt.

No. 58 ("Response"), and on April 26, 2017, the Court held a hearing on Plaintiffs' Motion, Dkt.

No. 61. For the following reasons, Plaintiffs' Motion is granted in part and denied in part.

## II.    BACKGROUND

The facts alleged in the Complaint are summarized in this Court's previous decision

dismissing Plaintiffs' unjust enrichment claim. Griffin v. Aldi, Inc., No. 16-CV-354, 2016 WL

7235787, at *1–2 (N.D.N.Y. Dec. 14, 2016). According to Plaintiffs, Aldi has continually

misclassified its store managers as "exempt" employees who are not entitled to overtime pay

under the FLSA and New York state law. Compl. ¶ 1. The misclassification stems from the

alleged lack of managerial tasks performed by store managers. Id. ¶¶ 47–48. Since store managers do not exercise managerial discretion, Plaintiffs suggest that they are properly categorized as non-exempt employees entitled to overtime pay under the FLSA and New York state law. Id. ¶ 1.

Plaintiffs filed their Complaint on March 29, 2016. Compl. They described the case as a "[c]lass and [c]ollective action," id. ¶ 1, and they included allegations relevant to the requirements for maintaining such actions, id. ¶¶ 167–85. On December 14, 2016, the Court dismissed Plaintiffs' unjust enrichment claim, Griffin, 2016 WL 7235787, at *5, and on February 22, 2017, U.S. Magistrate Judge Andrew T. Baxter granted Plaintiffs' motion for conditional certification, Dkt. No. 45 ("February Order") at 1.[1] On March 14, 2017, Judge Baxter approved the proposed notice of suit, which was to be sent to potential collective members in order to inform them of their right to participate in this action. Dkt. No. 48-1 ("Proposed Notice"); Dkt. No. 49. Judge Baxter also approved the parties' stipulation that "Defendant's Counsel will not affirmatively contact or communicate with any potential members of the collective, unless the contact or communication occurs within the normal course of Defendant's business." Dkt. No. 48 ("Stipulations") at 1; Dkt. No. 49. On April 20, 2017, Plaintiffs filed an emergency motion due to

---

[1] "Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action." Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016). "The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). If the answer is yes, the collective action is conditionally certified, and "[p]otential class members are . . . notified and provided with the opportunity to opt in to the action." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 367 (S.D.N.Y. 2007). "During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." Lynch, 491 F. Supp. 2d at 368.

their discovery that, without mentioning this litigation, Aldi was asking departing store managers to sign releases that waived their right to participate in any class or collective action against the company. Dkt. No. 54-1 ("Memorandum") at 1.

According to Plaintiffs, since this case began in March 2016, Aldi "has been improperly disseminating [r]eleases to terminated putative class members . . . without providing any notice of their potential rights in this litigation." Dkt. No. 54-2 ("Melamed Affidavit") ¶ 4. The releases are contained in separation agreements, one example of which is attached as an exhibit to the Melamed Affidavit. Melamed Aff. Ex. A. This particular separation agreement was offered to Ryan Jon Truman, a former Aldi store manager who was fired on March 24, 2017. Id. Ex. B, ¶¶ 5–6. Truman's separation agreement provided that he would receive a "Separation Benefit" of $2,696 in exchange for agreeing to give up his "right to bring, or be a member of any class, representative or collective action against ALDI." Id. Ex. A, at 1. The agreement also stated that it was "strictly confidential," that any claims for "pay/compensation/benefits" were forfeited, and that Truman "ha[d] been properly paid for all hours worked, including overtime." Id. at 1–2.

The agreement did not mention this lawsuit, and Truman says he was never told about the case. Id. Ex. B, ¶ 7. Truman also claims that although he was given twenty days to sign the agreement, he received four phone calls on April 6, 2017—six days before the signing deadline—from an Aldi "District Operator" who "request[ed] that [he] sign the Agreement." Id. ¶¶ 6, 10, 12. Truman told the district operator that he "still had 6 days to review the Agreement," to which the district operator "responded that if [he] did not sign the Agreement now, . . . Aldi would proceed with contesting [his] unemployment claim." Id. ¶¶ 12–13. Truman never signed

the agreement; indeed, on April 1, 2017—five days before the calls from the district operator—he had joined this lawsuit. Dkt. No. 51 ("Truman Consent-to-Sue Form").

