**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | | |
|---|---|---|
| ANTHONY GRIFFIN, MARK MCINDOO, | ) | Civil Action No.:5:16-cv-354 |
| and SUSAN DETOMASO, on behalf of | ) | (LEK/ATB) |
| themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALDI, INC., DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT,**
**CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF**
**CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' NOTICE OF SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THE SETTLEMENT ........................................................................................... 2

      A.     Settlement Terms ................................................................................... 3

      B.     Allocation To the FLSA Collective and New York Class ..................... 3

      C.     Releases .................................................................................................. 5

      D.     Attorneys' Fees and Service Awards ..................................................... 5

III.    CLASS ACTION SETTLEMENT PROCEDURE .............................................. 6

IV.    THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO CONDITIONALLY
        CERTIFY THE RULE 23 SETTLEMENT CLASS ........................................... 7

      A.     Numerosity ............................................................................................ 8

      B.     Commonality and Predominance ........................................................... 8

      C.     Typicality ............................................................................................. 10

      D.     Adequacy ............................................................................................. 10

      E.     Superiority ........................................................................................... 13

V.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............... 14

      A.     The Settlement is Procedurally Fair .................................................... 16

      B.     The Settlement Is Substantively Fair, Reasonable, and Adequate ....... 16

      C.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell*
          Factor 1) ............................................................................................... 17

      D.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ....... 18

      E.     Discovery Has Advanced Far Enough for the Parties to Evaluate  the Strengths
          and Weaknesses of the Case (*Grinnell* Factor 3) ................................. 18

      F.     Plaintiffs Would Face Real Risks if the Case Proceeded
          (*Grinnell* Factors 4 & 5) ..................................................................... 19

      G.     Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6) ....... 20

i

H.      Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ................................................................................................ 21

I.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9) ........... 21

VI.     THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES SHOULD BE APPROVED ................................................................................................ 22

VII.    THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING ......... 23

VIII.   CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................................16, 20

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. 2006)..........................................................................14

*Caridad v. Metro-North Commuter R.R.*,
    191 F.3d 283 (2d Cir. 1999)...................................................................................9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Clark v. Ecolab Inc.*,
    07-cv-8623, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009)...............13

*Comcast v. Behrend*,
    569 U.S. 27 (2013)................................................................................................19

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d. Cir. 1995)....................................................................................7

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................9

*deMunecas v. Bold Food*,
    No. 09-cv-440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y Aug. 23, 2010).............15

*Dorn v. Eddington Sec., Inc.*,
    No. 08-cv-0271, 2011 U.S. Dist. LEXIS 11931 (S.D.N.Y. Jan 20, 2011)..............18

*Eldred v. Comforce Corp.*,
    No. 3:08-cv-1171, 2010 U.S. Dist. LEXIS 18260 (N.D.N.Y. Mar. 2, 2010) .........7, 8, 10

*Elliot v. Leatherstocking Corp.*,
    No. 3:10-cv-0934, 2012 U.S. Dist. LEXIS 171443 (N.D.N.Y Dec. 4, 2012) ................ *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05-cv-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)...........14

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).................................................................. *passim*

*Handschu v. Special Services Div.*,
    787 F.2d 828 (2d Cir. 1986)..................................................................................22

*Hernandez v. Fresh Diet, Inc.*,
    No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sep. 29, 2014)..........................19

*Hernandez v. Merrill Lynch & Co.*,
    No. 11-cv-8472, 2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012)..........................14

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)..........................................................................................18

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014) ..............................................................................................8

*Jin v. Shanghai Original, Inc.*,
    No. 16-cv-5633, 2018 U.S. Dist. LEXIS 55829 (E.D.N.Y. Apr. 2, 2018) ..............................18

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)....................................................................................................21

*Kelen v. World Fin. Network Nat'l Bank*,
    No. 12-cv-5024, 2014 U.S. Dist. LEXIS 112079 (S.D.N.Y. July 28, 2014)............................9

*Lizondro-Garcia v. Kefi LLC*,
    300 F.R.D. 169 (S.D.N.Y. 2014) ..............................................................................................7

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
    No. 5:15-cv-441, 2016 U.S. Dist. LEXIS 79043 (N.D.N.Y. June 17, 2016) ................. *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995).....................................................................................................13

*McEarchen v. Urban Outfitters, Inc.*,
    No. 13-cv-3569, 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017) ...........................18

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ...............................................................................................23

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)....................................................................................................8

*In re Nasdaq Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................................13, 14

