**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | |
|---|---|
| ANTHONY GRIFFIN, MARK MCINDOO, and SUZANNE DETOMASO, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ALDI, INC., DOE DEFENDANTS 1-10, )<br><br>Defendants. ) | Civil Action No.: 5:16-cv-354 (LEK/ATB) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND FINAL**
**CERTIFICATION OF RULE 23 NEW YORK CLASS**

## TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND OF THE SETTLEMENT ................................................................... 2

    A. The Collective Certification Notice ................................................................ 2

    B. The Settlement Negotiations ........................................................................... 2

    C. The Preliminary Approval Order And Notice Of The Settlement ...................... 3

    D. The Plan Of Allocation .................................................................................. 4

III. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................................ 4

    A. The Settlement Is Procedurally Fair ................................................................ 5

    B. The Settlement Is Substantively Fair, Reasonable, And Adequate ...................... 6

        1. Litigation Through Trial Would Be Complex, Costly, And Long
            (*Grinnell* Factor 1) ........................................................................ 6

        2. The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2) ........... 7

        3. Discovery Has Advanced Far Enough for the Parties to Evaluate the
            Strengths and Weaknesses of the Case (*Grinnell* Factor 3) ....................... 8

        4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell*
            Factors 4, 5, and 6) ......................................................................... 9

        5. Defendant's Ability to Withstand a Greater Judgment is Not
            Determinative (*Grinnell* Factor 7) ................................................... 12

        6. The Settlement Fund is Substantial, Even in Light of the Best
            Possible Recovery and the Attendant Risks of Litigation
            (*Grinnell* Factors 8 and 9) ............................................................. 12

IV. COURT SHOULD GRANT FINAL CERTIFICATION OF THE NY CLASS .............. 15

    A. Numerosity ................................................................................................. 16

    B. Commonality And Predominance ................................................................... 16

    C. Typicality ................................................................................................... 18

    D. Adequacy ................................................................................................... 18

    E. Superiority .................................................................................................. 21

V.    FLSA SETTLEMENT APPROVAL ................................................................................... 22

VI.   CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).................................................................6

*Banfield v. Entergy Nuclear Operations, Inc.*,
   649 Fed. Appx. 89 (2d. Cir. 2016).................................................................14

*City of Detroit v. Grinnell Corporation*,
   495 F.2d 448 (2d Cir. 1974)................................................................. *passim*

*Clark v. Ecolab Inc.*,
   Case No. 07-Civ.-8623, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)....................5

*Comcast v. Behrand*,
   569 U.S. 27 (2013)................................................................................10, 11

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008)..................................................................18

*Dorn v. Eddington Sec., Inc.*,
   No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan 20, 2011)............................9

*In re Drexel Burnham Lambert Group, Inc.*,
   960 F.2d 285 (2nd Cir. 1992)...................................................................18, 19

*Eldred v. Comforce Corp.*,
   No. 3:08-CV-1171, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010)......................16, 17

*Elliot* v. *Leatherstocking Corp.*,
   Case No. 10-CV-0934, 2012 WL 6024572 (N.D.N.Y. Dec, 4, 2012)............ *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................5

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)................................................................. *passim*

*Hernandez v. Fresh Diet, Inc.*,
   No. 12-cv-4339, 2014 WL 5039431 (S.D.N.Y. Sep. 29, 2014) .............................9

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015)....................................................................7

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969)..................................................................9

*Jin v. Shanghai Original, Inc.*,
   No. 16-cv-5633, 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018) ................................................. 9

*Kelen v. World Fin. Network Nat'l Bank*,
   302 F.R.D. 56 (S.D.N.Y. 2014) ........................................................................................... 18

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. 2014) ......................................................................................... 16

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
   Case No. 15-cv-00441, 2016 WL 3406111 (N.D.N.Y. June 17, 2016) ......................... *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) .................................................................................................. 5

*McEarchen v. Urban Outfitters, Inc.*,
   No. 13-cv-3569, 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) ............................................. 9

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) .............................................................................................. 17

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................................ 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................... 15

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................... 9

*Ruiz v. Citibank, N.A.*,,
   93 F. Supp. 3d 279 (S.D.N.Y. 2015) ...................................................................................... 9

*Scott v. Chipotle Mexican Grill, Inc.*,
   No. 12-CV-8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ......................................... 9

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015) .................................................................................................. 18

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................... 4

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................................................. 8

**Other Authorities**

Federal Rule of Civil Procedure 23(b)(3) ........................................................................21

Joseph M. McLaughlin, 2 McLaughlin on Class Actions (8th ed. 2011)......................................7

## I.   <u>INTRODUCTION</u>

This case concerns current and former Store Managers of Aldi Inc. ("Aldi" or "Defendant") who allege they have been misclassified as exempt employees.  The Store Managers allege they were not paid for all the hours they worked and did not receive appropriate overtime pay under federal and New York State law.

