**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**SYRACUSE DIVISION**

| | |
|---|---|
| ANTHONY GRIFFIN, MARK MCINDOO, and SUZANNE DETOMASO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br><br> ALDI, INC., DOE DEFENDANTS 1-10, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )      Civil Action No.: 5:16-cv-354 <br>      (LEK/ATB) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, LITIGATION EXPENSES**
**AND SERVICE AWARDS TO NAMED PLAINTIFFS**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    THERE HAVE BEEN NO OBJECTIONS ....................................................... 1

III.   ARGUMENT .................................................................................................... 2

     A.    The Fee Request Is Reasonable And Should Be Approved .................................. 2

     B.    The Court Should Use The Percentage Method To Evaluate This Fee Request .... 3

     C.    The Requested Fee Is Reasonable Under The *Goldberger* Factors ....................... 5

          1.    The Time and Labor Expended by Counsel ................................................. 6

          2.    The Magnitude and Complexities of the Litigation .................................... 8

          3.    The Risk of the Litigation .......................................................................... 9

          4.    Quality of Representation .......................................................................... 11

          5.    The Fee in Relation to the Settlement ........................................................ 13

          6.    Public Policy Considerations .................................................................... 14

     D.    The Fee Is Also Reasonable Under A Lodestar Analysis .................................... 15

     E.    Plaintiffs' Counsels' Expenses In This Case Should Be Reimbursed ................. 17

     F.    Service Awards To The Plaintiffs Are Appropriate In This Case ........................ 17

IV.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945)....................................................................................................15

*In re Am. Bank Note Holographics*, *Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).........................................................................4

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008).........................................................................................4

*Asare v. Change Group New York, Inc.*,
   No. 12 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ......................2, 14, 18

*Ballinger v. Advance Magazine Publishers, Inc.*,
   No. 13 Civ. 4036 (HBP), slip op (S.D.N.Y. Aug. 11, 2015) ...................................19

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981)......................................................................................................8

*Beckman v. KeyBank, N.A.*,
   No. 12 Civ. 7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013)............................3, 8, 14, 16

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
   No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) ..........................2, 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................4

*Ceka v. PBM/CMSI Inc., PBM, LLC*,
   No. 12 Civ. 1711(DAB), 2014 WL 6812127 (S.D.N.Y. Dec. 2, 2014).................20

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2010 WL 1948198 (S.D.N.Y. May 11, 2010) .........................................................14

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011)....................................................................2, 14, 16

*deMunecas v. Bold Food, LLC*,
   No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..........................4, 15

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)....................................................................................................15

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005).........................................................................9

*Eliastam v. NBC Universal Media, LLC,*
 No. 13 Civ. 4634 (S.D.N.Y. May 23, 2015) ........................................................19

*Flores v. Anjost Corp.,*
 No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ................................2, 3, 7, 17

*Fox v. Vice,*
 563 U.S. 826 (2011) ...............................................................................5

*Frank v. Eastman Kodak Co.,*
 228 F.R.D. 174 (W.D.N.Y. 2005) .............................................................3, 17, 19

*In re Gilat Satellite Networks, Ltd.,*
 No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y., Sept. 18, 2007) ..................13

*Gilliam v. Addicts Rehab. Ctr. Fund,*
 No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...............................13

*In re Global Crossing Sec. & ERISA Litig.,*
 225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................5, 10

*Goldberger v. Integrated Res. Inc.,*
 209 F.3d 43 (2d Cir. 2000) ...................................................................*passim*

*Guippone v. BHS & B Holdings, LLC,*
 No. 09 Civ. 01029(CM), 2011 WL 5148650 (S.D.N.Y., Oct. 28, 2011) .......................18

*Henry v. Little Mint, Inc.,*
 No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...........................7, 9, 18, 19

*Hernandez v. Merrill Lynch & Co.,*
 No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .............................13

*Hicks v. Stanley,*
 No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y., Oct. 24, 2005) .....................16

*In re Interpublic Sec. Litig.,*
 Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .............5

*Jemine v. Dennis,*
 901 F. Supp. 2d 365 (E.D.N.Y. 2012) ........................................................9

*Johnson v. Brennan,*
 No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..........................2, 7, 8, 9

*Khait v. Whirlpool Corp.,*
 No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...........................14, 15, 20

iii

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................16

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y., Jan. 29, 2002) ...................................................................7, 16