Plaintiffs say their "counsel has received numerous telephone calls from putative collective and class members in response to the recently disseminated [separation agreements]." Dkt. No. 56-1 ("Second Melamed Affidavit") ¶ 13. These former store managers have signed the agreements, and many are confused about their right to participate in this action. Id. ¶¶ 14–15. They are particularly concerned about violating the agreement's confidentiality clause, and they worry that if they get in touch with Plaintiffs' counsel, they will have to return the severance they received from Aldi. Id. ¶¶ 15–16. At least some of these former store managers contacted Plaintiffs' counsel anonymously, and some have said they were not advised to speak with an attorney before signing. Id. ¶¶ 17–18. It is unclear whether these former store managers signed the separation agreements before or after conditional certification and the distribution of the notice of suit. Plaintiffs speculate that "hundreds, if not thousands, of putative class members may have been subject to . . . improper Separation Agreements." Suppl. Mem. at 3.

Plaintiffs seek the following relief for Aldi's allegedly improper conduct:

> (i) all contact between putative class members and Defendant, Defendant's legal counsel, or any agent [shall] cease and desist immediately with respect to any element of this action; (ii) Defendant [shall] be precluded from using the improperly obtained Releases; (iii) Defendant [shall] furnish Plaintiffs' counsel with a list containing the names and addresses of every putative class member who received a Release and/or has been contacted concerning this action; [and] (iv) Plaintiffs' counsel [shall] be permitted to distribute a Court-approved Corrective Notice to all putative class members who received the misleading communication.

Id. at 14. Aldi has agreed that the seventeen store managers "who signed a separation agreement that did not expressly carve out this pending litigation *after* Magistrate Judge Baxter conditionally certified a collective in this lawsuit . . . [will] be notified that they may join this lawsuit as an opt-in party plaintiff if they so desire." Resp. at 1. Aldi has also agreed that if it "offers separation agreements to additional Store Managers while the opt-in period is still open . . . it will carve out th[is] . . . litigation from the release provisions and the waiver of the right to participate in a class or collective action." Id. at 11. Otherwise, Aldi opposes the relief sought by Plaintiffs. Id. at 2.

As part of its response to Plaintiffs' Motion, Aldi submitted the declaration of Bruce Persohn, the "Division Vice President of the South Windsor Division [of Aldi,] which encompasses stores in southeast New York, Connecticut, Massachusetts, Vermont, Rhode Island, and New Hampshire." Dkt. No. 58-1 ("Persohn Declaration") ¶ 2. He asserts that since 2011 or earlier, Aldi has regularly "offer[ed] severance to employees who are not fired for serious misconduct or otherwise determined to be ineligible for a separation agreement to assist them monetarily as they transition to a new job or begin a job search." Id. ¶ 4. According to Persohn, these separation agreements have "been largely the same" since December 2013, id., and Aldi has not changed the language in these agreements since this lawsuit began, id. ¶ 5. Aldi does not present the separation agreements as "'take it or leave it' offers," and the "separation offer [is designed] to be non-coercive." Id. ¶ 8. The agreements are often negotiated "without the involvement of legal counsel." Id. ¶ 7.

On May 9, 2017, Plaintiffs submitted a letter stating that Aldi has continued to offer departing store managers separation agreements and has "threatened [these managers] with a

challenge to their otherwise legitimate unemployment claims unless they sign." Dkt. No. 66

("Plaintiffs' Letter Brief") at 1. Plaintiffs point to George Cruz, a former Aldi store manager who

was fired on May 8, 2017. Id. According to Plaintiffs, the day Cruz was fired, he was offered a

separation agreement by Tom Fangras, his director of operations, who told him that if he did not

sign, Aldi would contest his unemployment claim. Id. Cruz "stood his ground" and refused to

sign, at which point Fangras told Cruz that if he did not "join any lawsuits" and Aldi did not

"hear from [him] for four weeks," Fangras would get back to him and "try to get [him] the

severance package again." Id. at 1–2. Cruz submitted an affidavit that reiterates these charges.

Dkt. No. 67 ("Cruz Affidavit").