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)....................................................................................................20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................................................21

iv

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................... 18

*Palacio v. E\*TRADE Fin. Corp.*,
  No. 10-cv-4030, 2012 U.S. Dist. LEXIS 41886 (S.D.N.Y. Mar. 12, 2012) ........................... 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................... 14

*Reyes v. Altamarea Grp., LLC*,
  No. 10-cv-6451, 2011 U.S. Dist. LEXIS 115982 (S.D.N.Y. June 3, 2011) ........................... 15

*Ruiz v. Citibank, N.A.,*.
  93 F. Supp. 3d 279 (S.D.N.Y. 2015) ................................................................ 18

*Scott v. Chipotle Mexican Grill, Inc.*,
  No. 12-cv-8333, 2017 U.S. Dist. LEXIS 62902 (S.D.N.Y. Mar. 29, 2017) ........................... 18

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ........................................................................... 9

*In re Traffic Exec. Ass'n E. R.Rs.*,
  627 F.2d 631 (2d Cir. 1980) ......................................................................... 14

*Vargas v. Capital One Fin. Advisors*,
  559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 (2d Cir. 2014) .................................... 22

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03-cv-8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 25, 2007) ........................... 18

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................... 13

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................... 13, 17

## Statutes

Federal Rule of Civil Procedure 23 ...................................................... *passim*

Fair Labor Standards Act ................................................................... *passim*

New York Labor Law ........................................................................ 19

## Other Authorities

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
  (4th ed. 2002) ................................................................... 5, 14, 15

## I.   INTRODUCTION

Plaintiffs are current and former Store Managers Defendant Aldi Inc. who have alleged that were not paid appropriate overtime under federal and New York law based on their misclassification as exempt from the overtime requirements of these laws.  Plaintiffs brought their case as a class and collective action seeking to represent their fellow employees.

On February 22, 2017, this Court authorized notice under the Fair Labor Standards Act to current and former Store Managers who worked at Aldi after March 29, 2013.  As a result of the notice, 388 employees from 29 different states, including the State of New York, joined the case (the "FLSA Collective").

Following extensive negotiations and two mediations, the parties reached a settlement and are pleased to present it to this Court for approval.  The settlement is for up to $9.8 million, which includes awards to authorized claimants (as defined in the Settlement Agreement), attorneys' fees and litigation expenses, service awards, settlement administration costs and taxes.

In addition to the FLSA Collective (who have already opted in to the case) the proposed settlement includes approximately 200 current and former Aldi Store Managers who worked in New York State between March 29, 2010 (six years before the filing of this action) and October 17, 2017 (the "New York Class").

Approval of a class action requires two steps: first, the parties request preliminary approval of the proposed settlement and request authorization to send notice of the proposed settlement to the class.  The second step is requesting a grant of final approval, after the class has received notice and the Court has set a date for a final fairness hearing.

With this motion, Plaintiffs request the first step, i.e. preliminary approval of the proposed settlement and leave to send the proposed notices of the settlement to the FLSA Collective (the "FLSA

Notice"), and to those members of the New York Class who are not already opt-in party plaintiffs by virtue of having previously joined the FLSA Collective.  Excluding the FLSA Collective members who worked in New York, there are approximately 160 New York Store Managers who would receive the New York Class notice.  For most of these workers, this will be the *second* notice concerning the case they receive since most had already received the collective certification notice in 2016.  As described more fully below, the proposed Rule 23 Notice which will go the members of the New York Class, comports with due process and Rule 23 precedent and will advise the members of the New York Class of their rights under the proposed settlement and provide simple instructions on how to submit a claim.  The Rule 23 notice also advises class members that they must submit a claim in order to get paid and risk losing their claims if they do not do so.

Plaintiffs also request that the Court preliminary certify the proposed New York Class, appoint Plaintiffs' counsel as Class Counsel, and set a date for a fairness hearing (which will be incorporated into the Notices).

## II.    THE SETTLEMENT

Plaintiffs brought this action on March 29, 2016 following extensive pre-suit investigation. Plaintiffs were salaried workers who bore the title "Store Manager" whom Aldi classified as exempt from the FLSA and New York overtime pay requirements.  They allege that most of the work they performed was not managerial, such as loading inventory, stocking shelves, and cleaning the stores. They also allege that they were required to work a 50-hour week at a minimum but most often they worked many more hours.  They claim that the true managerial authority rested with Aldi's District Managers to whom the Store Managers reported, and that Aldi misclassified the Store Managers as exempt workers when they should have been non-exempt and receiving overtime pay.