After three years of litigation and extensive motion practice and discovery, the Parties submitted a proposed $9.8 million settlement to the Court for preliminary approval on April 27, 2018.  ECF Nos. 100 – 100-4.  The settlement covers the 393 Store Managers who opted into the FLSA Collective ("FLSA Collective"), and the 45 members of the Rule 23 New York Class ("NY Class") who filed claims in response to the settlement notice.  On June 21, 2018, the Court granted preliminary approval to the proposed settlement (the "Settlement"), conditionally certified the NY Class, and authorized notice.   ECF No. 102.   The Court found that the Settlement met the "range of reasonableness" requirement for preliminary approval.

Nothing that has transpired since the Court granted preliminary approval need alter the Court's conclusions concerning the merits of the Settlement and class certification.   Indeed, the only significant events since preliminary approval have been the mailing of notice to the FLSA Collective and the NY Class and the response to the notice.  The notice that was sent to the FLSA Collective advised the workers of the Settlement and provided an opportunity to change their mind and remove themselves from the FLSA Collective.  None did.

The Rule 23 Notice and Claim Form was sent to 158 New York Store Managers, including those who had received the FLSA notice in February but did not opt in to the case.  Forty-five (45) additional Store Managers, an unusually high percentage, filed claims as members of the NY Class.  These workers joined the 393 workers who opted into the FLSA Collective.   Only nine Store

Managers opted out of the Settlement and none objected.

As a result of the Settlement, the workers stand to receive a significant percentage of their potential damages.  In this motion, Plaintiffs ask that the Court grant final approval to the Settlement and grant final certification to the Rule 23 NY Class of New York Store Managers, defined as Store Managers who worked for Aldi in New York State between March 29, 2010 and October 17, 2017 who did not previously join the FLSA Collective.

## II.    BACKGROUND OF THE SETTLEMENT

### A.    The Collective Certification Notice

The Collective Certification notice authorized by this Court on March 14, 2017, was sent to current and former Store Managers who worked at Aldi after March 29, 2013.  Three Hundred and Eighty-Five (385) Store Managers timely opted in to the action.  These workers were from 29 states, including 43 from New York.  An additional five workers sought to opt in after the deadline, but pursuant to an agreement with Defendant, Plaintiffs' Counsel recommends that these workers be allowed to participate in the Settlement as well.[1]  Including the three named Plaintiffs, there are 393 Store Managers in the FLSA Collective, who worked a total of 32,610 weeks.  *See* Devery Decl. ¶ 5.[2]

### B.    The Settlement Negotiations

The Parties began to discuss settlement in earnest in August of 2017.  Following preliminary discussion and additional informal discovery, the Parties engaged in a formal mediation with Martin Scheinman, Esq. on October 24, 2017.  Gonnelli Decl. ¶ 20.[3]  Although significant progress was made

---

[1] They are Kayla M. Hakr, Benjamin J. Brezovic, Patricia Bulleri, Heather N. Gargano, and Kerry C. Garrett.  *See* ECF 103.

[2] The Declaration of Claims Administrator Brian Devery from the Angeion Group is referred to herein as "Devery Decl.".

[3] The Declarations of Plaintiffs' Counsel Adam Gonnelli, Innessa Melamed Huot, Frank Gattuso, Lloyd Ambinder, and Michael Tompkins, are referred to herein as "Gonnelli Decl.," "Huot Decl.," Gattuso Decl.," Ambinder Decl.," and "Tompkins Decl.," respectively.

at the mediation, the Parties were unable to reach an agreement.  Following additional discussions and an important settlement conference with Magistrate Judge Baxter on January 18, 2018, the Parties reached an agreement to settle the claims of the FLSA Collective and the NY Class for $9,800,000. *Id.* at ¶¶ 21-24.

### C.  The Preliminary Approval Order And Notice Of The Settlement

The Court granted preliminary approval of the Settlement on June 21, 2018.  ECF No. 102. The Court's Order authorized notice of the Settlement to both the FLSA Collective and the NY Class. The FLSA Collective notice described the Settlement and gave the Store Managers the opportunity to change their mind and withdraw from the Settlement if they chose.  All of them remained in the case.

A traditional Rule 23 notice describing the options available to the Store Managers who were not part of the FLSA Collective was also sent to 158 New York Store Managers along with a Claim Form.  Devery Decl. ¶ 5.  This group included those who worked for Aldi during the period from March 29, 2010 through March 29, 2013 and thus did not receive an FLSA opt in notice, plus New York Store Managers who worked for Aldi between March 29, 2013 and October 17, 2017, but did not opt into the FLSA Collective.  This notice described the terms of the Rule 23 Settlement and gave New York Store Managers the opportunity to submit a claim, opt out of the Settlement, or object to the Settlement.  The notice also advised the workers that their claims would be released unless they responded to the notice.