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ...........................................2

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)...............................................................................................3, 14

*McMahon v. Oliver Cheng Catering and Events, LLC*,
    No. 08 Civ. 8713(PCG), 2010 WL 2399328 (S.D.N.Y. March 3, 2010) .................4, 8, 14, 15

*Orme v. Burlington Coat Factory of Or., LLC*,
    No. CV 07-859-MO, 2010 WL 1838740 (D. Or. May 3, 2010)...........................................10

*Parker v. Jekyll & Hyde Entm't Holdings*,
    LLC, No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010)............................8, 18, 19

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010)............................................................................................................10

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)............................................................................................................15

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) .........................................3, 4

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
    No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)...............................................16

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)............................................3, 4, 5

*Reyes v. Altamarea Group, LLC*,
    No. 10–CV–6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .........................19, 20

*RMED Int'l, Inc. v. Sloan's Supermarkets*,
    No. 94 Civ. 5587 (PKL)(RL), 2003 WL 21136726 (S.D.N.Y. May 15, 2003).......................20

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997).......................................................................................17

*Sand v. Greenberg*,
    No. 08 Civ. 7840(PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ......................................15

*Savoie v. Merchants Bank*,
 166 F.3d 456 (2d Cir. 1999)..............................................................5

*Seekamp v. It's Huge, Inc.*,
 No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) ............................... *passim*

*Sewell v. Bovis Lend Lease, Inc.*,
 No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................... *passim*

*Smith v. Voorhees College*,
 No. 5:05-1911, 2008 WL 2627471 (D.S.C. June 27, 2008) ....................................10

*Spicer v. Pier Sixty LLC*,
 No. 08 Civ.10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012).........................................14

*Sukhnandan v. Royal Health Care of Long Island, LLC*,
 No. 12cv4216 (RLE), 2014 WL 3778173 (S.D.N.Y. July, 31 2014) ....................................20

*In re Sumitomo Copper Litig.*,
 74 F. Supp. 2d 393 (S.D.N.Y. 1999)........................................................4

*Taft v. Ackermans*,
 No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...................................11

*Torres v. Gristede's Operating Corp.*,
 519 Fed. Appx. 1 (2d Cir. 2013) .............................................................3

*Velez v. Majik Cleaning Serv., Inc.*,
 No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).........................................3, 5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).............................................................3, 4, 14

*Westerfield v. Washington Mut. Bank*,
 No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ..............................................14

*Willix v. Healthfirst Inc.*,
 No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)..............................................14

## I.      __INTRODUCTION__

Plaintiffs' Counsel has achieved a settlement of $9.8 million for the Store Managers of Aldi, Inc. ("Aldi" or "Defendant") and now seeks an award of attorneys' fees and expenses of one-third of that amount, or $3,266,667.00.

This case was filed more than three years ago, and Plaintiffs and their counsel have persevered through factually and legally complicated issues to achieve an outstanding result.  This case has involved a motion to dismiss, a collective certification motion, and a motion to preserve the rights of terminated employees who received communications from Aldi that Plaintiffs believed were misleading and coercive.  There has also been extensive discovery and complex damages and payroll analysis involving tens of thousands of worker weeks and the services of a Certified Public Accountant ("CPA") to run different damages analyses based on different assumptions concerning off- the-clock work.

For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek is fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the result achieved in this case. Class Counsel also respectfully submit that the service awards for Plaintiffs are proper in recognition of the services they rendered on behalf of the Class Members.

## II.      __THERE HAVE BEEN NO OBJECTIONS__

On June 21, 2018 Magistrate Judge Baxter authorized notice of the proposed settlement ("Settlement") to the members of the FLSA Collective and the Rule 23 New York Class ("NY Class").  The notice informed the Store Managers that:

> Class Counsel will ask the Court to approve a fee of up to one-third of the maximum settlement amount described above ($3,266,666.67).   Any fee award will be deducted from the $9.8 million fund.  The Court will ultimately decide the amount that will be paid to Class Counsel.

None of the Store Managers objected to the proposed fee award (or any part of the Settlement). The lack of objections to Class Counsel's fee and cost reimbursement request is an indication of the reasonableness of the requested award and weighs in favor of approving it. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *9 (S.D.N.Y. Sept. 16, 2011).