On May 10, 2017, Aldi responded to Plaintiffs' submission. Dkt. No. 68 ("Aldi Letter

Brief"). Aldi offers a completely different account of Cruz's termination. According to Aldi,

since the April 26, 2017 hearing before this Court, it "has instructed operations in the field not to

offer separation agreements to Store Managers upon termination of employment pending this

Court's ruling [on Plaintiffs' Motion]." Id. at 1. Aldi also says that Cruz was never even offered a

separation agreement, "much less pressure[d] . . . into signing one," and that Fangras told Cruz

that Aldi had "no control over whether unemployment benefits w[ould] be awarded to him

because that is a decision that is made by the state." Id. Apparently, "District Manager Chris

Collins" was also present during this conversation, though he is not mentioned in Plaintiffs'

Letter Brief. Id. Collins and Fangras submitted declarations corroborating this version of events.

Dkt. Nos. 68-1 ("Fangras Declaration"), 68-2 ("Collins Declaration"). Finally, Aldi informs the

Court that Plaintiffs's counsel did not confer with Aldi before filing their Letter Brief. Aldi Letter

Br. at 2.

# III.    DISCUSSION

"District courts have 'both the duty and the broad authority' to govern the conduct of counsel and parties in class actions brought under Rule 23 of the Federal Rules of Civil Procedure and collective actions brought under the FLSA." Agerbrink v. Model Serv. LLC, No. 14-CV-7841, 2015 WL 6473005, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981)); see also Fengler v. Crouse Health Sys., Inc., 634 F. Supp. 2d 257, 261 (N.D.N.Y. 2009) ("Class actions, including a collective action brought pursuant to the FLSA, are complex litigations during which the district court's early involvement . . . is advisable.").[2] "This supervisory authority exists even before a class is certified." Brown v. Mustang Sally's Spirits & Grill, Inc., No. 12-CV-529, 2012 WL 4764585, at *2 (W.D.N.Y. Oct. 5, 2012); accord, e.g., Cheverez v. Plains all Am. Pipeline, LP, No. 15-CV-4113, 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) ("The court's duty to supervise communications with potential class members exists even before a class is certified."); Guifu Li v. A Perfect Day Franchise, Inc., 270 F.R.D. 509, 518 (N.D. Cal. 2010) ("[T]he underlying rationale of . . . cases [involving postcertification communications] does not depend on the certification of the class but instead on the inherent undermining of the class action process when opt-outs are solicited *ex parte*."); Federal Judicial Center, Manual for Complex Litigation § 21.12 (4th ed. 2004) ("Rule 23(d) authorizes the court to regulate communications with potential class members, even before

---

[2]  The Court's description of the legal standards governing district courts' authority to regulate in this area sometimes refers to class members or class actions. The Court notes that "class" and "collective" are interchangeable terms for purposes of its account of the applicable legal standards. See Forauer v. Vt. Country Stores, Inc., No. 12-CV-276, 2013 WL 6086202, at *3 (D. Vt. Nov. 19, 2013) ("District courts have . . . applied Gulf Oil to FLSA collective actions." (collecting cases)).

certification."). Courts must act vigilantly "to ensure that potential class members receive accurate and impartial information regarding the status, purposes and effects of the class action." Hinds County v. Wachovia Bank N.A., 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011) (citing Kleiner v. First Nat'l Bank of Atlanta, 751 F.2d 1193, 1203 (11th Cir. 1985)). FLSA cases present significant opportunities for improper communications that undermine the collective action process. Agerbrink, 2015 WL 6473005, at *3. For one thing, "FLSA plaintiffs must opt-in, [so] unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'" Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 924 (11th Cir. 2014).