Following extensive discovery including three depositions of the named plaintiffs, review of thousands of documents and extensive payroll data, motion practice on Plaintiffs' unjust enrichment claim, collective certification, and an emergency application by Plaintiffs to address Aldi's entry of its standard separation agreement with certain class members whose employment ended prior to the conditional certification order, the parties began to discuss settlement in earnest. In the meantime, Plaintiffs retained an expert CPA to analyze the data provided by Aldi. This process yielded numerous damages models based on the number of hours assumed worked by employees, pay rates, and number of weeks worked. Following a mediation in October 2017 under the auspices of Martin Scheinman, Esq. and then a settlement conference in January 2018 with Magistrate Judge Baxter, the parties were successful in reaching the basic terms of a settlement, first for the conditionally-certified FLSA Collective and then for the New York Class.

### A.    Settlement Terms

The proposed settlement is for a maximum of $9.8 million, which includes all costs and expenses to pay both FLSA Collective and New York Class members, their lawyers, employment taxes, the named Plaintiffs' service awards, and settlement administration costs. *See* Settlement Agreement §3.1, attached as Exhibit A to the accompanying Declaration of Adam Gonnelli in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement ("Gonnelli Declaration"). After deduction of all fees, costs, taxes, expenses, and service awards, the amount each Store Manager will receive is based on the number of weeks each worked as a salaried, exempt-classified Store Manager during the relevant FLSA Collective or New York Class period (as a pro rata share of the total weeks worked in the relevant FLSA Collective and New York Class periods) and on the number of claims submitted following the proposed notices to the New York Class.

### B.    Allocation To the FLSA Collective and New York Class

The 388 members of the conditionally-certified FLSA Collective, plus those members of the

New York Class who are not part of the FLSA Collective who submit claims in response to the proposed notice to the New York Class are eligible to receive settlement payments.

Of the maximum of $9.8 million settlement, a maximum of $8,625,000 will provisionally be allocated to the 388 FLSA Collective members. (Settlement Agreement §3.5 (A)).  This number will be divided by the number of weeks worked by the FLSA Collective (including weeks worked in the New York Class period by the FLSA Collective Members who are also part of the New York Class) to determine a Weekly Allocation figure ("Weekly Allocation") (Settlement Agreement §3.5 (A)). The remaining $1,175,000 will be allocated to the approximately 160 New York Class members who are not part of the FLSA Collective and submit claim forms based on the proposed New York Class notice. (Settlement Agreement §3.5 (B)).  The same Weekly Allocation number will be awarded to the New York Class members who submit claims based on the number of weeks they worked. (Settlement Agreement §3.5 (A)).

If the $1,175,000 is not exhausted by the claims of the New York Class members who are not FLSA Collective members, Aldi will receive the amount that remains. (Settlement Agreement §3.5 (B)).  If such claims exceed $1,175,000, all New York Class Members and the FLSA Collective members will have their awards reduced proportionately until the total amount of the Settlement is reduced to $9.8 million.   (Settlement Agreement §3.5 (A)).

Aldi reserves the right to withdraw from the settlement if 5% or more of the  "Settlement Class Members" (defined in the Settlement Agreement to include the New York Class and FLSA Collective) opt out of the settlement. (Settlement Agreement §2.12 (A)(2)).  Plaintiffs reserve the right to withdraw from the settlement if the aggregate value of the claims of the 163 New York Class Members exceed $3,358,992.70.  (Settlement Agreement §2.12 (A)(3)).

If the proposed settlement receives final approval, any awards of attorneys' fees, expenses, service awards, taxes and settlement administration costs will be paid from the settlement amount before the awards to the authorized claimants are determined. (Settlement Agreement §3.5 (A)).

### C.   Releases

The members of the FLSA Collective and the members of the New York Class who submit claims for settlement awards will release all FLSA and, if applicable, New York law wage and hour claims against Aldi. (Settlement Agreement §4.2).  In addition, New York Class Members ***who do not timely opt-out*** of the settlement (or submit claims) will release Aldi from claims that were, or could have been, asserted under state law by or on behalf a New York Class Member for the period of March 29, 2010, through the date of final approval of the settlement. (Settlement Agreement § 4.2(A)).  The Released FLSA Claims include "any FLSA claims for unpaid minimum wages, overtime wages, liquidated damages, and attorneys' fees and costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of final approval of the settlement." (Settlement Agreement § 4.2(B)).  The Released New York Class Claims include all claims specifically related to employment of  New York Class members by Aldi under state law for alleged unpaid regular or overtime wages, all related wage and hour and wage payment claims, all 'derivative benefit claims' (*i.e.,* claims for benefits, both ERISA and non-ERISA benefits, resulting from alleged failure to pay overtime or other wages), and all interest on such claims, liquidated damages, punitive damages, and/or other damages,  attorneys' fees, expenses, and costs related to such claims. (Settlement Agreement §1.25).