As a result of this notice, 45 New York Store Managers submitted claims.  There have been nine requests from members of the NY Class to opt out of the Settlement and no objections.  *See* Devery Decl. ¶¶ 9-10; Gonnelli Decl. ¶ 29.

### D.  The Plan Of Allocation

The Plan of Allocation, as described in § 3.5(A) of the Settlement Agreement, establishes a "Weekly Allocation" based on the number of weeks worked by the FLSA Collective Members divided into the $8,625,000 allocated to the FLSA Collective.  The settlement fund will be allocated based on the number of weeks worked by each Store Manager multiplied by the Weekly Allocation. In addition, the claims of the 59 Store Managers whose claims are less than $100 will be rounded up to $100.  The calculation results in a gross award of $235.51 per week per Store Manager, before deductions for fees, expenses and service awards.  Devery Decl. ¶ 12.  Applying the prorated gross allocation, the average gross award is $25,841.99.  Devery Decl. ¶ 14.

Pursuant to the Settlement Agreement, half of the awards will be designated as wages, and appropriate payroll taxes will be withheld.  The other half will be designated as interest and penalties, and Class Members will receive checks for the full amount and will be issued Forms 1099 for tax purposes.  Gonnelli Decl. ¶ 26.

## III.  FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

As discussed in Plaintiffs' preliminary approval submission, the law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.,* Case No. 15-cv-00441, 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) ("Generally, class actions are complex and consume a tremendous amount of time and resources."); *Elliot* v. *Leatherstocking Corp.*, Case No. 10-CV-0934, 2012 WL 6024572, at *3 (N.D.N.Y. Dec, 4, 2012) (stating in a wage and hour case that "[c]lass actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources.").

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation."  *Clark v. Ecolab Inc.*, Case No. 07-Civ.-8623, 2009 WL 6615729, at*3 (S.D.N.Y. Nov. 27, 2009).  Further, "[f]airness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### A.   The Settlement Is Procedurally Fair

"To determine whether a settlement is procedurally fair, courts examine the settlement's terms and the negotiating process leading to settlement."  *Elliot,* 2012 WL 6024572, at *3 (citations omitted).  Here, the litigation has gone on for three years and settlement was reached only after extensive discovery.  Gonnelli Decl. ¶¶ 2-24.  In addition, settlement discussions took over six months and settlement was ultimately reached only after an extensive, all-day mediation session, a settlement conference before Magistrate Judge Baxter, and continued protracted negotiation between the Parties.  *Id*. at ¶¶ 19-24.  Under such circumstances, a presumption in favor of procedural fairness arises.  *See Elliot*, 2012 WL 6024572, at *4 (finding procedural fairness in mediated settlement reached after two years of litigation and extensive discovery).  In addition, as shown below, the Settlement terms themselves support a finding of procedural fairness.

**B.**       **The Settlement Is Substantively Fair, Reasonable, And Adequate**

As discussed in Plaintiffs' motion for preliminary approval, the Settlement satisfies the nine factors set forth in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000), which courts in the Second Circuit apply to evaluate class settlements. *See, e.g., Marroquin Alas,* 2016 WL 3406111, at *4 (reviewing *Grinnell* factors and approving wage and hour settlement).

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.   The *Grinnell* factors weigh in favor of approval of the settlement.

**1.**       **Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to motions for summary judgment, certification and decertification and trial, the Parties avoid significant risk, expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin Alas,* 2016 WL 3406111, at *4 (approving $282,000 settlement and stating "[h]ere, significant discovery and statistical experts would be required followed by a fact-intensive trial.  Preparing and

presenting evidence to support Plaintiffs' position would consume tremendous time and resources."); *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved").

This case is no exception, with a $9.8 million fund and 158 NY Class Members and 393 FLSA Collective Members with claims under both federal and state law. Further litigation here would cause additional expense and delay. Additional pre-class certification and potential post-certification discovery would need to be completed. Plaintiffs would file a motion for class certification under Rule 23, and Aldi would oppose the Rule 23 motion and also file a motion to decertify the conditionally-certified FLSA Collective. In addition, the Parties would likely file competing motions for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex and would consume significant time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The Settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.     The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2)

The reaction of the class has been positive. On July 20, 2018, notice of the Rule 23 settlement was sent to 158 New York Store Managers, 45 of whom submitted claims. *See* Devery Decl. ¶¶ 5-9. This is an unusually high claims rate. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (a 20% participation rate is "well above average in class action settlements"); *see also* Joseph M. McLaughlin, 2 McLaughlin on Class Actions § 6:24 (8th ed. 2011) (". . . settlements typically have a participation rate in the 10–15 percent range."). None of the New York Store Managers have objected and only nine have opted out. *See* Devery Decl. ¶¶ 10-11. In addition, none

of the FLSA Collective have changed their minds and all remain in the case.  Accordingly, the reaction of the class favors approval.