## III.   ARGUMENT

### A.   The Fee Request Is Reasonable And Should Be Approved

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the class. The Settlement Agreement, which has been preliminarily approved by the Court, provides that Class Counsel may apply for no more than $3,266,666.67 from the Qualified Settlement Fund for professional fees, costs, and expenses. *See* Settlement Agreement ¶ 3.3. ECF No. 100-4, Exhibit ("Ex.") A.

The request for one-third of the fund is inclusive of all costs and expenses incurred in this litigation. That percentage has been found to be reasonable and within the typical range approved by courts in similar cases. *See Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms of class litigation in this circuit" and collecting cases where one-third was awarded in FLSA cases); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *7  (E.D.N.Y. Nov. 20, 2012) (to same effect and collecting cases); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (class counsel awarded fees of 33% of settlement fund); *Asare v. Change Group New York, Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013) (citing FLSA cases). Courts, including this one, have

awarded fees greater than one-third as well. *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) (greater than 45%) (Kahn, J.); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (40% of the fund); *c.f. Torres v. Gristede's Operating Corp.*, 519 Fed. Appx. 1, 5-6 (2d Cir. 2013) (implying 52% percentage award in wage and hour case would not have been abuse of discretion). Here, the requested fee, after expenses are deducted, is slightly less than one-third, and amounts to only 32.5%. *See also infra* III.C.5.

### B.     The Court Should Use The Percentage Method To Evaluate This Fee Request

There are two ways to determine appropriate compensation for attorneys for successful prosecution of wage and hour claims – the lodestar method and the percentage of the fund method. *Seekamp,* 2014 WL 7272960, at *3-4; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10; *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at *8 (S.D.N.Y. Apr. 29, 2013). *Flores*, 2014 WL 321831, at *8.

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

Second, the percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order").  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  522 F.3d 182, 191 (2d Cir. 2008).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *McMahon v. Oliver Cheng Catering and Events, LLC*, No. 08 Civ. 8713(PCG), 2010 WL 2399328, at *8 (S.D.N.Y. March 3, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Third, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours.  It "provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re Ramp Corp.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2;

4

*Velez*, 2007 WL 7232783, at \*7.  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *See Seekamp*, 2014 WL 7272960, at \*5.  *See also Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at \*11 (S.D.N.Y. Oct. 26, 2004).

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at \*11 (quoting *Savoie*, 166 F.3d at 461 n.4).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp.*, 2008 WL 58938, at \*2 n.2.  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously.  *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) (in context of civil rights case, goal of fee shifting is "rough justice," not auditing perfection and trial courts should not become "green-eyeshade accounts").

## C.   The Requested Fee Is Reasonable Under The *Goldberger* Factors

The Second Circuit has set forth six factors to apply when using the percentage method in a common fund case:

(1)   the time and labor expended by counsel;

(2)   the magnitude and complexities of the litigation;

(3)     the risk of the litigation;

(4)     the quality of representation;

(5)     the requested fee in relation to the settlement; and

(6)     public policy considerations.

*Goldberger*, 209 F.3d at 50.  *See Seekamp,* 2014 WL 7272960, at *4 (applying Goldberger factors).

The *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.     The Time and Labor Expended by Counsel

Even though the use of the percentage method is appropriate here, the first *Goldberger*

factor requires consideration of the lodestar.  Over three and a half years, Plaintiffs' Counsel spent

over 4180 hours on the litigation.  *See* Gonnelli Decl. ¶¶ 41-42; Huot Decl. ¶ 9; Gattuso Decl. ¶ 5;

Ambinder Decl. ¶ 7; and Tompkins Decl. ¶ 9.[1]  In establishing hourly rates to calculate the lodestar,

Plaintiffs' Counsel followed the guidance of this Court in *Seekamp*, and reduced the hourly rates

of partners to $500 and associates to $350.  *Id*. at *5 (citing Board of Judges Policy 11).