"In general, communications that are litigation-neutral—that do not alter the legal relationship between the defendants and members of a putative class—are not subject to restriction. Indeed, defendants can even negotiate settlement of the claims of potential class members." Wu v. Pearson Educ. Inc., No. 09-CV-6557, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011). Nonetheless, courts may regulate communications that are "inaccurate, unbalanced, misleading, or coercive, or which improperly attempt[] to encourage class members not to join the suit." Agerbrink, 2015 WL 6473005, at *3. "[P]utative class members can be misled though omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." County of Santa Clara v. Astra USA, Inc., No. 05-CV-3740, 2010 WL 2724512, at *3 (N.D. Cal. July 8, 2010); see also Friedman v. Intervet Inc., 730 F. Supp. 2d 758, 762 (N.D. Ohio 2010) ("A defendant's failure to mention even an uncertified class action in securing settlements or releases from putative class members may

be 'misleading.'" (collecting cases)); Burford v. Cargill, Inc., No. 05-CV-283, 2007 WL 81667, at *2 (W.D. La. Jan. 9, 2007) ("[T]he Court finds that the use of the general receipt and release which is being used by the Defendant in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law."). "The crucial question, however, is not whether the [communication] slanted or omitted facts, but whether it did so to such an extent that it crossed the line into misrepresentation." Agerbrink, 2015 WL 6473005, at *6.

Communications are coercive when they "overpower[] the free will or business judgment of the potential class members." Jenifer v. Del. Solid Waste Auth., No. 98-CV-270, 1999 WL 117762, at *5 (D. Del. Feb. 25, 1999). Coercion is especially likely to be present if "the class and the class opponent are involved in an ongoing business relationship," such as an employer-employee relationship. Ralph Oldsmobile, Inc. v. Gen. Motors Corp., No. 99-CV-4567, 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001) (quoting Kleiner, 751 F.2d at 1202). But "the existence of such a relationship is not enough by itself to justify precluding the communication of settlement offers to putative class members." Keystone Tobacco Co. v. U.S. Tobacco Co., 238 F. Supp. 2d 151, 158–59 (D.D.C. 2002); accord Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S., No. 09-CV-6437, 2011 WL 1312162, at *6 (N.D. Ill. Mar. 31, 2011) ("Although an at-will employee-employer relationship can produce a potential for coercion, the existence of an employee-employer relationship alone is not enough to justify restricting Defendants['] communications." (collecting cases)). There must still be evidence of conduct that "undermines the purposes of Rule 23 [or the collective action process]." Burrell v. Crown Cent. Petroleum, Inc., 176 F.R.D. 239, 244 (E.D. Tex. 1997).

Even if a court identifies improper communications between potential collective members and counsel, it does not have unfettered discretion to impose restrictions or penalties. "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Gulf Oil, 452 U.S. at 101. Further, "such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." Id. at 102. The complaining party need not "show actual harm, but only that a restricting order would guard against the 'likelihood of serious abuses.'" Jenifer, 1999 WL 117762, at *3 (quoting Gulf Oil, 452 U.S. at 104).

### A. Were the Separation Agreements Misleading?

Aldi concedes the impropriety of seeking releases from departing store managers after conditional certification without mentioning this lawsuit. Resp. at 1–2. But it contends that it was not improper for it to seek such releases after the initiation of this case but before conditional certification. Id. at 2. Aldi emphasizes that before Judge Baxter conditionally certified the collective, "this lawsuit involved only three plaintiffs, and the parties did not know whether any other current or former Store Managers would be permitted by the Court to join this lawsuit as party plaintiffs." Id. According to Aldi, a precertification separation agreement is not improper simply because it fails to mention a putative collective or class action in which the departing employee may eventually be able to participate. Id. at 9.

It is far from clear to the Court that it is proper for an employer to seek releases from departing employees without mentioning putative collective or class actions in which they may

later be able to participate. Indeed, some district courts have deemed misleading releases that mentioned a pending collective action but failed to provide enough detail about the case. For example, in <u>Gonzalez v. Preferred Freezer Services LBF, LLC</u>, No. 12-CV-3467, 2012 WL 4466605, at *1 (C.D. Cal. 2012), the employer responded to the filing of an FLSA collective action by "unilaterally draft[ing] a 'Release Agreement' that it provided to its employees, who [were] potential plaintiffs to th[e] putative c[ollective] action." If an employee signed the agreement, she would receive a settlement in exchange for waiving "all claims arising out of a 'former employee['s]' wage-and-hour lawsuit [that is, the <u>Gonzalez</u> case]." <u>Id.</u> (first alteration in original). "But the Release Agreement did not state when this unnamed lawsuit was filed, the name of the former employee, the names of the employee's attorneys, the attorneys' contact information, or the period of time covered by the release." <u>Id.</u> The court deemed these waivers improper because they did not provide enough information about the case and did not include a copy of the complaint. <u>Id.</u> Further, the waivers did not include the plaintiffs' counsel's contact information. <u>Id.</u>[3]