### D.   Attorneys' Fees and Service Awards

If the settlement ultimately receives final approval from the Court, Class Counsel will petition the Court for an award of attorneys' fees of up to one-third of the settlement, or $3,266,666.67, which includes reimbursement of their actual litigation expenses and costs.  (Settlement Agreement §3.3).

Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided that the application for attorneys' fees would not cause Aldi to pay more than $9,800,000.00 in total.   (Settlement Agreement §3.3 (A)).

Further, Plaintiffs will apply to the Court to receive up to $30,000.00 collectively in Service Awards to the Plaintiffs in recognition of the services they rendered on behalf of the class. Defendant has agreed not to oppose this application.  (Settlement Agreement §3.4).

## III.    CLASS ACTION SETTLEMENT PROCEDURE

The class action settlement procedure in this action includes the following three steps:

1.     Preliminary approval of the proposed settlement;

2.     Dissemination of mailed notice of settlement to FLSA Collective members and notice of settlement and claim forms to all New York Class Members who are not already FLSA Collective Members; and

3.     A final settlement approval hearing at which New York Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, which includes approval of Plaintiffs' Proposed Notices – and authorize Plaintiffs to take the second step of mailing the Notices.

Plaintiffs respectfully submit the following proposed schedule, which was formulated in consultation with Defendant, for final resolution of this matter for the Court's consideration and approval:

1.     If the Court grants preliminary approval, within fifteen business days of the

preliminary approval order Defendant will provide the list of New York Class members to Class Counsel and the Settlement Claims Administrator. (Settlement Agreement §2.8 (A)).  The Court's date for the fairness hearing will be incorporated into the Notices.

2.   Within fifteen business days of the receipt of the class list, the Settlement Claims Administrator will mail the approved Notice and Claim Form to the New York Class.

3.   Within fifteen business days of the receipt of the class list, a separate notice will be sent to FLSA Collective Members advising them of the proposed settlement terms and requesting completed W-9 Forms. (Settlement Agreement §2.8 (C)).

4.   New York Class Members will have forty-five days after the mailing of the Notice to file a claim or to opt out of the settlement, or to object to the settlement (the "Bar Date").  See Settlement Agreement (Settlement Agreement §§2.7 (B), 2.8 (A)).

5.   FLSA Collective Members will have forty-five days after the mailing of the notice to FLSA Collective Members to opt out of the settlement by withdrawing their previously-filed Consent to Join form (the "Bar Date").

6.   No sooner than 30 days after the Bar Date, Plaintiffs will file a motion for final approval of the proposed settlement and Class Counsel's fee application. (Settlement Agreement §2.11 (A)).

A proposed order is submitted with this motion for the Court's consideration.

## IV.   THE COURT SHOULD GRANT PLAINTIFFS' REQUEST TO CONDITIONALLY CERTIFY THE RULE 23 SETTLEMENT CLASS

Plaintiffs also request that the Court conditionally certify the New York Class for settlement purposes. The New York Class is comprised of Store Managers employed by Aldi in New York

between March 29, 2010, and October 17, 2017.  As shown below, all requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied. Defendant, for settlement purposes only, does not oppose Plaintiffs' request for conditional Rule 23 class certification.

### A.    Numerosity

The New York Class is comprised of approximately 200 members. Courts in the Second Circuit have held that "numerosity is presumed at a level of 40 members." *Eldred v. Comforce Corp.*, No. 3:08-CV-1171, 2010 U.S. Dist. LEXIS 18260 at *43 (N.D.N.Y. Mar. 2, 2010) (Kahn, J.) (*citing Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d. Cir. 1995)).  Accordingly, numerosity is satisfied.

### B.    Commonality and Predominance

Common questions of law and fact predominate over questions affecting only individual members.  Because the requirement of commonality under Rule 23(a)(2) may be satisfied by a single common issue, it is easily met. *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) ("Even a single common legal or factual question will suffice.").  Here, Plaintiffs have alleged that they and their fellow Store Managers were uniformly classified as exempt employees and should have been paid for hours worked in excess of forty per week under federal and New York State law. Accordingly, common questions in this case include:

a)    Whether Defendant paid members of the New York Class all earned wages;

b)    Whether the New York Class Members were required to perform work in excess of forty hours in a consecutive seven-day week.

c)    Whether the New York Class Members were paid at time and one-half when they performed work in excess of forty hours in a consecutive seven-day week.

d)    Whether the Defendant misclassified Plaintiffs and members of the New York Class as exempt from payment of overtime compensation.