### 3. Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Case (*Grinnell* Factor 3)

The Parties have completed extensive discovery and recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

The extensive discovery undertaken by the Parties in this case was more than sufficient to meet this standard.  Plaintiffs' Counsel engaged a forensic Certified Public Accountant ("CPA") to comb through voluminous records, assist in damage calculations, and prepare damage models based on various circumstances and scenarios.  Plaintiffs' Counsel also conducted an investigation and legal research on the underlying merits of the potential class claims, and analyzed the likelihood of obtaining liquidated damages and the proper measure of damages.  Plaintiffs' Counsel also researched Defendant's likely affirmative defenses and relative strengths and weaknesses of anticipated arguments.  After filing, Plaintiffs' Counsel conducted further investigations including, but not limited to, interviewing Plaintiffs and certain FLSA Collective and NY Class Members, participating in discovery and depositions, and collective certification motion practice.  The Parties have engaged in extensive and wide-ranging discovery, including over 8,750 pages on company policies and procedures as well Store Manager duties and tasks records.  In addition, Plaintiffs and their CPA reviewed data encompassing tens of thousands of workweeks points and performed extensive damages calculations with varying assumptions.  Finally, the Parties engaged in additional document and information exchange before the mediation.  Gonnelli Decl. ¶¶ 10-11, 19, 21.  The amount of discovery militates in favor of final approval.  *See Marroquin Alas,* 2016 WL 3406111, at *4-5 (sampling of pay records, employee handbooks, and company policies sufficient to evaluate

settlement); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan 20, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### 4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4, 5, and 6)

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *4 (S.D.N.Y. June 25, 2007).  The risks on FLSA and Rule 23 certification, further discovery, liability and damages are considerable.

Although Plaintiffs believe their certification case is strong, it is subject to considerable risk, particularly in light of some recent decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives.  *See, e.g., Jin v. Shanghai Original, Inc.,* No. 16-cv-5633, 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc.*, No. 13-cv-3569, 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action due to need for individual exempt status determinations); *Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333, 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying FLSA class of management trainees and denying class certification); *Ruiz v. Citibank, N.A.,.* 93 F. Supp. 3d 279, 299 (S.D.N.Y. 2015) (decertifying FLSA class of personal bankers and denying class certification); *Hernandez v. Fresh Diet, Inc.,* No. 12-cv-4339, 2014 WL 5039431 (S.D.N.Y. Sep. 29, 2014) (decertifying FLSA class of allegedly misclassified workers and denying class certification).

Here, Plaintiffs would face significant and determined opposition on certification, including

but not limited to:

- Defendant's argument that the fact that at least 75 Store Managers since March 2013 were classified as hourly workers supports an FLSA decertification motion and opposition to Rule 23 certification motion;

- Defendant's offer of testimony of former Store Managers that they largely performed managerial duties;

- Defendant's argument that Aldi is decentralized and has "Division Specific" policies that vary across the 23 divisions;

- Defendant's argument that Plaintiffs were atypical because they did not perform certain managerial function, did not consult Aldi policy, and that their experiences were different than those Store Managers who submitted declarations for Aldi; and

- Plaintiffs would also face the risk of establishing a common methodology under *Comcast v. Behrand*, 569 U.S. 27 (2013) to calculate damages, and Aldi would argue that a half-time, rather than time and one-half method, should be used to calculate the damages owed for any overtime hours workers were able to establish.

Second, further discovery would be expensive and complicated. The Parties would likely take dozens of depositions of current and former Store Managers and Aldi executives, a number of whom may not wish to participate in pre-trial discovery and trial of this action. Expert discovery would likely involve industry experts on liability and statistical models for damages with attendant and competing *Daubert* motions. Expert testimony and discovery alone would cost the Parties hundreds of thousands of dollars, apart from considerable attorney time.

Third, with respect to liability, Plaintiffs have strong individual claims and are credible witnesses. However, if the FLSA Collective remained certified and/or the NY Class was are certified

for litigation purposes, there is a risk that the finder of fact might conclude that the Store Managers performed largely exempt managerial work and were not entitled to relief.  Aldi, in its opposition to Plaintiffs' motion for conditional FLSA certification, has submitted declarations which it argues support that conclusion.  ECF Nos. 39-5 – 39-19.  While Plaintiffs' own experiences and Plaintiffs' Counsel's extensive investigation yields a different conclusion, there exists a risk that a jury would disagree.  *See, e.g., Marroquin Alas*, 2016 WL 3406111, at *5 (noting that "establishing liability would be a time-consuming and costly process" and approving settlement).

Fourth, even if Plaintiffs maintained class certification and succeeded on liability, the risks of establishing damages also militates in favor of settlement.  Assuming Plaintiffs satisfied the requirements of *Comcast*, Aldi would argue that Class Members did not work as many hours as they allege, and that damages due to off-the-clock work could not be determined on a reliable basis.  If the litigation continued, the issue of damages would be clouded by competing expert testimony, dozens of Store Manager fact witnesses, and the complexity of parsing out how many hours Store Managers actually worked and what duties they performed during those hours.