| Firm | Hours | Fees at Regular Rates | Fees at NDNY Rates | Expenses |
|---|---|---|---|---|
| Sultzer Law Group | 602.3 | $478,828.50 | $301,150.00 | $1,773.51 |
| Faruqi & Faruqi LLP | 1511.4 | $819,837.75 | $636,701.25 | $57,942.17 |
| Leeds Brown Law, P.C. | 343.1 | $130,901.50 | 128,847.50 | $4,494.54 |
| Virginia & Ambinder, LLP | 1256.6 | $432,168.00 | 410,912.50 | $9,522.87 |
| O'Hara, O'Connell[2] | 263.5[3] | $48,747.50 | $48,747.50 | $0.00 |
| Frank S. Gattuso | 205.4 | $102,250.00 | $102,250.00 | $400.00 |
| **Total =** | **4182.3** | **$2,012,733.25** | **$1,628,608.75** | **$74,133.09** |

[1] *See* Plaintiffs' Memorandum of Law In Support of Final Approval at 2 n.3.

[2] Aldi's counsel has informed Plaintiffs' Counsel that on October 17, 2018 they received a notice of a lien on any fees that are awarded in this case from Plaintiffs' former counsel, the law firm O'Hara Law Firm P.C. of Fayetteville, New York.  The parties are in contact with counsel for the O'Hara firm, which has notice of the final approval hearing, and hope to resolve the issue.

[3] The hours submitted here are those worked by counsel Frank S. Gattuso while he was employed by the now-defunct O'Hara firm until September 15, 2017.  There are, on information and belief, another 137.3 hours worked by other lawyers or support staff at the O'Hara firm, but no one has attested to these hours.  Accordingly, these hours have been deducted from the lodestar calculation. *See* Gattuso Decl. ¶¶ 4-5

At Northern District rates pursuant to *Seekamp*, the lodestar is **$1,628,608.75**.

Plaintiffs' Counsel incurred **$74,133.09** in unreimbursed expenses, which is comprised of $24,257.41 in litigation and mediation expenses, as well as $49,875.68 for claims administration expense for the administration of notice and settlement in this case. These expenses will be deducted first and are included in Plaintiffs' application for an award of one-third of the Settlement Fund, or $3,266,667.00.

Under a lodestar analysis, the requested fee award is only a multiple of 1.96 to the lodestar, well within, and indeed below, the norm in the Second Circuit. *See Johnson*, 2011 WL 4357376, at *20 (noting that "Courts regularly award lodestar multipliers from two to six times lodestar[]" and collecting cases); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *16 (S.D.N.Y. May 23, 2014) ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . ."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y., Jan. 29, 2002) (awarding fee and noting 4.65 multiplier is "modest").

The requested fee award will also compensate Plaintiffs' Counsel for the considerable time that will need to be spent administering the settlement in the future. *See Flores*, 2014 WL 321831, at *9 ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson*, 2011 WL 4357376, at *15 (noting that future work covered in settlement award supports fee application).

In Class Counsel's experience, based on the number of Class Members and Participating Claimants, Class Counsel expects to respond to dozens of inquiries regarding the settlement and settlement checks, requiring a substantial and ongoing commitment. This includes a round of

letters to confirm the dates of the Store Managers' employment prior to distribution of the money. Gonnelli Decl. ¶ 31.  *See Beckman*, 2013 WL 1803736, at *14 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *McMahon*, 2010 WL 2399328, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund) (citation omitted); *Parker v. Jekyll & Hyde Entm't Holdings*, LLC, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (awarding 1.55 multiplier to lodestar in wage and hour case and noting "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

## 2.    The Magnitude and Complexities of the Litigation

The magnitude and complexity of the litigation also supports the fee request.  The United States Supreme Court has stated that "FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings."  *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  Of course, since *Barrentine* was decided, there has been another four decades of interpretation and regulation.  In addition, among FLSA cases the most complex type is the "hybrid" action, like this one, where state law claims are brought as well.  *Johnson*, 2011 WL 4357376, at *17.

Off-the-clock claims can be particularly challenging.  This was a case involving hundreds of plaintiffs scattered around the country against a large company for which many records to prove plaintiffs' claims did not exist.  *See Henry*, 2014 WL 2199427, at *13 (holding that size and difficulty of multi-location case covering more than 1,500 individuals supported fee award); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012) (noting that large number of plaintiffs increases the complexity of the litigation).  Like here, the court in *Johnson* acknowledged that the "fact-intensive inquiry . . . contributed to the complexity of this case because Defendants' witnesses disputed the facts . . ."  2011 WL 4357376, at *18.  Aldi, in its opposition to Plaintiffs' collective certification motion, submitted numerous declarations which challenged Plaintiffs' factual allegations.  In addition, in challenging what Plaintiffs believed was a practice of inappropriately communicating with terminated Store Managers, counsel had to thoroughly review the evolving waiver and arbitration law to protect the interests of the Store Managers.  This practice was not disclosed to Plaintiffs, and if not for the diligence of counsel and certain Store Managers, the issue might never have come to light.