The result in <u>Gonzalez</u> makes sense in light of the principle that employees have a "right . . . to make an informed choice as to whether to participate in [an] FLSA collective action." <u>Billingsley</u>, 560 F. App'x at 922. The court in <u>Gonzalez</u> recognized this concern when it stressed the failure of the waivers to provide employees with enough information "to make an informed decision regarding waiver of their rights." 2012 WL 4466605, at *1. And according to a leading treatise, "if a defendant[, before certification,] attempts to obtain a release of claims in a

---

[3] Although the releases in <u>Gonzalez</u> were signed by current employees, the court did not discuss coercion in explaining the impropriety of the waivers, focusing instead on the misleading nature of the communications. 2012 WL 4466605, at *1.

pending class action without informing putative class members of the pendency of the lawsuit, it is likely that the releases obtained would be voidable." 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 11:1 (13th ed. 2016); accord, e.g., Marino v. CACafe, Inc., No. 16-CV-6291, 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) ("Because the Court finds the releases here were obtained by deceptive omissions of material information [namely, the existence of the precertification class action], the Court also finds that the releases are invalid."); O'Connor v. Uber Techs., Inc., No. 13-CV-3826, 2014 WL 1760314, at *7 (N.D. Cal. May 2, 2014) ("Courts have . . . found procuring waiver, settlement, or arbitration agreements without providing adequate information about the pending class action [constitutes] misleading communications which the court may limit." (collecting cases)); Eshelman v. OrthoClear Holdings, Inc., No. 07-CV-1429, 2007 WL 2572349, at *3 (N.D. Cal. Sept. 4, 2007) ("If [the defendant] had not apprised potential shareholders that this lawsuit was pending, or if it had omitted the [second amended complaint] with its mailing, the Court would be more inclined to agree . . . that court intervention was necessary."). The Court therefore disagrees with Aldi's contention that it was not improperly misleading for it to issue separation agreements to departing store managers precertification without even mentioning this lawsuit.

Aldi attempts to limit the force of these authorities by suggesting that impropriety is present only when the communications at issue are "broadly directed to all, or a large portion of, the putative class members [and] the goal [is] to undermine the rate of participation in the lawsuit," or when "the defendants engage[] in aggressive campaigns to dissuade or pressure employees into" giving up their rights. Resp. at 7. The Court is not convinced. The mental state of the employer is not particularly relevant to the task of ensuring that potential collective

members can make "an informed choice" about whether to join the collective later or accept a settlement now. Billingsley, 560 F. App'x at 922. Aldi's position appears to be that a court is powerless to intervene where an employer, without intending to "diminish the size of the [collective] . . . and . . . reduce the potential liability," Jenifer, 1999 WL 117762, at *2, obtains a significant number of precertification releases from putative-plaintiff employees who are unaware of the pending collective action. If the employer in this scenario fails to tell the employees about the pending collective action, they may not be able to make an informed decision about whether to sign the releases. Whether the employer was aggressive or simply careless has no bearing on the question whether the employees have enough information to make this choice.

Aldi cites Cruz v. Redfin Corp., No. 14-CV-5234, 2016 WL 2621966 (N.D. Cal. May 9, 2016), for the proposition that the "pre-certification separation agreements with Store Managers are not improper merely because this lawsuit . . . was not mentioned in the agreements or in negotiations over the terms of the agreements," Resp. at 9, but that case does not say what Aldi thinks it does. Cruz did not involve any allegation that the "Independent Contractor Agreements" signed by the putative class plaintiffs in that case were misleading because they failed to mention the putative class action. Id. at *1. Instead, the plaintiff was concerned that putative class members were unaware that the court had previously "severed . . . unconscionable provisions" of the agreements—"the fee-shifting provision, the forum selection clause, and the choice of law clause." Id. The court refused to issue a corrective notice informing putative class members of the severance, for "[e]ven if the currently operative agreements contain[ed] the provisions that this Court found unconscionable, such agreements were drafted before this action was filed and

were not drafted with the intention of discouraging participation in the lawsuit." Id. at *2. Cruz therefore has little to say about whether it is misleading to seek releases from potential class members without mentioning a pending, uncertified FLSA collective action in which they may eventually be able to participate.