Courts find commonality where employees are subjected to a uniform policy. *See Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441, 2016 U.S. Dist. LEXIS 79043, at *5 (N.D.N.Y. June 17, 2016) (finding commonality in wage and hour settlement) (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (finding commonality where workers were allegedly not paid appropriate overtime)); *Eldred* at *44 (finding commonality where "Plaintiffs alleged that class members share identical relationships with Defendants."); *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934, 2012 U.S. Dist. LEXIS 171443, *5 (N.D.N.Y Dec. 4, 2012) (finding commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

With respect to predominance under Rule 23(b)(3), "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Here, common questions predominate because the core issues in this case focus on Aldi's policies with respect to its Store Managers. Plaintiffs contend that Store Managers performed similar tasks and had similar responsibilities, and were improperly classified as exempt. In addition, Store Managers were not paid overtime compensation for work performed over 40 hours. Each of these core issues involves a common nucleus of operative facts based on Defendant's common management policies and procedures which applied to all New York Class Members. *See, e.g., Marroquin Alas* at *7-8 (finding predominance in wage and hour case where questions concerning overtime pay were "universal" to workers) *Eldred* at *54-55 (certifying litigation class and finding "The predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job."). Further, damages in this

case will be calculated by applying the same mechanical formula based on the employees' work weeks.  Thus, the predominance requirement is satisfied.

### C. <u>Typicality</u>

The Named Plaintiffs' claims are typical of the claims of the members of the New York Class.  "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"  *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (*citing Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. 1999); *see also Kelen v. World Fin. Network Nat'l Bank*, No. 12-CV-5024, 2014 U.S. Dist. LEXIS 112079 at * 11 (S.D.N.Y. July 28, 2014).  Plaintiffs are former Store Managers who were subjected to Aldi's uniform policies and were harmed by Aldi in the same manner as the rest of the Class in that they were allegedly misclassified as exempt employees and not paid overtime.  *See Marroquin Alas* at *5-6 (typicality satisfied since plaintiffs' claims based on same factual and legal theories as class members).  Since Plaintiffs' claims are identical to those of the members of the Class they seek to represent, typicality is satisfied.

### D. <u>Adequacy</u>

"Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015) (citation omitted).  "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'" *Id.*

In this case, the Named Plaintiffs have no interests that conflict with their fellow Store Managers.  *See Elliot* at *6 (adequacy satisfied where there was "no evidence that plaintiffs' and the class members' interests are at odds.").  In addition, Plaintiffs have worked extensively on behalf of

the class to achieve this settlement.  All three searched for documents, responded to discovery, and sat for depositions.  They have also spent many hours with their attorneys reviewing filings, explaining their experiences at Aldi and helping to conduct the litigation.

Next, Plaintiffs' counsel are "qualified, experienced, and generally able to conduct the litigation."

Frank S. Gattuso has served as lead or co-lead class counsel in multiple class actions in New York.  Mr. Gattuso settled *LaFrance v. Ruby Tuesday, Inc.* (5:14-cv-01158) (N.D.N.Y. January 7, 2016)(Suddaby, J.) and *Eldred v. Comforce Corp.* (3:08-cv-1171)(NDNY October 6, 2011))(Kahn, J.).  He is presently litigating *Roach v. T.L. Cannon, et. al.* (3:10-cv-00591)(McAvoy, J.) in the Northern District of New York and *Hicks v. T.L. Cannon, et al.* (6:13-cv-06455)(Wolford, J.) in the Western District of New York.  These are all employment/labor law class actions.

The Sultzer Law Group focuses on complex civil litigation nationwide.  The firm is headquartered in Poughkeepsie, New York, with additional offices in New York City and New Jersey. Since its founding in 2013, the firm has acted as lead counsel in a number of high-profile class action cases.  The firm's class action practice group is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for Class Actions and has also been featured in numerous publications, including Inside Counsel Magazine, Risk Management Magazine, and CNBC News.  Mr. Sultzer, the firm's founding partner, has 20 years of significant experience related to both prosecuting and defending class actions. Prior to opening The Sultzer Law Group, he served as the co-chairman of the Class Action Practice Group of one of the largest law firms in the country, and he has written and lectured extensively on class action practice.  Partner Adam Gonnelli has served as lead or co-lead counsel in numerous high-profile class action cases throughout the country resulting in multi-million dollar recoveries to consumers, employees, and investors.