Moreover, while damages throughout this litigation were calculated based on the number of hours Store Managers were paid for, as designated on their wage statements, Defendant has consistently raised the fluctuating work week as a defense to Plaintiffs' damage claims.  Defendant argues that damages should be based on a regular rate of pay that is derived from all hours worked, rather than all hours paid for, which would dramatically depress damage calculations.  ECF No. 39.  While Plaintiffs' Counsel remain confident that the factual details of this case would lead a court to decide that the fluctuating work week does not apply, there remains significant risk that a contrary result could be reached.  Indeed, the issue is extremely fact-intensive and requires extensive briefing and complex analysis on both sides.

While Plaintiffs believe that they would ultimately succeed on certification, liability, and damages, Aldi is equally confident in its defenses.  In addition, adverse rulings would likely be appealed by the Parties which increases the uncertainty of litigation.  Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of certification, liability, and damages issues, the result of a trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  Gonnelli Decl. ¶ 27.  The Settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

### 5. Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

Aldi's U.S. stores are part of a huge multinational corporation and Defendant could withstand a greater judgment.  However, Defendant's ability to withstand a greater judgment "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig*, 80 F. Supp. 2d at 178 n.9).  Thus, this factor is neutral.

### 6. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendant has agreed to settle this case for $9.8 million.  This amount represents substantial value given the attendant risks of litigation, even though recovery might be greater if Plaintiffs prevailed on a motion to certify the NY Class, maintained certification of the FLSA Collective, survived summary judgment, succeeded on all claims at trial, succeeded on the hotly-contested fluctuating work week method to calculate overtime pay, and prevailed on appeal.

An extremely optimistic estimate of the maximum recovery in this case is $846.15 per week, or roughly $35 million.  Should Defendant prevail on its fluctuating work week defense, damages would be significantly reduced to only $296.00 per week, or roughly $12 million.

To estimate damages, Plaintiffs made the following assumptions and calculations:

1. Each Class Member had a 50-hour week listed on their paycheck. Class Members received straight time for all 50 hours. Class Members were not paid overtime compensation (time and a half) for the 10 hours (41 through 50). As such, Class Members are entitled to the unpaid premium portions (0.5x their regular rate of pay) for those 10 hours of work.

2. Plaintiffs and Class Members also testified that they worked more than the 50 hours per week reflected on their wage statements. *See* ECF No. 33-3, Exhibit ("Ex.") J, Griffin Dep., pg. 76: 13-19 (worked more than 50 hours), pg. 280: 10-13 (worked 60 to 80 hours each week); Ex. L, McIndoo Dep., pg. 169:3 (60-65 hours each week); Ex. K, DeTomaso Dep., pg. 49:15-17 (60-70 hours each week); *see also* Ex. E, Bauer Dec. ¶ 4; Ex. F, Botta Dec. ¶ 4; Ex. G, Clark Dec. ¶ 4; Ex. H, Mescher Dec. ¶ 4; Ex. I, Pinto Dec. ¶ 4.

3. Despite working these additional hours, Store Managers never received overtime compensation. *See id.* Ex. E, Bauer Dec. ¶ 5; Ex. F, Botta Dec. ¶ 5; Ex. G, Clark Dec. ¶ 5; Ex. H, Mescher Dec. ¶ 5; Ex. I, Pinto Dec. ¶ 5.

4. Using an average of 65 hours, Plaintiffs assumed Store Managers received no pay at all for the 15 hours they worked beyond 50 per week (hours 51 to 65). As such, Class Members are entitled to the full overtime compensation (1.5x their regular rate of pay) for those 15 hours of work.

5. To calculate their regular hourly rate of pay, Plaintiffs divided the average annual earnings of the Store Managers by 52 weeks and then by the 50 hours per week that appears on the wage statements to arrive at an average regular rate of pay of $30.77.

6. These assumptions lead to a damage calculation of $846.16 per week, or roughly $35

million.  However, this calculation assumes that Plaintiffs prevail on their argument that the fluctuating work week does not apply.

7.      Application of the fluctuating work week significantly depresses damages in two ways: first, the regular rate of pay is reduced to $23.67 because it is derived by dividing weekly earnings by 65 hours rather than 50 hours.  *See Banfield v. Entergy Nuclear Operations, Inc.*, 649 Fed. Appx. 89, 91 (2d. Cir. 2016).  Second, since the fluctuating work week approach requires the assumption that Store Managers are already paid at the straight time rate (1x) for all hours worked (1 through 65), the only missing compensation is the overtime premium (0.5x) for hours 41 through 65.  Under this approach, Class Members would only be entitled the overtime premium (0.5x) of the reduced rate of pay ($23.67) for the 25 hours (41 to 65).