Accordingly, this factor supports the fee request.

### 3.      The Risk of the Litigation

The risk of the litigation, also addressed in detail in Plaintiffs' motion for final approval of this Settlement, filed concurrently with this motion, strongly favors the award.  At least one court, in evaluating the *Goldberger* factors, has called the risk of litigation "perhaps the foremost factor to be considered in determining [the] award [of appropriate attorneys' fees]."  *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.

Gonnelli Decl. ¶ 3.  *See In re Global Crossing*, 225 F.R.D. at 467 (contingent nature of litigation is key factor in determining reasonable attorneys' fees).  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  *See Orme v. Burlington Coat Factory of Or., LLC,* No. CV 07-859-MO, 2010 WL 1838740, at *8 (D. Or. May 3, 2010) (finding that this factor favored fee application and noting "employment cases are undesirable to the bar due to their factual and legal complexity."); *Smith v. Voorhees College*, No. 5:05-1911, 2008 WL 2627471, at *5 (D.S.C. June 27, 2008) ("Many attorneys consider employment cases to be undesirable due to the fact that they require special expertise and have many risks.").  Class Counsel stood to gain nothing in the event the case was unsuccessful.  In addition to thousands of hours of attorney time, Plaintiffs' Counsel risked $74,133.09 in expenses.  *See, e.g., Perdue v. Kenny A.*, 559 U.S. 542, 543 (2010) (extraordinary outlay of expenses supports fee).

With respect to the case-specific risks, Plaintiffs faced significant challenges on class certification, merits, and damages.  With respect to certification, Aldi would have undoubtedly moved for decertification of the FLSA Collective and vigorously opposed the certification of the state law Rule 23 NY Class.  On the merits, the major risk was that the finder of fact might conclude, based on conflicting testimony from Store Managers, that the duties they performed did not support a conclusion that they were misclassified.  On damages, like in all off the clock cases, there are no documents to support an accurate calculation of off-the-clock hours.  Plaintiffs relied on their own experiences and statements from other Store Managers.  It is far from certain that a

10

finder of fact would award Store Managers a greater amount then they are recovering in this Settlement.

Accordingly, the risks Plaintiffs' Counsel assumed in this litigation support the fee request.

### 4.      Quality of Representation

The "quality of representation" factor under *Goldberger* conflates the recovery obtained and the backgrounds of the lawyers in the case. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007).  The recovery for Store Managers is excellent.  Out of an estimated damages range of $296.00 to $846.16[4] the Class Members will receive roughly 41% of the midpoint of actual damages.  Given the risks of continued litigation, this is an outstanding result.

Moreover, Plaintiffs' Counsel has extensive experience representing employees in complex class action litigation and enjoys a very good reputation in the plaintiffs and the legal community.  *See* Gonnelli Decl. ¶ 35; Huot Decl. ¶ 2; Gattuso Decl. ¶ 2; Ambinder Decl. ¶ 2 and Tompkins Decl. ¶ 4.

Frank S. Gattuso has served as lead or co-lead class counsel in multiple class actions in New York.  Mr. Gattuso settled *LaFrance v. Ruby Tuesday, Inc*. *et al.*, (5:14-cv-01158) (N.D.N.Y. January 7, 2016) and *Eldred v. Comforce Corp.*, (3:08-cv-1171) (N.D.N.Y. October 6, 2011)) (Kahn, J.).  He is presently litigating *Roach v. T.L. Cannon, et. al*. (3:10-cv-00591) (McAvoy, J.) in the Northern District of New York and *Hicks v. T.L. Cannon, et al*. (6:13-cv-06455) (Wolford, J.) in the Western District of New York.  These are all employment/labor law class actions.  *See* Gattuso Decl. ¶ 2.

---

[4] *See* Plaintiffs' Memorandum of Law In Support of Final Approval at 12-14.