### B. Were the Separation Agreements Coercive?

The separation agreements executed before conditional certification but after initiation of this lawsuit were misleading, but they were not coercive. Communications that "overpower[] the free will or business judgment of the potential class members" are deemed coercive. Jenifer, 1999 WL 117762, at *5. Plaintiffs have not come forward with any concrete evidence of coercion. Plaintiffs point to Ryan Jon Truman, a former store manager who says an Aldi district operator threatened to contest his unemployment claim if he did not sign the agreement. Melamed Aff. Ex. B, ¶ 11. Truman had already joined this lawsuit as a plaintiff when he received this threat, and he never signed the agreement. Truman Consent-to-Sue Form. So Truman was not coerced to sign anything; his will was not overpowered by Aldi's threats. See Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 928 (N.D. Ill. Aug. 7, 2013) (noting that "Plaintiffs ha[d] not presented any evidence of actual coercion" because "the potential class members in this action [were] free to refuse to sign the release[s]" and there was no evidence that the named plaintiffs or other putative class plaintiffs had "signed the releases"). And while it is true that "an ongoing business relationship, such as employee and employer, may cause communications between litigants to be coercive," Burrell, 176 F.R.D. at 244, the business relationship between Truman and Aldi effectively ended the day he was fired. Truman received the separation agreement when he was terminated and was given twenty days to sign it. Melamed Aff. Ex. B,

¶ 6. Thus, he was not dependent on Aldi for continued employment when he was considering whether to sign the agreement, and that goes a long way toward removing any concerns about the coercive effect of Aldi's conduct in seeking the release. Cf. Recinos-Recinos v. Express Forestry, Inc., No. 05-CV-1355, 2006 WL 197030, at *11 (E.D. La. Jan. 24, 2006) (finding communications to be coercive where the class "consist[ed] of indigent H-2B seasonal employees who [were] dependent upon Express Forestry for lucrative planting work in the United States annually").

### C. The Relief Sought by Plaintiffs

Even though Aldi misled its former store managers in seeking the releases, the Court is not currently in a position to declare unenforceable any separation agreements entered into by former store managers after commencement of this case but before conditional certification. Plaintiffs have failed to provide a "clear record" of threatened or actual abuses warranting restrictions on or penalties for allegedly improper communications. Gulf Oil, 452 U.S. at 101. Plaintiffs ask the Court to forbid Aldi from using the releases that have already been executed. Suppl. Mem. at 14. Again, Aldi has agreed to allow the seventeen former store managers who signed separation agreements after conditional certification to opt in to the collective. Resp. at 1. The question is therefore whether the Court is now in a position to void the releases obtained from former store managers before conditional certification but after initiation of this lawsuit. The answer is no.

In light of "the onerous nature of setting aside settlements previously obtained," it is especially important for Plaintiffs "to establish a 'clear record'" showing their entitlement to this drastic remedy. Friedman, 730 F. Supp. 2d at 768 (quoting Gulf Oil, 452 U.S. at 101). In Ralph

Oldsmobile, the court held that while the defendant's attempts to obtain releases from potential class plaintiffs were abusive, it would be inappropriate "to void the releases that ha[d] already been executed." 2001 WL 1035132, at *7. The court stressed that none of the potential plaintiffs who had signed releases had asked the court to void them. Id. And there was no evidence "indicating . . . what most of the [potential class plaintiffs] who signed the releases did or did not know about this action." Id. Finally, it was unclear to the court that a potential class plaintiff who learned of the putative class action would not still "wish to ratify the release." Id. Other courts have echoed this reluctance to void already executed releases "without first knowing whether those who executed the releases *want* the releases to be voided." Tolmasoff v. General Motors, LLC, No. 16-CV-1174, 2016 WL 3548219, at *15 (E.D. Mich. June 30, 2016) (collecting cases).