11

Counsel from Virginia & Ambinder, LLP are experienced litigators who have successfully represented classes in numerous class actions in federal and state court and have considerable experience in labor law cases including *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 129-130 (S.D.N.Y. 2011) (Scheindlin, J.); *Lujan v. Cabana Management, Inc.*, Index No. 10-cv-755 (E.D.N.Y. Feb. 1 2011) (Block, J.).

Counsel from Leeds Brown Law, P.C. also have considerable experience litigating employment discrimination and wage and hour lawsuits, many of which have been collective and class actions *Zepeda et al. v. Franari Produce Distributors Inc., et al.*, (EDNY 10-cv-2588) (Bianco, J.); *McBeth, et al. v. Gabrelli Truck Sales Ltd., et al*. (E.D.N.Y. 09cv 4112) (Wexler, J.);. Numerous courts have approved class settlements with Virginia & Ambinder, LLP and Leeds Brown Law, P.C. as class counsel.  Examples include the following: *Martin v. Restaurant Associates Events*, 53700/2011 (Westchester Cty. Sup. Ct. Oct. 16, 2014), *Ruiz v. Scotto's Smithtown Restaurant Corp*., 600317 *Club*, 10-cv-1545 (S.D.N.Y. Aug. 29, 2012), and *Toledo v. DCJ Catering Corp*, 600944/2011 (Nassau Cty. Sup. Ct. Dec. 21, 2012).

Counsel from Faruqi & Faruqi LLP have extensive experience representing employees and have served as lead and co-lead counsel in numerous class and collective actions across the county.  Some of the firm's more recent notable recoveries include: *Run Them Sweet, LLC v. CPA Global Limited, et al.*, Case No. 1:16-cv-1347 (E.D. Va., Oct. 6, 2017) ($5.6 million settlement for 2,917 class members); *Strong, et al. v. Safe Auto Insurance Group, Inc., et al.*, Case No. 2:16-cv-765 (S.D. Ohio, Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages); *Foster, et al. v. L-3 Communications EoTech, Inc., et al.*, Case No. 6:15-cv-03519-BCw (W.D. Mo., July 7, 2017) ($51 million class action settlement); *March, et al. v. First Choice Medical, PLLC,* Case No. 15-cv-3669 (E.D.N.Y., Mar. 6, 2017) ($110,000 recovery for hourly employees

claiming unpaid overtime); and *Guttentag, et al. v. Ruby Tuesday*, Case No. 12-cv-03041 (S.D.N.Y., Oct. 2, 2014) ($3 million recovery for employees in FLSA wage suit).

These lawyers have successfully prosecuted this litigation, and should be appointed Class Counsel.

**E.** **Superiority**

Federal Rule of Civil Procedure 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of finding superiority.

First, the number of Store Managers who joined the litigation demonstrates that class members do not have a strong interest in conducting separate actions.

Second, there are no separate actions that have been brought by New York Class members. Accordingly, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action. The alternative would be the potential filing of hundreds of individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the parties' time and resources. *See Elliot* at *6 (finding settlement in wage and hour case would conserve judicial resources and is more efficient for class members). Although the case is proposed to be settled, certification of the class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards of conduct on Aldi.

Third, the Plaintiffs, many of the New York Class members and many Aldi stores are located in this District, so venue here is appropriate.

13

Fourth, since the case is being settled, management is not a concern going forward.

Class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all parties. Accordingly, Plaintiffs respectfully request that the Court conditionally certify the New York Class pursuant to Rule 23 to effectuate this settlement.

## V.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas* at *11 ("Generally, class actions are *complex* and consume a tremendous amount of time and resources."); *Elliot* at *9 (stating in wage and hour case "Class actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab Inc.*, 07-cv-8623, 2009 U.S. Dist. LEXIS 108736 at *14 (S.D.N.Y. Nov. 17, 2009).

Under Rule 23, a court's review of a proposed class settlement is a "two-step process." *In re Nasdaq Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Initially, the court decides whether the settlement should be preliminarily approved and, if so, "notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.* At the preliminary approval stage – the present stage in this

matter – the court's review is relatively lenient. *See, e.g., Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citation omitted) (noting that the court's first-stage analysis consists of a review for "obvious deficiencies").