8.      This significantly reduces damages to only $296.00 per week, or roughly $12 million.

| Reg. Rate | Hours 41-50 | Weekly OT Compensation Owed | Hours 51-65 | Weekly OT Compensation Owed | Total Amount Owed Per Week |
|---|---|---|---|---|---|
| $30.77 | 10hrs paid at 1x (OT 0.5x owed) | 10x0.5x$30.77= $153.85 | 15 hrs. not paid at all (1.5x owed) | 15x1.5x$30.77= $692.31 | 153.85+692.31= **$846.16** (best case scenario) |
| $23.67 | 10hrs paid at 1x (OT 0.5x owed) | 10x0.5x$23.67= $118.40 | 15 hrs. paid at 1x (OT 0.5x owed) | 15x0.5x$23.67= $177.60 | 118.40+177.60= **$296.00** (fluctuating work week) |

Under the Settlement, Store Managers will receive a gross amount of $235.51 per week.  That represents 28% of Plaintiffs' best-case scenario assumptions and 80% of damages should Defendant prevail on the fluctuating workweek approach.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re*

*Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added).

Here, the Settlement provides much more than "a fraction of the potential recovery." Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the Settlement amount is reasonable and warrants approval. *See Elliot*, 2012 WL 6024572, at *11 (granting final approval of settlement and finding "meaningful payment to class members and is outweighed by the mere possibility of further relief."). Thus, the *Grinnell* factors weigh heavily in favor of final approval of the Settlement.

## IV.    COURT SHOULD GRANT FINAL CERTIFICATION OF THE NY CLASS

In its Preliminary Approval Order, the Court preliminary certified the NY Class under Rule 23. ECF No. 102. There is no reason to disturb that conclusion now. The NY Class consists of New York Store Managers who worked for Aldi after March 29, 2010. The Rule 23 notice was sent to 158 New York Store Managers, including those New York Store Managers that had received the FLSA notice in February but did not opt in to the case. *See* Devery Decl. ¶ 5; Gonnelli Decl. ¶ 28. As discussed in Plaintiffs' preliminary approval submission, all requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied. Defendant, for settlement purposes only, does not oppose Plaintiffs' request for Rule 23 class certification.

15

### A.    Numerosity

The NY Class is comprised 158 members.  *See* Devery Decl. ¶ 5.  Courts in the Second Circuit have held that "numerosity is presumed at a level of 40 members."  *Eldred v. Comforce Corp.*, No. 3:08-CV-1171, 2010 WL 812698, at *15 (N.D.N.Y. Mar. 2, 2010) (Kahn, J.) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d. Cir. 1995)).  Accordingly, numerosity is satisfied.

### B.    Commonality And Predominance

Common questions of law and fact predominate over questions affecting only individual members.  Because the requirement of commonality under Rule 23(a)(2) may be satisfied by a single common issue, it is easily met.  *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) ("Even a single common legal or factual question will suffice.").  Here, Plaintiffs have alleged that they and their fellow New York Store Managers were uniformly classified as exempt employees and should have been paid for hours worked in excess of 40 per week under federal and New York State law.  Accordingly, common questions include:

a)    Whether Defendant paid members of the NY Class all earned wages;

b)    Whether the NY Class Members were required to perform work in excess of 40 hours in a consecutive seven-day week;

c)    Whether the NY Class Members were paid at time and one-half when they performed work in excess of 40 hours in a consecutive seven-day week;

d)    Whether the Defendant misclassified Plaintiffs and members of the NY Class as exempt from payment of overtime compensation;

e)    Whether Defendant's conduct violated New York Labor Law Article 19 § 650, et seq. and corresponding New York State Department of Labor Regulations; and

f)    If liability were established, the proper measure of damages under New York Labor

Law Article 19 § 663.

Courts find commonality where employees are subjected to a uniform policy. *See Marroquin Alas*, 2016 WL 3406111, at *2 (finding commonality in wage and hour settlement) (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (finding commonality where workers were allegedly not paid appropriate overtime)); *Eldred*, 2010 WL 812698, at *16 (finding commonality where "Plaintiffs allege[d] that class members share identical relationships with Defendants."); *Elliot*, 2012 WL 6024572, at *5 (finding commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

With respect to predominance under Rule 23(b)(3), "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Here, common questions predominate because the core issues in this case focus on Aldi's policies with respect to its Store Managers. Plaintiffs contend that Store Managers performed similar tasks and had similar responsibilities, and were improperly classified as exempt. In addition, Store Managers were not paid overtime compensation for work performed over 40 hours. Each of these core issues involves a common nucleus of operative facts based on Defendant's common management policies and procedures which applied to all NY Class Members and which would be governed by New York law. *See, e.g., Marroquin Alas*, 2016 WL 3406111, at *7-8 (finding predominance in wage and hour case where questions concerning overtime pay were "universal" to workers); *Eldred*, 2010 WL 812698, at *19 (certifying litigation class and finding "[t]he predominant question raised is whether such a policy existed, and not whether any individual

17

suffered its consequences on a particular job."). Further, damages in this case will be calculated by applying the same mechanical formula based on the employees' work weeks. Thus, the commonality and predominance requirements are satisfied.