The Sultzer Law Group focuses on complex civil litigation nationwide. The firm is headquartered in Poughkeepsie, New York, with additional offices in New York City and New Jersey. Since its founding in 2013, the firm has acted as lead counsel in a number of high-profile class action cases. The firm's class action practice group is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for Class Actions and has also been featured in numerous publications, including Inside Counsel Magazine, Risk Management Magazine, and CNBC News. Mr. Sultzer, the firm's founding partner, has 20 years of significant experience related to both prosecuting and defending class actions. Prior to opening The Sultzer Law Group, he served as the co-chairman of the Class Action Practice Group of one of the largest law firms in the country, and he has written and lectured extensively on class action practice. Partner Adam Gonnelli has served as lead or co-lead counsel in numerous high-profile class action cases throughout the country resulting in multi-million-dollar recoveries to consumers, employees, and investors. *See* Gonnelli Decl. ¶ 35

Counsel from Faruqi & Faruqi LLP have extensive experience representing employees and have served as lead and co-lead counsel in numerous class and collective actions across the county. Some of the firm's more recent notable recoveries include: *Run Them Sweet, LLC v. CPA Global Limited, et al.*, Case No. 1:16-cv-1347 (E.D. Va., Oct. 6, 2017) ($5.6 million settlement for 2,917 class members); *Strong, et al. v. Safe Auto Insurance Group, Inc., et al.*, Case No. 2:16-cv-765 (S.D. Ohio, Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages); *Foster, et al. v. L-3 Communications EoTech, Inc., et al.*, Case No. 6:15-cv-03519-BCw (W.D. Mo., July 7, 2017) ($51 million class action settlement); *March, et al. v. First Choice Medical, PLLC,* Case No. 15-cv-3669 (E.D.N.Y., Mar. 6, 2017) ($110,000 recovery for hourly employees claiming unpaid overtime); and *Guttentag, et al. v. Ruby Tuesday*, Case No. 12-cv-

12

03041 (S.D.N.Y., Oct. 2, 2014) ($3 million recovery for employees in FLSA wage suit).  *See* Huot Decl. ¶ 2.

Counsel from Virginia & Ambinder, LLP are experienced litigators who have successfully represented classes in numerous class actions in federal and state court and have considerable experience in labor law cases including *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 129-30 (S.D.N.Y. 2011) (Scheindlin, J.); *Lujan v. Cabana Management, Inc.*, Index No. 10-cv-755, 2011 WL 317984, (E.D.N.Y. Feb. 1 2011) (Block, J.).  *See* Ambinder Decl. ¶ 2.

Counsel from Leeds Brown Law, P.C. also have considerable experience litigating employment discrimination and wage and hour lawsuits, many of which have been collective and class actions. *See, e.g., Cohan v. Columbia Sussex Management LLC*, 12-CV-3203(AKT) (E.D.N.Y., Sept. 28, 2018); *see also Tart v. Lions Gate Entm't Corp.*, 2015 U.S. Dist. LEXIS 139266 at *7 (S.D.N.Y. Oct. 13, 2015); *Varela v. Building Services Industries, LLC*, Index No. 600037/2016 (Sup. Ct. Nassau Cty. Dec. 20, 2017); *Malcok v. S.E.B. Service of New York, Inc.*, 11-cv-5080 (MDG) (E.D.N.Y. Mar. 13, 2017) (J. Go).  *See* Tompkins Decl. ¶ 4.

### 5.    The Fee in Relation to the Settlement

Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable.  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *16 n.41 (E.D.N.Y., Sept. 18, 2007) ("Given the modest size of the [$20 million] settlement" a 30% fee would not be a windfall).

Class Counsel's 32.5% fee request is less than the one-third percentage fee typically awarded in this Circuit.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (a fee request of 33% is "consistent with the norms of class litigation in this circuit."); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL

1209563, at \*810 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of a $7 million settlement in a FLSA

and NYLL misclassification case); *Spicer v. Pier Sixty LLC,* No. 08 Civ.10240, 2012 WL 4364503,

at \*4 (S.D.N.Y. Sept. 14, 2012) (awarding 33%  fee in $8.5 million settlement; lodestar multiplier

of 3.36 approved); *Davis,* 827 F. Supp. 2d at 178, 187 (awarding 33% fee in $42 million settlement;

lodestar multiplier of 5.3 approved); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862,

at \*6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund in FLSA

and NYLL wage and hour action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106,

at \*8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in

FLSA and multi-state wage and hour case); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488,

06 Civ. 5672, 2010 WL 1948198, at \*8-9 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million

settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Washington Mut.*

*Bank,* No. 06 Civ. 2817, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million

settlement). A fee of 30% of the Fund is reasonable and "consistent with the norms of class

litigation in this circuit." *McMahon*, 2010 WL 2399328, at \*7.