Here, Plaintiffs have not pointed to a single former store manager who signed the release and now wants the Court to void it. Plaintiffs rely heavily on Ryan Jon Truman's testimony, but Truman never signed the agreement, having joined the lawsuit on April 1, 2017. Truman Consent-to-Sue Form. The Second Melamed Affidavit states that potential plaintiffs have called Plaintiffs' counsel to express confusion about their rights in light of the separation agreements. Second Melamed Aff. ¶ 14. Some of these former employees worry that "if they even inquire about their rights in this action, they will be required to return their severance packages." Id. ¶ 16. This evidence is deficient. For one thing, it is unclear whether these former employees signed the separation agreements before or after conditional certification. If they signed after conditional certification, their confusion will soon be put to rest, because Aldi has agreed to inform them that they may opt in to the collective. Resp. at 1. Further, there is no indication in the Second Melamed Affidavit that any of these employees want the Court to void the releases they signed.

And there is no evidence one way or the other about whether these former employees knew about the lawsuit when they signed. Given that "invalidation of settlements is a drastic step that [should not be] take[n] lightly," Friedman, 730 F. Supp. 2d at 767, the Court cannot, on the basis of this record, prevent Aldi from enforcing the releases it has already obtained from former store managers who signed the separation agreements before conditional certification.

Nonetheless, to allow Plaintiffs to gather the evidence necessary to make the required showing, the Court orders the parties to jointly submit to the Court for approval a proposed corrective notice to be sent to all Aldi store managers who received separation agreements after commencement of this lawsuit but before conditional certification. The corrective notice should provide Plaintiffs' counsel's contact information and inform these former store managers that if they are confused about their right to participate in this litigation (or if they feel that they were misled or coerced by Aldi in connection with the separation agreements), they may get in touch with Plaintiffs' counsel.[4] To the extent the non-disclosure provision of the separation agreement forbids this kind of contact, Melamed Aff. Ex. A, ¶ 12, that provision shall not foreclose store managers who have signed agreements and who receive the corrective notice from contacting Plaintiffs' counsel. Further, Plaintiffs may later wish to ask for an extension of the opt-in period. The Court will entertain such a request at the appropriate time. See Flood v. Carlson Rests. Inc., No. 14-CV-2740, 2015 WL 6736118, at *2 (S.D.N.Y. Nov. 3, 2015) (granting the plaintiffs' request for a forty-five day extension of the opt-in period in an FLSA collective action).

---

[4] Plaintiffs request that a corrective notice be sent "to all putative class members who received the misleading communication." Suppl. Mem. at 14. The proposed corrective notice informs potential collective members that "Aldi's Release has been found to be unenforceable." Melamed Aff. Ex. D, at 1. Since the Court has not yet found the releases to be unenforceable, it would be premature to issue a corrective notice to that effect.

The other relief requested by Plaintiffs cannot be granted at this time. Plaintiffs seek a court order stating that "all contact between putative class members and Defendant, Defendant's legal counsel, or any agent [shall] cease and desist immediately with respect to any element of this action." Suppl. Mem. at 14. Courts must be careful in this context to issue orders "that limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." Gulf Oil, 452 U.S. at 102. Since the evidence Plaintiffs have offered is quite thin, it would be improper to issue a blanket ban of the sort they desire. See Rinky Dink, Inc. v. World Bus. Lenders, LLC, No. 14-CV-268, 2014 WL 5421247, at *3 (W.D. Wash. Oct. 23, 2014) ("The blanket prohibition on communication Defendant seeks is functionally the same as that overturned by Gulf Oil . . . ."). Plaintiffs also ask the Court to force Aldi to give them "the names and addresses of every putative class member who received a Release and/or has been contacted concerning this action." Suppl. Mem. at 14. Such a remedy is unnecessary given that the corrective notice allowed by the Court will enable any former store managers who received separation agreements before conditional certification but after commencement of this case to contact Plaintiffs' counsel if they are confused about their right to participate in this case or believe that Aldi has misled or coerced them in connection with the separation agreements. Thus, these requests for relief are denied with leave to renew.[5]