Further, "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05-cv-10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Merrill Lynch & Co.*, 11-cv-8472, 2012 U.S. Dist. LEXIS 165771, at *16 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, 10-cv-4030, 2012 U.S. Dist. LEXIS 41886, at *10 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, 10-cv-6451, 2011 U.S. Dist. LEXIS 115982 , at * 9 (S.D.N.Y. June 3, 2011) (same);

*deMunecas v. Bold Food*, 09-cv-440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010) (same).

### A.    The Settlement is Procedurally Fair

"To determine whether a settlement is procedurally fair, courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot* at *7 (citations omitted).  Here, the litigation has gone on for two years and settlement was reached only after extensive discovery.  In addition, settlement discussions took over six months and settlement was ultimately only reached after two mediations and protracted negotiation between the parties.  Under such circumstances, a presumption in favor of procedural fairness arises.  *See Elliot* at *8 (finding procedural fairness in mediated settlement reached after two years of litigation and extensive discovery).  In addition, as shown below, the settlement terms themselves support a finding of procedural fairness.

### B.    The Settlement Is Substantively Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  *See, e.g., Marroquin Alas* at *11 (reviewing *Grinnell* factors and approving wage and hour settlement).  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand

16

a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The *Grinnell* factors weigh in favor of approval of the settlement, and certainly in favor of preliminary approval.

C.   **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, the Parties avoid significant expense and delay. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin Alas* at *12 (approving $282,000 settlement and stating "Here, significant discovery and statistical experts would be required followed by a fact-intensive trial. Preparing and presenting evidence to support Plaintiffs' position would consume tremendous time and resources"); *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved").

This case is no exception, with a $9.8 million maximum fund and approximately 200 New York Class Members and 388 FLSA Collective Members with claims under both federal and state law.  Further litigation here would cause additional expense and delay. Additional pre-class certification and potential post-certification discovery would need to be completed.  Plaintiffs would file a motion for class certification under Rule 23, and Aldi would oppose the Rule 23 motion and also file a motion to decertify the conditionally-certified FLSA Class. In addition, the Parties would likely file competing motions for summary judgment.  If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume significant time and resources for the Parties and the Court. Any judgment would likely be appealed,

17

further extending the litigation. The settlement, on the other hand, makes monetary relief available to Settlement Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval.

### D.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement has not yet been issued to the class.  The Court should more fully analyze this factor after notice is mailed and Rule 23 Class Members are given the opportunity to opt out or object. However, it should be noted that at this early stage in the process, the Plaintiffs strongly support the settlement and 388 Store Managers have opted in.

### E.  Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Case (*Grinnell* Factor 3)

The Parties have completed extensive enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The Parties' discovery here meets this standard. Plaintiffs' Counsel engaged a forensic CPA, conducted an investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. They also researched Defendant's likely affirmative defenses. After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, interviewing Plaintiffs and certain Collective and Class Members, participating in discovery and depositions, and collective certification motion practice. The Parties have engaged in extensive and wide-ranging discovery, including on company policies and procedures as well Store Manager duties and tasks. Finally, the parties engaged in pre-mediation discovery as part of a two phase in-person settlement process, first with Martin Scheinman, Esq. and January 2018 with Magistrate Judge Baxter.  These factors favor preliminary approval. *See Marroquin Alas* at *12-13 (sampling of pay records, employee handbooks, and

18

company policies sufficient to evaluate settlement); *Dorn v. Eddington Sec., Inc.*, 08cv0-10271, 2011 U.S. Dist. LEXIS 11931 at *9 (S.D.N.Y. Jan 20, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

**F.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)**

"Litigation inherently involves risks."   *In re Painewebber Ltd. P'ships Litig.,*   171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* 03-cv- 8698, 2007 U.S. Dist. LEXIS 46223, at *19 (S.D.N.Y. June 25, 2007).  Although Plaintiffs believe their case is strong, it is subject to considerable risk, particularly in light of some decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives.  *See, e.g., Jin v. Shanghai Original, Inc.,* 16-cv-5633, 2018 U.S. Dist. LEXIS 55829 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc.*, 13-cv-3569, 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action due to need for individual exempt status determinations); *Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333, 2017 U.S. Dist. LEXIS 62902, at *207 (S.D.N.Y. Mar. 29, 2017) (decertifying FLSA class of management trainees and denying class certification); *Ruiz v. Citibank, N.A.,*. 93 F. Supp. 3d 279, 299 (S.D.N.Y. 2015) (decertifying FLSA class of personal bankers and denying class certification); *Hernandez v. Fresh Diet, Inc.,* No. 12-cv-4339, 2014 U.S. Dist. LEXIS 139069 (S.D.N.Y. Sep. 29, 2014) (decertifying FLSA class of allegedly misclassified workers and denying class certification).