### C.   <u>Typicality</u>

The Plaintiffs' claims are typical of the claims of the members of the NY Class. As one court noted,

> "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'"

*Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (citing *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 293 (2d Cir. 1999)); *see also Kelen v. World Fin. Network Nat'l Bank,* 302 F.R.D. 56, 62 (S.D.N.Y. 2014). Plaintiffs Anthony Griffin, Mark McIndoo, and Suzanne DeTomaso are former New York Store Managers who were subjected to Aldi's uniform policies and were harmed by Aldi in the same manner as the rest of the NY Class in that they were allegedly misclassified as exempt employees and not paid overtime. *See Marroquin Alas,* 2016 WL 3406111, at *5-6 (typicality satisfied since plaintiffs' claims based on same factual and legal theories as class members). Since Plaintiffs' claims are identical to those of the members of the NY Class they seek to represent, typicality is satisfied.

### D.   <u>Adequacy</u>

"Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 90 (2d Cir. 2015) (citation omitted). Plaintiffs must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2nd Cir. 1992).

In this case, the Plaintiffs have no interests that conflict with their fellow Store Managers.  *See Elliot*, 2012 WL 6024572, at *2 (adequacy satisfied where there was "no evidence that plaintiffs' and the class members' interests are at odds.").  In addition, Plaintiffs have worked extensively on behalf of the NY Class to achieve this Settlement.  All three searched for documents, responded to discovery, and sat for depositions.  They have also spent many hours with their attorneys reviewing filings, explaining their experiences at Aldi, and helping to conduct the litigation.  *See, e.g.,* Declarations of Anthony Griffin, Mark McIndoo, and Suzanne DeTomaso, attached to Gonnelli Decl. as Exs. 1 - 3.

Moreover, as described in Plaintiffs' preliminary approval submission, Plaintiffs' Counsel are indeed "qualified, experienced, and generally able to conduct the litigation."  *In re Drexel Burnham*, 960 F.2d at 291.

Frank S. Gattuso has served as lead or co-lead class counsel in multiple class actions in New York.  Mr. Gattuso settled *LaFrance v. Ruby Tuesday, Inc. et al.*, (5:14-cv-01158) (N.D.N.Y. January 7, 2016) (Suddaby, J.) and *Eldred v. Comforce Corp.*, (3:08-cv-1171) (N.D.N.Y. October 6, 2011)) (Kahn, J.).  He is presently litigating *Roach v. T.L. Cannon, et. al.* (3:10-cv-00591) (McAvoy, J.) in the Northern District of New York and *Hicks v. T.L. Cannon, et al.* (6:13-cv-06455) (Wolford, J.) in the Western District of New York.  These are all employment/labor law class actions.  *See* Gattuso Decl. ¶ 2.

The Sultzer Law Group, P.C. focuses on complex civil litigation nationwide.  The firm is headquartered in Poughkeepsie, New York, with additional offices in New York City and New Jersey.  Since its founding in 2013, the firm has acted as lead counsel in a number of high-profile class action cases.  The firm's class action practice group is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for Class Actions and has also been featured in numerous publications, including Inside Counsel Magazine, Risk Management Magazine, and CNBC News.  Mr. Sultzer, the firm's

founding partner, has 20 years of significant experience related to both prosecuting and defending class actions.  Prior to opening The Sultzer Law Group, P.C. he served as the co-chairman of the Class Action Practice Group of one of the largest law firms in the country, and he has written and lectured extensively on class action practice.  Partner Adam Gonnelli has served as lead or co-lead counsel in numerous high-profile class action cases throughout the country resulting in multi-million-dollar recoveries to consumers, employees, and investors.  *See* Gonnelli Decl ¶ 35.

Counsel from Virginia & Ambinder, LLP are experienced litigators who have successfully represented classes in numerous class actions in federal and state court and have considerable experience in labor law cases including *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 129-30 (S.D.N.Y. 2011) (Scheindlin, J.); *Lujan v. Cabana Management, Inc.*, Index No. 10-cv-755, 2011 WL 317984, (E.D.N.Y. Feb. 1 2011) (Block, J.).  *See* Ambinder Decl. ¶ 2.

Counsel from Leeds Brown Law, P.C. also have considerable experience litigating employment discrimination and wage and hour lawsuits, many of which have been collective and class actions. *See, e.g., Cohan v. Columbia Sussex Management LLC*, 12-CV-3203(AKT) (E.D.N.Y., Sept. 28, 2018); *see also Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 at *7 (S.D.N.Y. Oct. 13, 2015); *Varela v. Building Services Industries, LLC*, Index No. 600037/2016 (Sup. Ct. Nassau Cty. Dec. 20, 2017); *Malcok v. S.E.B. Service of New York, Inc.*, 11-cv-5080 (MDG) (E.D.N.Y. Mar. 13, 2017) (J. Go).  *See* Tompkins Decl. ¶ 4.

Counsel from Faruqi & Faruqi, LLP have extensive experience representing employees and have served as lead and co-lead counsel in numerous class and collective actions across the county. Some of the firm's more recent notable recoveries include: *Run Them Sweet, LLC v. CPA Global Limited, et al.*, Case No. 1:16-cv-1347 (E.D. Va., Oct. 6, 2017) ($5.6 million settlement for 2,917 class members); *Strong, et al. v. Safe Auto Insurance Group, Inc., et al.*, Case No. 2:16-cv-765 (S.D.

Ohio, Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages); *Foster, et al. v. L-3 Communications EoTech, Inc., et al.*, Case No. 6:15-cv-03519-BCw (W.D. Mo., July 7, 2017) ($51 million class action settlement); *March, et al. v. First Choice Medical, PLLC,* Case No. 15-cv-3669 (E.D.N.Y., Mar. 6, 2017) ($110,000 recovery for hourly employees claiming unpaid overtime); and *Guttentag, et al. v. Ruby Tuesday*, Case No. 12-cv-03041 (S.D.N.Y., Oct. 2, 2014) ($3 million recovery for employees in FLSA wage suit).  *See* Huot Decl. ¶ 5.

Plaintiffs' Counsel have successfully prosecuted this litigation and should be confirmed as Class Counsel.

### E.    <u>Superiority</u>

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."  The Court must consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  Here, each of the factors weighs in favor of finding superiority.

With respect to the first and second factors, Plaintiffs are not aware of any other existing litigation addressing these issues, and the number of workers who have opted in to and submitted claims in this litigation instead of pursuing their own individual claims demonstrates that workers do not have a strong interest in individually controlling the prosecution of separate actions.  The alternative would be the potential filing of hundreds of individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the Parties' time and resources.  *See Elliot*, 2012 WL 6024572, at *2 (finding settlement in wage and hour case would

conserve judicial resources and is more efficient for class members).  Third, the Plaintiffs, many of

the workers in this case, and many Aldi stores are located in this District, so venue is appropriate.

Fourth, since the case is being settled, management is not a concern going forward.

 For these reasons, the Court should grant final certification of the Rule 23 NY Class.

**V.**  <u>**FLSA SETTLEMENT APPROVAL**</u>

 As another Court in this district has explained,

> Because a potential plaintiff's failure to opt into a FLSA collective action does not
> prejudice her ability to bring a suit in their own name at a later time, certification of
> FLSA collective actions do not implicate the same due process considerations that are
> present in class actions filed pursuant to Federal Rule 23 of Civil Procedure. . . .
> Therefore, . . . courts may approve a FLSA settlement that is reached as a result of
> "contested litigation to resolve bona fide disputes." . . ."If the proposed FLSA
> settlement reflects a reasonable compromise over contested issues, it should be
> approved."

*Marroquin Alas*, 2016 WL 3406111, at *7 (citations omitted).  As set forth above, the settlement in

this case resulted from contested, arm's-length negotiations between the parties following a

significant amount of protracted discussions.  The settlement discussions and the description of the

claims in this case provided above also show that the Settlement resolves hotly-contested, genuine

disputes regarding wages allegedly owed pursuant to the FLSA and the NYLL.  Accordingly, the

Settlement should be approved as an adequate and reasonable settlement under the FLSA as well.

**VI.**  <u>**CONCLUSION**</u>

 For the reasons above, the Court should grant final approval of the Settlement and grant final

certification to the proposed Rule 23 NY Class of New York Store Managers.

Dated: November 5, 2018     By: *<u>/s/ Adam R. Gonnelli</u>*

         Adam R. Gonnelli, Esq.
         N.D.N.Y. Bar Roll no.: 515045
         **THE SULTZER LAW GROUP, P.C.**
         85 Civic Center Plaza, Suite 104
         Poughkeepsie, NY 12601
         Telephone: (845) 483-7100

Facsimile: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com


**FARUQI & FARUQI, LLP**
Innessa M. Huot, Esq.
N.D.N.Y. Bar Roll no.: 519963
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: ihuot@faruqilaw.com


**GATTUSO & CIOTOLI, PLLC**
Frank S. Gattuso
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Telephone: 315-299-6350
Facsimile: 315-446-7521
Email: fgattuso@gclawoffice.com


**VIRGINIA & AMBINDER, LLP**
Lloyd R. Ambinder
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
Email: Lambinder@vandallp.com


**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
Michael A. Tompkins
1 Old Country Road, Suite 347
Carle Place, New York 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com


*Attorneys for Plaintiffs*