      **6.**     **Public Policy Considerations**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee

award. *McDaniel*, 595 F.3d at 417; *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *Beckman*, 2013 WL

1803736, at \*8.  "The Second Circuit and courts in this district also have taken into account the

social and economic value of class actions, and the need to encourage experienced and able counsel

to undertake such litigation." *Asare,* 2013 WL 6144764, at \*17 (citing *In re Sumitomo Copper*

*Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999)).   Where relatively small claims can only be

prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys

general," attorneys who fill that role must be adequately compensated for their efforts.  *Id.* at \*9

(citations and internal quotation marks omitted); *see also Sewell*, 2012 WL 1320124, at *13 (same).

Importantly, the FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks and citation omitted). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

In addition, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

Public policy considerations therefore weigh strongly in favor of the fee request.

## D.   The Fee Is Also Reasonable Under A Lodestar Analysis

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. As part of the cross check, the lodestar is determined by multiplying the hours

reasonably expended on the case by a reasonable hourly rate.  *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *8 (S.D.N.Y., Oct. 24, 2005).  Here, the hours spent are multiplied by the hourly rates for partners and associates described by this Court in *Seekamp*.  In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . ." *Id.*  Class Counsel spent over 4,180 hours litigating and settling this matter.  *See* Gonnelli Decl. ¶¶ 41-42; Huot Decl. ¶ 9; Gattuso Decl. ¶ 5; Ambinder Decl. ¶ 7; and Tompkins Decl. ¶ 9.  Here, Class Counsel's request for $3,192,533.91 of the Fund for fees (excluding expenses of $74,133.09) is approximately 1.96 times "lodestar."  This is well within the range awarded by courts in this Circuit.

Indeed, courts regularly award lodestar multipliers from two to six times lodestar, and sometimes even greater than six times lodestar.  *See Beckman*, 2013 WL 1803736, at *13 ("courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Maley*, 186 F. Supp. 2d at 371 ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable").

Moreover, because "'class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).

**E.     Plaintiffs' Counsels' Expenses In This Case Should Be Reimbursed**

In total, Plaintiffs' Counsel incurred $74,133.09 in expenses.  The bulk of the expenses were notice to the class ($13,059.88); deposition costs ($3,064.75); mediation fees ($7,300.00); and anticipated settlement claims administration fees ($36,815.80).  *See* Huot Decl. ¶¶ 10-11; Ambinder Decl. ¶¶ 8-9.  All of these expenses are and were necessary to the litigation and should be reimbursed.

**F.     Service Awards To The Plaintiffs Are Appropriate In This Case**

Plaintiffs' Counsel requests that this Court grant service awards of $10,000 each to Anthony Griffin, Mark McIndoo, and Suzanne DeTomaso, the three named Plaintiffs who took leadership roles in the litigation and contributed to the success of the case as a whole.

"Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take.  *Flores*, 2014 WL 321831, at *10 (citing *Massiah*, 2012 WL 5874655, at *8).  In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the plaintiffs; (2) the time and effort expended by the plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights.  *Frank*, 228 F.R.D. at 187; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

First, Mr. Griffin, Mr. McIndoo, and Ms. DeTomaso undertook significant risks to serve their fellow Store Managers.  Service awards are especially important in employment cases, where

employees have assumed risks of future retaliation and losing future employment opportunities: "Here, Class Representatives faced the risks that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare*, 2013 WL 6144764, at *15. *See also Sewell*, 2012 WL 1320124, at *14 (recognizing that plaintiffs in wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees"). Although Plaintiffs were no longer working for Defendant when they joined the lawsuit, and there has been no threat or indication of retaliation here, they risked retaliation from their current employers and put their ability to secure future employment at risk as well. *Guippone v. BHS & B Holdings, LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y., Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the   person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Id.* at *1; *Henry*, 2014 WL 2199427, at *10 ("In a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, [service] awards are singularly appropriate.").

Second, Plaintiffs also contributed a significant amount of time and effort to the case. *See* Declarations of Anthony Griffin, Mark McIndoo, and Suzanne DeTomaso.[5]  Each named Plaintiff providing Class Counsel with detailed factual information regarding their job duties, Defendant's policies, and other information relevant to their claims, providing information responsive to

---

[5] Exs. 1-3 are attached to Gonnelli Decl.

Defendant's interrogatories and document demands, and regularly making themselves available to communicate with Class Counsel when necessary, including throughout the settlement process. *See Parker*, 2010 WL 532960, at *1 (recognizing efforts of plaintiffs including meeting with counsel, reviewing documents, formulating theory of case, identifying and locating other class members to expand settlement participants, and attending court proceedings); *Frank*, 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claims," including by responding to counsel's questions and reviewing documents). Their role was particularly important in estimating damages since, by definition, there were no time records for off-the-clock work.

Third, the Settlement has vindicated the statutory rights of the Store Managers under both the FLSA and the New York Labor Law, which supports the request for the Service Awards.

The requested Service Awards of $10,000 to named Plaintiffs Griffin, McIndoo, and DeTomaso amount to approximately 0.3% of the total recovery, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Group, LLC*, No. 10–CV–6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding that service awards totaling 11% of the total recovery are reasonable).

In absolute dollar terms, courts routinely approve service awards equal to or greater than the awards requested here. *See Henry*, 2014 WL 2199427, at *10 (calling $10,000 service award "modest" and collecting cases); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), slip op at 2-3 (S.D.N.Y. Aug. 11, 2015) (approving service awards of $10,000 to each of the named plaintiffs); *Behzadi*, 2015 WL 4210906 (approving service awards of $10,000 to each of the named plaintiffs); *Eliastam v. NBC Universal Media, LLC*, No. 13 Civ. 4634 (S.D.N.Y. May

23, 2015) (approving service awards of $10,000, $5,000 and $2,000 to plaintiffs and opt-ins); *Ceka v. PBM/CMSI Inc., PBM, LLC*, No. 12 Civ. 1711(DAB), 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (finding service award of $10,000 "reasonable and justified to compensate Class Representatives for the services they provided and the risks they incurred during the course of the class action litigation"); *Sukhnandan v. Royal Health Care of Long Island, LLC*, No. 12cv4216 (RLE), 2014 WL 3778173, at *16 (S.D.N.Y. July, 31 2014) (approving service awards of $10,000 to each of the named plaintiffs); *Sewell*, 2012 WL 1320124, at *15 (awarding $10,000 and $15,000 service awards in FLSA case); *Reyes*, 2011 4599822, at *9 (approving awards of $15,000 and $5,000); *Khait*, 2010 WL 2025106, at *9 (approving awards of $15,000 and $10,000); *RMED Int'l, Inc. v. Sloan's Supermarkets*, No. 94 Civ. 5587 (PKL)(RL), 2003 WL 21136726, at *2-3 (S.D.N.Y. May 15, 2003) (2.6% of $975,000).

Accordingly, the service awards are reasonable and should be approved.

## IV.   <u>CONCLUSION</u>

For the reasons above, Plaintiffs' motion should be granted.

Dated: November 5, 2018

By: */s/ Adam R. Gonnelli*
Adam R. Gonnelli, Esq.
N.D.N.Y. Bar Roll no.: 515045
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 104
Poughkepsie, NY 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
Email: gonnellia@thesultzerlawgroup.com

**FARUQI & FARUQI, LLP**
Innessa M. Huot, Esq.
N.D.N.Y. Bar Roll no.: 519963
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: ihuot@faruqilaw.com

**FRANK S. GATTUSO, ESQ.**
Gattuso & Ciotoli, P.L.L.C.
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Telephone: 315-299-6350
Facsimile: 315 446-7521
Email: fgattuso@gclawoffice.com


**VIRGINIA & AMBINDER, LLP**
Lloyd R. Ambinder
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
Email: Lambinder@vandallp.com


**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown
Michael A. Tompkins
1 Old Country Road, Suite 347
Carle Place, New York 11514
Telephone: (516) 873-9550
Email: jbrown@leedsbrownlaw.com

*Attorneys for Plaintiffs*