_____

[5] Plaintiffs argue that Aldi violated the court-approved restrictions on communication by tendering the separation agreements. Mem. at 3. The restriction that was allegedly violated reads as follows: "Defendant's Counsel will not affirmatively contact or communicate with any potential members of the collective, unless the contact or communication occurs within the normal course of Defendant's business." Stipulations at 1. There are two problems with Plaintiffs' argument. First, Plaintiffs have not shown that Aldi's *counsel* in this case has had anything to do with the separation agreements. Instead, it appears that Aldi employees are responsible for offering departing employees the separation agreements, Persohn Decl. ¶¶ 7–8, and there is no evidence that Aldi's lawyers in this action drafted or prepared the separation

### D. Plaintiffs' and Aldi's Letter Briefs

As noted above, Aldi's counsel represented to the Court that, for the remainder of the opt-in period, it would carve out this litigation from any separation agreements it offered to departing store managers. Resp. at 11. Aldi's counsel also represented that the seventeen store managers "who signed a separation agreement that did not expressly carve out this pending litigation *after* Magistrate Judge Baxter conditionally certified a collective in this lawsuit . . . [will] be notified that they may join this lawsuit as an opt-in party plaintiff if they so desire." Resp. at 1. Plaintiffs now accuse Aldi of, among other things, telling a departing store manager that if he did not join any lawsuits for four weeks, he might be able to get a severance package, but that if he "continued to refuse to sign the severance agreement, Aldi would contest his unemployment." Pls.' Letter Br. at 2. Aldi provides a strikingly different version of events in which no separation agreement was ever offered to the departing employee. Aldi Letter Br. at 1. Aldi also claims that it is not offering separation agreements to store managers pending this Court's decision on Plaintiffs' Motion. Id.

It seems to follow from the contradictory accounts offered by Cruz, Fangras, and Collins that one or more of these persons is not telling the truth. That is troubling. Also troubling is the possibility that either Plaintiffs' counsel or Aldi's counsel played some part in procuring false testimony from one or more of these individuals. In any event, to ensure that Aldi is living up to the promise it made to this Court that it would send a corrective notice to former store managers

---

agreements. Second, Aldi has provided evidence that offering separation agreements has been standard practice at the company for some time, and the restriction at issue contains an exception for "contact or communication occurs within the normal course of Defendant's business." Stipulations at 1.

who signed separation agreements after conditional certification, the Court orders the parties to jointly submit to the Court for approval a proposed corrective notice to be sent to these store managers. The corrective notice should provide Plaintiffs' counsel's contact information and inform the former store managers that they may join this action notwithstanding any provisions to the contrary in the separation agreements. The Court also reminds Aldi that it is obligated to comply with the other promise it made to the Court, namely that it would carve out this litigation from any separation agreements it offered to departing store managers for the remainder of the opt-in period. The Court reiterates its willingness to entertain a motion for extension of the opt-in period if that Plaintiffs deem that necessary.

Because the Court is not in a position to resolve the factual disputes presented by the competing letter briefs, the Court refers these disputes to Judge Baxter for resolution.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 54) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that the parties shall, within **fourteen (14) days**, jointly submit to the Court for approval a proposed corrective notice to be sent to all Aldi store managers who received separation agreements after commencement of this lawsuit but before conditional certification. The corrective notice should provide Plaintiffs' counsel's contact information and inform these former store managers that if they are confused about their right to participate in this litigation (or if they feel that they were misled or coerced by Aldi in connection with the separation agreements), they may contact Plaintiffs' counsel; and it is further

**ORDERED**, that the other requests for relief in Plaintiffs' Motion (Dkt. No. 54) are **DENIED with leave to renew**; and it is further

**ORDERED**, that the parties shall, within **fourteen (14) days**, jointly submit to the Court for approval a proposed corrective notice to be sent to former Aldi store managers who signed separation agreements after conditional certification. The corrective notice should provide Plaintiffs' counsel's contact information and inform the former store managers that they may join this action notwithstanding any provisions to the contrary in the separation agreements; and it is further

**ORDERED**, that, for the remainder of the opt-in period, Aldi shall expressly carve out this litigation from any separation agreements it offers to departing store managers; and it is further

**ORDERED**, that the factual disputes presented by Plaintiffs' and Aldi's letter briefs (Dkt. Nos. 66, 68) are referred to Judge Baxter for resolution; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      May 11, 2017
            Albany, New York

Lawrence E. Kahn
U.S. District Judge