Even if successful on certification motions, summary judgment motion practice, let alone a trial on the merits, would involve significant risks for Plaintiffs. To the extent a class is certified

under Rule 23, the class will be comprised of former and presently employed Store Managers, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Moreover, Plaintiffs would have to overcome Aldi's defenses, including that Class Members were properly classified as exempt, that Class Members did not work as many hours each week as they allege, and that damages could not be determined using a common methodology under *Comcast v. Behrend*, 569 U.S. 27 (2013). While Plaintiffs' Counsel believe that they could ultimately establish both liability and damages, Aldi is equally confident in its defenses. Proceeding to trial would require significant additional factual development and perhaps expert testimony. *See, e.g. Marroquin Alas* at *13 (noting that "establishing liability would be a time-consuming and costly process" and approving settlement). Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### G. Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)

Should the case proceed, Defendant would oppose Plaintiffs' application for Rule 23 class certification of the New York Labor Law claims and would seek decertification of the conditionally-certified FLSA collective. If Defendant's efforts were unsuccessful, they would likely seek appeal of the Court's determination. *See Frank*, 228 F.R.D. at 187 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement."); *see also Elliot* at *11 (risk of maintaining certification weighed in favor of settlement approval where plaintiff would face vigorous opposition). Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

**H.** **Defendant's Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7)**

Aldi's U.S. stores are part of a large corporation and Defendant could withstand a greater judgment.  However, Defendant's ability to withstand a greater judgment "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (*quoting In re Holocaust Litig*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not weigh against granting preliminary approval.

**I.** **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9)**

Defendant has agreed to settle this case for up to $9.8 million. This amount represents substantial value given the attendant risks of litigation, even though recovery might be greater if Plaintiffs prevailed on a motion to certify the New York Class, maintained certification of the FLSA Collective through trial, survived summary judgment, succeeded on all claims at trial, and prevailed on appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (*quoting In re Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added).

Here, the settlement provides much more than "a fraction of the potential recovery." Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable and certainly warrants notice to the New York Class. *See Elliot* at *11 (granting final approval of settlement and finding "meaningful payment to class members and is outweighed by the mere possibility of further relief.").

Thus, the *Grinnell* factors weigh heavily in favor of preliminary approval of the settlement. If a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## VI.   THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES SHOULD BE APPROVED

The proposed New York Class Notice and FLSA Collective Notice, which are attached to the Gonnelli Declaration as Exhibits B and C, comply with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> The best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
>
> (ii)    the definition of the class certified;
>
> (iii)   the class claims, issues, or defenses;
>
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)     that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Court is given broad power over which procedures to use for providing notice so long as

22

the procedures are consistent with the standards of reasonableness that the due process clauses in the U.S. Constitution impose. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Fin. Advisors*, 559 Fed. Appx. 22, 2014 U.S. App. LEXIS 4689 at *26 (2d Cir. 2014). Here, since Aldi has employment records for the New York Class, notice will be sent by first class mail. (Settlement Agreement §2.8).

The contents of the proposed Notices satisfy, and exceed, the requirements of due process and Rule 23 as well. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Notices describe the terms of the settlement, inform the New York Class and FLSA Collective members about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *See Marroquin Alas at* *16-17 (approving notice to workers).

## VII. THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

The proposed Preliminary Approval Order submitted in connection with this motion sets forth a proposed sequence of deadlines associated with the settlement. The Parties respectfully request that the Court enter the proposed Preliminary Approval Order and set a Fairness Hearing no earlier than 135 days from the entry of this order.

## VIII. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court grant preliminary approval to the proposed Settlement, conditionally certify the New York Class, appoint Class

Counsel, authorize the mailing of the proposed FLSA Collective and New York Class notices, and set a fairness hearing.

Dated: April 27, 2018

By: */s/ Adam R. Gonnelli*
Adam R. Gonnelli, Esq.
N.D.N.Y. Bar Roll no.: 515045
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com


**FRANK S. GATTUSO, ESQ.**
9 Landgrove Drive
Fayetteville, New York 13066
Telephone: 315-400-5958
Email: frankgattuso14@gmail.com


**FARUQI & FARUQI, LLP**
Innessa M. Huot, Esq.
N.D.N.Y. Bar Roll no.: 519963
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: ihuot@faruqilaw.com


**VIRGINIA & AMBINDER, LLP**
Lloyd R. Ambinder
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
Email: Lambinder@vandallp.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
Michael A. Tompkins
1 Old Country Road, Suite 347
Carle Place, New York 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs*